IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SYNTHES USA, LLC, | ) | |
| SYNTHES USA PRODUCTS, LLC and | ) | |
| SYNTHES USA SALES, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 11-652-LPS |
| | ) | |
| GLOBUS MEDICAL, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | REDACTED – PUBLIC VERSION |

**OPENING BRIEF IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT OF
NO ANTICIPATION BY THE KOZAK AND MICHELSON REFERENCES**

OF COUNSEL:
Matthew J. Becker
Jeremy C. Lowe
Edward M. Mathias
Tara R. Rahemba
AXINN, VELTROP & HARKRIDER LLP
90 State House Square, 9th Floor
Hartford, CT 06103
(860) 275-8100

Diane C. Ragosa
AXINN, VELTROP & HARKRIDER LLP
114 West 47th Street
New York, NY 10036
(212) 728-2200

Dated: February 13, 2013

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
David M. Fry (No. 5486)
Shaw Keller LLP
300 Delaware Avenue, Suite 1120
Wilmington, Delaware 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
dfry@shawkeller.com

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................... i

NATURE AND STAGE OF THE PROCEEDINGS ..................................................................... 1

SUMMARY OF ARGUMENT .................................................................................................... 1

STATEMENT OF UNDISPUTED FACTS ................................................................................. 3

   I.    THE '076 PATENT ......................................................................................................... 3

   II.   THE '207 AND '616 PATENTS .................................................................................... 3

   III.  KOZAK AND MICHELSON '019 .............................................................................. 5

        A.    Kozak ................................................................................................................ 5

        B.    Michelson '019 ................................................................................................. 5

ARGUMENT ............................................................................................................................... 7

   I.    LEGAL STANDARDS ................................................................................................. 7

        A.    Summary Judgment ......................................................................................... 7

        B.    Anticipation ...................................................................................................... 7

   II.   KOZAK DOES NOT ANTICIPATE ANY
        ASSERTED CLAIMS OF THE '076 PATENT ............................................................ 9

        A.    Kozak Does Not Expressly or Inherently Disclose
            Bone Screws Extending Into Both Upper and Lower Endplates ................. 9

        B.    Kozak Does Not Anticipate The Asserted Dependent Claims of the '076
            Patent. ............................................................................................................ 11

   II.   MICHELSON '019 DOES NOT ANTICIPATE
        ANY ASSERTED CLAIM OF THE ASSERTED PATENTS. ..................................... 12

        A.    Michelson '019 Does Not Disclose A
            Plate-Three Dimensional Body Combination ............................................. 12

        B.    The Michelson Patents Do Not Disclose Numerous
            Limitations of the Asserted Claims Describing the Part-To-Part
            Relationship Between the Plate and Three Dimensional Body. ................. 15

            1.    The Michelson Patents Do Not Disclose A Three Dimensional
                Body and A Plate with Generally or Substantially Equal Heights. ....... 16

2.    The Michelson Patents Do Not Disclose a Plate Coupled
      To, Mounted To or Contacting a Three Dimensional Body. ................................17

3.    The Michelson Patents Do Not Disclose A
      Borehole Aligned With A Partial Borehole. ..........................................................18

4.    The Michelson Patents Do Not Disclose
      Boreholes Between or Substantially Between the Planes. ....................................19

CONCLUSION ..................................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Akamai Techs. v. Cable & Wireless Internet Servs.,
  344 F.3d 1186 (Fed. Cir. 2003)........................................................................7

Am. Hoist & Derrick Co. v. Sowa & Sons,
  725 F.2d 1350 (Fed. Cir. 1984)......................................................................8, 9

Anderson v. Liberty Lobby, Inc.,
  477 U.S. 242 (1986)........................................................................................7

Connell v. Sears, Roebuck & Co.,
  722 F.2d 1542 (Fed.Cir.1983)..........................................................................8

Cont'l Can Co. USA, Inc. v. Monsanto Co.,
  948 F.2d 1264 (Fed. Cir. 1991)........................................................................8

Ferag AG v. Grapha-Holding AG,
  905 F. Supp. 1 (D.D.C. 1995).........................................................................8

In re Oelrich,
  666 F.2d 578 (C.C.P.A. 1981) ........................................................................8

In re Paulsen,
  30 F.3d 1475 (Fed. Cir. 1994).........................................................................7

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,
  475 U.S. 574 (1986)........................................................................................7

McGinley v. Franklin Sports, Inc.,
  262 F.3d 1339 (Fed. Cir. 2001)....................................................................9, 20

Padcom, Inc. v. Netmotion Wireless, Inc.,
  No. 03-983, 2006 U.S. Dist. LEXIS 6549 (D. Del. Feb. 22, 2006)..........................7

Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.,
  563 F.3d 1358 (Fed. Cir. 2009)........................................................................7

Schering Corp. v. Geneva Pharms., Inc.,
  339 F.3d 1373 (Fed. Cir. 2003)....................................................................8, 11

Therasense, Inc. v. Becton, Dickinson & Co.,
  593 F.3d 1325 (Fed. Cir. 2010)................................................................. passim

Verdegaal Bros. v. Union Oil Co.,
    814 F.2d 628 (Fed. Cir. 1987)..................................................................................................9

**STATUTES**

35 U.S.C. § 102..............................................................................................................7, 8

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56.............................................................................................................7

Plaintiffs Synthes USA, LLC, Synthes USA Sales, LLC and Synthes USA Products, LLC (collectively "Synthes") respectfully submit this opening brief in support of their Motion for Summary Judgment that U.S. Patent Nos. 7,875,076 ("the '076 patent"), 7,846,207 ("the '207 patent) and 7,862,616 ("the '616 patent") (collectively, "the Asserted Patents") are not anticipated by either U.S. Patent No. 5,397,364 to Kozak ("Kozak") or by U.S. Patent No. 6,972,019 to Michelson ("Michelson '019").

## NATURE AND STAGE OF THE PROCEEDINGS

This is an action for patent infringement.  On July 22, 2011, Synthes filed its Complaint in this action alleging that three spinal implants made by Globus Medical, Inc. ("Globus") infringe one or more claims of the '076, '207 and '616 patents.  (D.I. 1 at ¶¶ 13, 20, 27.)  Synthes has asserted claims 1, 3, 8, 10 and 11 of the '076 patent, 1, 2, 10, 12, 16, 20, 38 and 42 of the '207 patent, and 1, 3, 5, 9 and 13 of the '616 patent in this litigation (the "Asserted Claims").  Globus denied infringement, and counterclaimed that the Asserted Patents are invalid.  (D.I. 9.)

The parties submitted a Joint Claim Construction Brief on June 8, 2012.  (D.I. 52.)  Fact discovery closed October 1, 2012, and expert discovery closed January 28, 2013.  (D.I. 24, 68.)

In its expert reports, Globus contends that the Asserted Claims of the '076 patent are invalid as anticipated by Kozak under Synthes' proposed claim constructions.  Globus also contends that the Asserted Claims of all Asserted Patents are invalid as anticipated by Michelson '019 under Synthes' proposed claim constructions.  Globus does not contend anticipation of any Asserted Claim under its proposed constructions.

## SUMMARY OF ARGUMENT

1.    Globus' case for anticipation relies on two prior art references already considered by the Patent Office during prosecution and/or reexamination of the Asserted Patents.  Globus

cannot, as a matter of law, adduce clear and convincing evidence that either of these references discloses each and every limitation of even a single one of the Asserted Claims in this action.

2.      First, Globus cannot carry its heavy burden of proving that Kozak anticipates the Asserted Claims of the '076 patent.  Kozak does not disclose bone screws extending into both the upper and lower vertebral endplates,[1] as required by all of the Asserted Claims of the '076 patent.  Thus, Kozak does not disclose at least one element of all Asserted Claims of the '076 patent and therefore cannot anticipate the Asserted Claims.

3.      Second, and similarly, Globus cannot carry its heavy burden of proving that Michelson '019 anticipates any of the Asserted Claims of the Asserted Patents.  Michelson '019 does not disclose a combination of a plate and three dimensional body.  Moreover, Michelson '019 does not disclose numerous limitations of the Asserted Claims that describe the relationship between the plate and three dimensional body, including at least:

(i)  a plate coupled to, mounted to or contacting a three dimensional body;
(ii) a three dimensional body and plate having "generally" or "substantially" equal heights;
(iii) boreholes in the plate aligned with partial boreholes in the three dimensional body; or
(iv) boreholes in the plate positioned between or substantially between the upper and lower planes defined by the top and bottom surfaces of the three dimensional body.

Thus, Michelson '019 does not disclose at least one element of each Asserted Claim[2] of the '076, '207 and '616 patents and therefore cannot anticipate the Asserted Claims.

---

[1] "Vertebral endplates" refers to the upper and lower surfaces of the vertebral bodies.  Under Synthes' claim constructions, "upper endplate" is the "endplate on the bottom side of the vertebra above the implant," and "lower endplate" is the "endplate on the top side of the vertebra below the implant."  (D.I. 53, Exhibit A, terms 40-41.)
[2] There are other limitations of the Asserted Claims that are also not disclosed in the references cited by Globus.  Because the absence of a single limitation warrants a finding of no anticipation, Synthes has not raised these other missing limitations in this motion, but reserves the right to do so in subsequent proceedings.

## STATEMENT OF UNDISPUTED FACTS

I.   THE '076 PATENT

The '076 patent is directed to an intervertebral implant having a three-dimensional body (element 10), a front plate (element 8), and fixation elements (element 20).  The patent figures below depict examples of the implants of the '076 patent.



('076 patent (attached as Exhibit A)[3] at Figs. 5 and 6.)   Claim 1 of the '076 patent requires, *inter alia*, the following elements (elements relevant to this motion are underlined):

    An intervertebral implant having a
    -   body;
    -   a plate operatively coupled to the body;
    -   the body having a first height extending between the upper surface and the lower
        surface and the plate having a second height extending between the plate top surface
        and the plate lower surface, the second height being generally equal to the first
        height;
    -   first and second boreholes passing through the plate, the first and second boreholes
        positioned between the upper and lower planes; and
    -   a first bone screw being sized and configured to extend through the first borehole and
        into the upper endplate, and a second bone screw being sized and configured to
        extend through the second borehole and into the lower endplate to anchor the
        intervertebral implant to the upper and lower vertebrae.
(See '076 patent (Ex. A) at col. 4, l. 54 to col. 5, l. 16 for the full text of claim 1.)

II.   THE '207 AND '616 PATENTS

The '207 and '616 patents are directed to an intervertebral implant having a three-

dimensional body (element 10), a front plate (element 8), and fixation elements (element 20), as

---

[3] For the Court's convenience, Exhibits A, B and C are attached to this Opening Brief.  Pursuant to Local Rule 7.1.3(d), other citations are included in Plaintiffs' Appendix to its Opening Brief, and "A" refers to the specific appendix page on which the cited material may be found.

exemplified below:



('207 patent (attached as Exhibit B) at Fig. 1.)

Claim 1 of the '207 patent requires, *inter alia,* the following elements:

An intervertebral implant comprising
- a three-dimensional body having an upper side and an underside provided with teeth;
- a <u>front plate mounted to the front surface of the three-dimensional body</u>; the front plate including
- a first borehole and a second borehole having openings, <u>the first borehole and the second borehole each being aligned with a respective first and second partial borehole</u>; and
- the first and second heads and the first and second <u>boreholes and partial boreholes positioned substantially between the upper and underside planes</u> in an assembled configuration.

 (<u>See</u> '207 patent (Ex. B) at col. 6, ll. 25-58 for the full text of claim 1.)

Claim 1 of the '616 patent requires, *inter alia,* the following elements:

An intervertebral implant comprising:
- a three dimensional body;
- a plate having an upper surface and a lower surface, the <u>plate contacting the front surface of the three dimensional body</u>;
- the plate including a plurality of boreholes, <u>at least one of the plurality of boreholes formed in the plate aligning with the at least one partial borehole in communication with the upper side of the body and at least one of the plurality of boreholes formed in the plate aligning with the at least one partial borehole in communication with the underside of the body</u> when the three dimensional body is coupled to the plate; and
- wherein the three dimensional body further includes a first height as defined by the upper side and the underside and the plate includes a second height as defined by the upper and lower surfaces of the plate, the <u>first height being substantially equal to the second height</u> so that the three dimensional body and the plate are contained between the adjacent vertebral bodies when the implant is inserted between the adjacent vertebral bodies.

(<u>See</u> '616 patent (attached as Exhibit C) at col. 6, ll. 26-67 for the full text of claim 1.)

III.   KOZAK AND MICHELSON '019

A.   Kozak

Kozak (A664-A681) was considered by the U.S. Patent and Trademark Office ("PTO") during a Globus-initiated reexamination of the '076 patent, but the examiner distinguished Kozak in the PTO's first action in the reexamination.  ('076 Patent Reexamination, Oct. 12, 2012 Decision on Request for Inter Partes Reexamination (A600-A641) at A605-607.)

Kozak discloses an intervertebral implant that is designed so that it can be inserted through a small incision piece by piece and then assembled together in its final position in the body.  (See, e.g., Expert Report of Paul Ducheyne, Synthes' validity expert ("Ducheyne Report") (A642-A663) at A646-A647, ¶¶ 87-88; Kozak at A674, col. 2, ll. 62-68.)  The implant disclosed in Kozak is affixed to a single vertebra by one or two bone screws.  (Ducheyne Report at A648, ¶ 91; Kozak at A678, col. 10, ll. 37-65 ("two bone screws can be provided to anchor the device into one of the vertebrae"; "[t]he bores . . . are preferably . . . oriented at different angles so that the two bone screws [ ] can engage the vertebra without conflict.").)

B.   Michelson '019

Michelson '019 (or its published patent application) were considered by the PTO during examination of the '207, '616 patent and '076 patents,[4] and Michelson '019 was specifically relied on by the Examiner during prosecution of the '207 patent.  (See '207 patent (Ex. B) and'616 patent (Ex. C); File History of '076 Patent, Apr. 2, 2010 List of References Cited by

---

[4] The publication leading to Michelson '019 (Michelson US 2002/0099376) was considered by the examiner during prosecution of U.S. Patent No. 7,618,456 ("the '456 patent").  (See '456 patent (A870-A878) at A871(page 2).)  Because the '076 patent is a continuation of the '456 patent, the publication leading to Michelson '019 was considered during prosecution of the '076 patent as well.  (See Manual of Patent Examining Procedure, § 609.02 (the examiner "will consider information which has been considered by the Office in a parent application when examining [ ] a continuation application.").)

Applicant(s) (A682-A692) at A692 and June 8, 2010 Amendment (A693-A710) at A700; File History of '207 Patent, Apr. 1, 2009 Office Action (A711-A731) at A724.)

Michelson '019 discloses an intervertebral implant consisting of a three-dimensional body, and fixation elements that pass through partial boreholes in the front surface of the three-dimensional body and enter into the upper and lower vertebrae surrounding the implant.  (See, e.g., Ducheyne Report at A643-A644, ¶¶ 78-79.  See also Michelson '019 (A762-A781) at A764, Fig. 1 and A767, Fig. 8.)

Michelson '019 refers to, and Globus alleges that it incorporates by reference, several other Michelson patents including U.S. Pat. No. 6,139,550 ("Michelson '550") (A782-A827) and U.S. Pat. No. 6,193,721 ("Michelson '721") (A828-A869).  (Ducheyne Report at A644, ¶ 80; Michelson '019 at A771, col. 3, ll. 15-25.[5])

Michelson '550 discloses a skeletal plating system consisting of a plate, locking mechanism(s) and fixation element(s) that pass through holes in the plate.  (See, e.g., Michelson '550 at A789, Fig. 33 and A813, col. 2, ll. 52-67.  See also Ducheyne Report at A645, ¶¶ 82-83.) Michelson '721 discloses an anterior[6] cervical plating system that similarly consists of a plate, locking mechanism(s) and fixation element(s) that pass through holes in the plate.  (See, e.g., Michelson '721 at A836, Fig. 39 and A851, col. 6, ll. 50-54.  See also Ducheyne Report at A645, ¶¶ 82-83.)  Neither of these patents references a three dimensional body.

The plates disclosed in Michelson '550 and '721 are attached (by fixation elements passing through holes in the plate) to the anterior side of the vertebral bodies and reside completely outside of and anterior to the disc space, often spanning multiple vertebral segments.

---

[5] Synthes does not concede that Michelson '019 incorporates Michelson '550 and Michelson '721 by reference in their entirety.  For purposes of this motion, however, Synthes assumes incorporation by reference.
[6] Anterior refers to the front of the spine.

(See, e.g., Michelson '721 at A836, Fig. 39; Michelson '550 at A789, Fig. 33.  See also
Ducheyne Report at A645, ¶¶ 83, 131; Dep. Tr. of Dr. Domagoj Coric, Globus' expert on
liability issues (A890-A916) at A893 (155:1-4), A899-A900 (170:3-171:6), A902 (173:7-
173:20), and A911 (265:7-14).)

## ARGUMENT

### I.      LEGAL STANDARDS

#### A.      Summary Judgment

Summary judgment is appropriate when, after opportunity for discovery and upon
motion, there is no genuine dispute of material fact for trial.  Fed. R. Civ. P. 56; see also
Revolution Eyewear, Inc. v. Aspex Eyewear, Inc., 563 F.3d 1358, 1365 (Fed. Cir. 2009).  A fact
is "material" if it would affect the outcome of the matter, and a dispute is "genuine" only if no
"reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby,
Inc., 477 U.S. 242, 258 (1986).  Therefore, the non-moving party must "do more than simply
show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus.
Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  "The mere existence of some
evidence in support of the nonmoving party [ ] will not be sufficient for denial of a motion for
summary judgment; there must be enough evidence to enable a jury reasonably to find for the
nonmoving party on that issue."  Padcom, Inc. v. Netmotion Wireless, Inc., No. 03-983, 2006
U.S. Dist. LEXIS 6549, at *12 (D. Del. Feb. 22, 2006), citing Anderson, 477 U.S. at 249.

#### B.      Anticipation

Invalidity by anticipation under 35 U.S.C. § 102 requires that every limitation of a patent
claim is disclosed in a single prior art reference.  Akamai Techs. v. Cable & Wireless Internet
Servs., 344 F.3d 1186, 1192 (Fed. Cir. 2003); In re Paulsen, 30 F.3d 1475, 1478-1479 (Fed. Cir.
1994).  "If even a single element or limitation required by the claim is missing from the

disclosure of the reference, there can be no anticipation."  Ferag AG v. Grapha-Holding AG, 905

F. Supp. 1, 6 (D.D.C. 1995) (citing Connell v. Sears, Roebuck & Co., 722 F.2d 1542, 1548

(Fed.Cir.1983)).

Moreover, "[t]he way in which the elements are arranged or combined in the claim must

itself be disclosed, either expressly or inherently, in an anticipatory reference."  Therasense, Inc.

v. Becton, Dickinson & Co., 593 F.3d 1325, 1332 (Fed. Cir. 2010) (citing Connell v. Sears,

Roebuck & Co., 722 F.2d 1542, 1548 (Fed. Cir. 1983) ("Anticipation requires the presence in a

single prior art disclosure of all elements of a claimed invention arranged as in the claim.")).  As

the Federal Circuit explained in Therasense:

> The requirement that the prior art elements themselves be "arranged as in the
> claim" means that claims cannot be "treated . . . as mere catalogs of separate
> parts, in disregard of the part-to-part relationships set forth in the claims and that
> give the claims their meaning." *Lindemann Maschinenfabrik GMBH v. Am. Hoist
> & Derrick Co.,* 730 F.2d 1452, 1459 (Fed.Cir.1984). "[U]nless a reference
> discloses within the four corners of the document not only all of the limitations
> claimed but also all of the limitations *arranged or combined in the same way as
> recited in the claim,* it cannot be said to prove prior invention of the thing claimed
> and, thus, cannot anticipate under 35 U.S.C. § 102." *Net MoneyIN, Inc. v.
> VeriSign, Inc.,* 545 F.3d 1359, 1371 (Fed.Cir.2008) (emphasis added).

Therasense, 593 F.3d at 1332.

A prior art reference that does not expressly disclose a claim limitation may anticipate if

that missing characteristic is necessarily present, or inherent, in that reference.  Schering Corp. v.

Geneva Pharms., Inc., 339 F.3d 1373, 1377 (Fed. Cir. 2003), reh'g and reh'g en banc denied, 348

F.3d 992 (Fed. Cir. 2003).  "Inherency, however, may not be established by probabilities or

possibilities. The mere fact that a certain thing may result from a given set of circumstances is

not sufficient."  Cont'l Can Co. USA, Inc. v. Monsanto Co., 948 F.2d 1264, 1269 (Fed. Cir.

1991) (quoting In re Oelrich, 666 F.2d 578, 581 (C.C.P.A. 1981)).

A party claiming anticipation by a prior art reference has the burden to prove anticipation

by clear and convincing evidence.  <u>Verdegaal Bros. v. Union Oil Co.</u>, 814 F.2d 628, 631 (Fed.

Cir. 1987).  "When no prior art other than that which was considered by the PTO examiner is

relied on by the attacker, he has the added burden of overcoming the deference that is due to a

qualified government agency presumed to have properly done its job, which includes one or

more examiners who are assumed to have some expertise in interpreting the references and to be

familiar from their work with the level of skill in the art and whose duty it is to issue only valid

patents."  <u>McGinley v. Franklin Sports, Inc.</u>, 262 F.3d 1339, 1353 (Fed. Cir. 2001) (citing <u>Am.</u>

<u>Hoist & Derrick Co. v. Sowa & Sons</u>, 725 F.2d 1350, 1359 (Fed. Cir. 1984)).

II.     KOZAK DOES NOT ANTICIPATE ANY
        <u>ASSERTED CLAIMS OF THE '076 PATENT.</u>

        A.      Kozak Does Not Expressly or Inherently Disclose
                <u>Bone Screws Extending Into Both Upper and Lower Endplates.</u>

        Globus contends that Kozak anticipates claims 1, 3, 8, 10 and 11 of the '076 patent under

Synthes' proposed claim constructions.[7]  All of these claims require at least one bone screw

extending into each of the two adjacent vertebral endplates, by claiming a "first bone screw

being sized and configured to extend through the first borehole and into the *upper endplate*, the

second bone screw being sized and configured to extend through the second borehole and into

the *lower endplate*."  ('076 patent (Ex. A) at col. 5, ll. 9-13 (emphasis added).)  Nowhere does

Kozak disclose bone screws extending into both the *upper endplate* <u>and</u> the *lower endplate*.

(<u>See, e.g.</u>, Ducheyne Report at A648, ¶ 91.)  Rather, Kozak discloses two bone screws extending

into the same vertebral endplate.  (<u>See</u> Kozak at A672, Fig. 25 and A678, col. 10, ll. 37-65.)

---

[7] Globus' expert does not opine that any of the Asserted Claims are anticipated under Globus'
proposed claim constructions.  Accordingly, this motion addresses Synthes' proposed
constructions only.  If the Court adopts Globus' constructions, this motion should be granted
because Globus has offered no expert opinions or testimony regarding anticipation under
Globus' constructions.

Globus' expert witness, Dr. Coric, initially opined that Kozak disclosed bone screws extending into different vertebral endplates, but none of the passages of Kozak that he cited support this conclusion.  Specifically, Dr. Coric relied on the following passage in Kozak, which only discloses that two bone screws can extend into a *single* vertebra, as opposed to both an upper and lower vertebral endplate:

> [T]wo bone screws can be provided to anchor the device to *one* of the vertebrae. Such a device is illustrated in FIG. 25 showing an anterior spacer body **95'** having a central guide bore 96 and two angled bores **97'** and **97"**. The two angled bores **97'** and **97"** are configured to receive a corresponding bone screw 98 therethrough. The bores **97'** and **97"** are preferably (but not necessarily) oriented at different angles so that the two bone screws 98 can *engage the vertebra* without conflict.

(Kozak at A678, col. 10, ll. 56-65 (emphasis added in italics).)  Aside from this passage, Dr. Coric relied only on Figures 24 and 25 of Kozak, neither of which discloses two bone screws extending into different vertebrae.



Bone screws are directed only to the endplate below the implant

Both bone screws are directed to the same endplate

*Fig. 24*

*Fig. 25*

As shown in Figure 24 of Kozak above, the bone screws in Kozak extend only into the vertebral endplate below the implant.  Not surprisingly, Dr. Coric subsequently conceded that Kozak does not expressly disclose this element of claim 1 of the '076 patent.  (See, e.g., Dr. Coric Jan. 4, 2013 Report (A879-A882) at A882, ¶ 50 ("Kozak does not explicitly disclose bone screws being directed into both upper and lower endplates").)  Dr. Coric confirmed this at his deposition, agreeing that Figure 24 of Kozak "doesn't disclose two screws going into different

10

vertebrae" (Coric Dep. Tr. at A906-A907, 184:23-185:2), and stating that Figure 25 (shown

above) "does not explicitly . . . show" one bone screw going into a lower vertebra and one bone

screw going into another vertebra.  (Id. at A905, 183:20-24.)  Accordingly, there is no genuine

issue of fact that Kozak fails to expressly disclose a "first bone screw being sized and configured

to extend through the first borehole and into the upper endplate, the second bone screw being

sized and configured to extend through the second borehole and into the lower endplate," as

required by claim 1 of the '076 patent.

It is also undisputed that Kozak does not inherently disclose bone screws extending into

the upper and lower endplates.  Dr. Coric admitted:  "I do not believe that it is absolutely

necessary in order to use Kozak as described that you would have to have one screw go up and

one screw go down."  (Id. at A908-A909, 190:23-191:7.)  Therefore, this characteristic is not

"necessarily present," or inherently disclosed in Kozak.  Schering Corp., 339 F.3d at 1377.

There is not a shred of evidence in the record showing that Kozak expressly or inherently

discloses bone screws extending into the upper and lower vertebral endplates.  Because there is

no evidence that Kozak discloses this limitation of claim 1 of the '076 patent, Globus cannot

meet its heavy burden of proving that Kozak anticipates claim 1.

> B.     Kozak Does Not Anticipate The
>        Asserted Dependent Claims of the '076 Patent.

Claims 3, 8, 10 and 11 of the '076 patent depend directly or indirectly from claim 1.

Because a dependent claim incorporates all of the elements of the claim from which it depends,

and at least because Globus has not demonstrated that Kozak discloses all of the elements of

claim 1 of the '076 patent, Globus similarly cannot demonstrate that Kozak discloses all of the

elements of claims 3, 8, 10 and 11, and therefore cannot meet its burden of proving that Kozak

anticipates those claims.  Synthes is therefore entitled to judgment as a matter of law that Kozak

does not anticipate any of claims 1, 3, 8, 10 or 11 of the '076 patent.

## II.   MICHELSON '019 DOES NOT ANTICIPATE
### ANY ASSERTED CLAIM OF THE ASSERTED PATENTS.

Globus contends that Michelson '019 anticipates the Asserted Claims of all three

Asserted Patents under Synthes' proposed constructions.  Michelson '019 is the *only* reference

that Globus contends anticipates the '616 and '207 patents.

Globus cannot meet its heavy burden of proving that Michelson '019 discloses all of the

limitations of the Asserted Claims because Michelson '019 does not disclose:  (1) a combination

of a plate and three dimensional body; and (2) numerous other claim limitations that describe the

"part-to-part relationships" of the plate and three dimensional body.  Therasense, 593 F.3d at

1332.  Those missing part-to-part relationships include the following:

(i)  a plate *coupled to, mounted to or contacting* a three dimensional body (all Asserted
     Patents);
(ii) a three dimensional body and plate *having "generally" or "substantially" equal
     heights* ('076 and '616 patents);
(iii) boreholes in the plate *aligned with* partial boreholes in the three dimensional body
     ('616 and '207 patents); and
(iv) boreholes in the plate *positioned between or substantially between* the upper and
     lower planes defined by the top and bottom surfaces of the three dimensional body
     ('076 and '207 patents).

### A.   Michelson '019 Does Not Disclose A
#### Plate-Three Dimensional Body Combination.

As exemplified below, the devices disclosed in Michelson '019 do not include a plate.



No plate coupled, mounted to, or contacting the three dimensional body

('Michelson '019 at A764, Fig. 1.)

Dr. Coric concedes that Michelson '019, which discloses a one-piece three dimensional body, "does not specifically discuss a front plate." (Coric Dep. Tr. at A892 (148:6-7), A891 (146:8-9) ("[I]s there a drawing in '019 that shows a front plate, the answer is no."), A897 (159:4-7).) To argue anticipation despite the absence of a plate in Michelson '019, Dr. Coric opines that Michelson '019 discloses a plate combined with a three dimensional body by incorporating by reference the Michelson '550 and Michelson '721 patents. (See, e.g., Coric Nov. 5, 2012 Report (A883-A886) at A885-A886, ¶ 326; Coric Jan. 4, 2013 Report at A880-A881, ¶ 42.) But none of the plates in Michelson '550 or '721 are joined to a three dimensional body. In fact, the Michelson '550 and '721 patents do not mention a three dimensional body at all, let alone teach the use of plates with a three dimensional body, as claimed. (See, e.g., Ducheyne Report, at A645 (¶ 83), A649 (¶ 131), A658-659 (¶ 277).) That is not surprising, because Michelson '721 is directed to an "Anterior Cervical Plating System" and Michelson '550 is directed to a "Skeletal Plating System." (See, e.g., Michelson '721 at A849, col. 1, l. 1-2; Michelson '550 at A813, col. 1, ll. 1-2 and A826, col. 27, ll. 49-52.) Representative plates from Figure 33 in Michelson '550 and Figure 40 in Michelson '721, shown below, demonstrate that the plates of these patents are affixed to the anterior surface of the vertebrae and are not part of implants that include a three dimensional body.



FIG 33

FIG 40

Assuming (for purposes of this motion only) that Michelson '019 incorporates by reference the

entire disclosures of Michelson '550 and Michelson '721, there remains no disclosure in any of these three patents of a plate and three dimensional body *combined together* into a single implant, as required by all of the Asserted Claims. Rather, the Michelson Patents[8] disclose a "mere catalog[] of separate parts." Therasense, 593 F.3d at 1332.

Michelson '550 and '721 use the terms "plate" and "locking mechanism" to refer to different structures. (See, e.g., Ducheyne Report at A644-A645, ¶ 81.) Michelson '550, for example, describes a plate (element 700b) as distinct from a locking element (710b), in Fig. 72B below. (Michelson '550 at A821, col. 17, ll. 10-19.)



*FIG 72B*

Dr. Coric admits that plates and locking mechanisms are "different things" in these patents. (See, e.g., Coric Dep. Tr. at A895, 157:13-24.) Nevertheless, Globus and Dr. Coric contend that a reference in Michelson '019 to employing the "locking mechanisms" of the '550 and '721 patents is actually an invitation to use the distinct "plate" portions of the devices disclosed in Michelson '550 and '721 with the three dimensional body of Michelson '019. (Michelson '019 at A771, col. 3, ll. 15-25; see also Coric Dep. Tr. at A897, 159:22-160:24.) The problem with this contention is that Michelson '019 never actually refers to the "plates" of Michelson '550 or '721. There is simply no disclosure in the Michelson Patents of a device combining a plate and three dimensional body.

Thus, the Michelson Patents nowhere disclose an implant comprising both a plate and

---

[8] "Michelson Patents," as used below, refers to the disclosure of Michelson '019 assuming, as Globus contends, that it incorporates by reference Michelson '550 and Michelson '721.

three dimensional body.  Globus cannot merely pick and choose parts from the catalog of components in the Michelson Patents and combine them without any disclosure of such a combination.  Accordingly, Globus cannot prove that the Michelson Patents disclose "all of the limitations arranged or combined in the same way as recited in the claim," and thus cannot prove anticipation.  <u>Therasense</u>, 593 F.3d at 1332.

For this same reason, the Michelson Patents do not disclose a *method* of implanting an implant comprising a plate and three dimensional body, as required by claim 38 of the '207 patent.  (<u>See, e.g.</u>, Ducheyne Report at A651-A652, ¶¶ 141-142.)  Indeed, Dr. Coric supports his contention that such a method is disclosed by citing to Figs. 5 and 6 of Michelson '019, which depict a spacer *without a plate* implanted between two vertebrae.  (<u>See</u> Coric Nov. 5, 2012 Report at A884, ¶ 164.)  Therefore, the Michelson Patents do not anticipate claim 38 of the '207 patent.

        B.      The Michelson Patents Do Not Disclose Numerous
                    Limitations of the Asserted Claims Describing the
                    <u>Part-To-Part Relationship Between the Plate and Three Dimensional Body</u>.

Even if the Michelson Patents disclose a plate/three dimensional body combination (and they do not), they indisputably fail to disclose numerous limitations of the Asserted Claims that describe the *relationship between* the plate and the three dimensional body.  The Michelson Patents at best "disregard the part-to-part relationships set forth in the claims and that give the claims their meaning."  <u>Therasense</u>, 593 F.3d at 1332.  For this important and separate reason, the Michelson Patents fail to disclose "all of the limitations arranged or combined in the same way as recited in the claim," as required for anticipation.  <u>Id.</u>

At least the following four limitations[9] of the Asserted Claims that describe the part-to-part relationships between the plate and three dimensional body are not disclosed in the Michelson Patents.  A finding that any one of these four limitations is not disclosed in Michelson '019 compels summary judgment that Michelson '019 does not anticipate.

           1.      The Michelson Patents Do Not Disclose A Three Dimensional
                      Body and A Plate with Generally or Substantially Equal Heights.

All Asserted Claims of the '076 patent and the '616 patent respectively require that the heights of the three dimensional body and the plate of the implant be "generally equal" or "substantially equal." ('076 patent (Ex. A) at col. 4, l. 64 to col. 5, l. 5; '616 patent (Ex. C) at col. 6, ll. 56-64.)  Synthes' proposed constructions of these claim limitations require that "the first and second heights are generally [or substantially] equal to allow the body and the front plate to fit partly or entirely between adjacent vertebral bodies when the implant is inserted between the adjacent vertebral bodies."  (D.I. 53, Exhibit A, terms 30-31.)  There is no disclosure in the Michelson Patents of a plate that fits even partly between the vertebrae.  Michelson '019 does not disclose a plate at all, and Michelson '550 and '721 only disclose plates that are affixed to the anterior outer surface of the vertebrae, that are able to span multiple vertebrae, and that reside outside the space between the vertebrae, not within it.  (See, e.g., Michelson '721 at A836 (Fig. 40) and A840 (Fig. 60); Michelson '550 at A789 (Fig. 33) and A795 (Fig. 55); Ducheyne Report at A645, A649 ¶¶ 83, 131.)

In fact, Dr. Coric concedes that the plates disclosed in Michelson '550 and Michelson '721 sit entirely anterior to the vertebral bodies, and do not reside even partly between vertebrae. (See, e.g., Coric Dep. Tr. at A903, 175:4-8 (Q: "Are you aware of any plate in Michelson '550,

---

[9] The claim limitations addressed below appear in independent claim 1 of the Asserted Patents, as specified above.  All other Asserted Claims depend from claim 1 of the respective Asserted Patents, and therefore incorporate all limitations of claim 1.

as you sit here, that is designed to fit even partly between the vertebral bodies?" A: "No."); at A915-A916, 431:25-432:7 (agreeing that "Michelson is teaching that the anterior plates of '550 or '721 should be *modified* to fit into the disc space with a zero profile spacer[10]" (emphasis added)); at A902, A911, 173:7-173:20; 265:7-14 (agreeing that the plates of Michelson '721 are "attached to the anterior surfaces of the vertebral bodies"); and at A893, 155:1-4.  See also Michelson '721 at A836 (Fig. 40) and A840 (Fig. 60); Michelson '550 at A789 (Fig. 33) and A795 (Fig. 55).)

Because there is no disclosure of plates in Michelson '550 and '721 that fit even partly between the adjacent vertebral bodies, the Michelson Patents do not disclose the requirement that the heights of the body and the plate are generally or substantially equal under Synthes' proposed constructions, and do not anticipate claim 1 of the '616 and '076 patents for this reason alone.

      2.      The Michelson Patents Do Not
                    Disclose a Plate Coupled To, Mounted
                    To or Contacting a Three Dimensional Body.

Claim 1 of each of the Asserted Patents requires a plate *coupled to, mounted to or contacting* a three dimensional body.[11]  For the same reasons described above – namely that the Michelson Patents contain no specific description or example of a plate and three dimensional body in a single implant – the Michelson Patents do not disclose a coupling, mounting or other mating arrangement between these structures, or even a plate contacting a three dimensional

---

[10] "Zero profile" refers to an implant that does not protrude anteriorly from the disc space in a manner that risks endangering nearby anatomical structures.  (See, e.g., Nov. 5, 2012 Expert Report of Dr. Roger Härtl, Synthes' surgeon expert (A887-A889) at A888, ¶ 28.)  Dr. Coric defines a zero-profile device as "a device that does not protrude beyond the anterior column of the vertebral body into the prevertebral space." (Coric Dep. Tr. at A913-A914, 283:23 to 284:6.)

[11] Specifically, claim 1 of the '076 patent requires a "plate operatively coupled to the body" ('076 patent (Ex. A) at col. 4, l. 64), claim 1 of the '207 patent requires a "front plate mounted to the front surface of the three-dimensional body" ('207 patent (Ex. B) at col. 6, ll. 39-40), claim 42 of the '207 patent requires a "front plate operatively coupled to the front surface of the body." ('207 patent (Ex. B) at col. 10, ll. 22-23), and claim 1 of the '616 patent requires a "plate contacting the front surface of the three dimensional body" ('616 patent (Ex. C) at col. 6, ll. 43-44).

body.  (See, e.g., Ducheyne Report at A649, A653, A655, ¶¶ 131, 176, 196.)   For this additional

reason, the Michelson Patents do not anticipate any Asserted Claims.

3.      The Michelson Patents Do Not Disclose
A Borehole Aligned With A Partial Borehole.

All Asserted Claims of the '207 and '616 patents require that first and second boreholes

in the plate aligned with first and second partial borehole in the three dimensional body.  ('207

patent (Ex. B) at col. 6, ll. 41-43, col. 8, ll. 58-60, col. 10, ll. 23-26; '616 patent (Ex. C) at col. 6,

ll. 45-50.)  Under Synthes' proposed claim constructions, a "borehole" is a  "fixation element

receiving hole," and a "partial borehole" is a fixation element receiving hole with a gap in its

perimeter." (D.I. 53, Exhibit A, terms11-12.)  Applying these constructions, Michelson '019

discloses three dimensional bodies with partial boreholes and Michelson '550 and '721 disclose

plates with boreholes.  But because none of these references discloses or depicts an implant

containing both a plate and three dimensional body, they cannot disclose a borehole in a plate

*aligned* with a partial borehole in a three dimensional body.  (See, e.g., Ducheyne Report, at

A650, A651-652, A652, A653-654, ¶¶ 134, 142, 144, 177.)

Dr. Coric admitted that aligning the boreholes and partial boreholes is not expressly

disclosed in these references.  (Coric Dep. Tr. at A912, 271:15-18.)  Nor is there any evidence of

record that alignment of boreholes and partial boreholes is inherent in these references.  In

addition, there is no disclosure in the Michelson Patents of a *method* of implanting a plate with

boreholes aligned with partial boreholes in a three dimensional body, or a method of attaching

fixation elements through boreholes, partial boreholes, and into vertebral bodies, as required by

claim 38.  (See, e.g., Ducheyne Report at A651, ¶ 141.  See also Michelson '019 at A773, col. 8,

ll. 29-61.)   For this additional reason, the Michelson Patents do not anticipate the Asserted

Claims of the '207 and '616 patents.

18

       4.     The Michelson Patents Do Not Disclose
                 <u>Boreholes Between or Substantially Between the Planes</u>.

All Asserted Claims of the '076 patent require at least two boreholes in the plate to be

positioned between the upper and lower planes defined by the upper and lower surfaces of the

three dimensional body.  ('076 patent (Ex. A) at col. 5, ll. 6-7.)  All Asserted Claims of the

'207 patent similarly require at least two boreholes in the plate to be positioned substantially

between the upper and lower planes defined by the upper side and undersides of the three

dimensional body.  ('207 patent (Ex. B) at col. 6, ll. 48-51; col. 8, ll. 6-62; col. 10, ll. 31-34.)

Synthes proposes that the term "positioned between the upper and lower planes" in claim 1 of the

'076 patent be construed as "positioned partly or entirely within a space separating the upper and

lower planes" and that the term "positioned substantially between the upper and underside

planes" in the claims of the '207 patent to be construed as "positioned substantially between the

upper and underside planes to allow the body and the front plate to fit between adjacent vertebral

bodies when the implant is inserted between the adjacent vertebral bodies."  (D.I. 53, Exhibit A,

terms 18, 29.)[12]

     Applying these constructions, the Michelson Patents do not disclose a plate having

boreholes positioned substantially or even partly within a space separating the upper and lower

planes or positioned substantially between the planes to allow the body and front plate to fit

between adjacent vertebral bodies.  (<u>See, e.g.</u>, Ducheyne Report at A645, A649, A650, A655,

A657, A660, A661-A662, ¶¶ 83, 131, 134, 197, 234, 312, 350; Michelson '550 at A789, Fig. 33;

Michelson '721at A833-A836 (Figs. 31-40), A840 (Fig. 60), A841 (Fig. 63).)

     As noted above, Dr. Coric concedes that the plates disclosed in Michelson '550 and '721

---

[12] Although the parties propose different constructions for other terms in these claim elements
(e.g., "upper plane," "underside plane" and "borehole"), Synthes' construction of these terms
does not affect the determination of whether the Michelson Patents disclose these elements.

sit entirely anterior to the vertebral bodies and are not designed to fit between the vertebrae. (Coric Dep. Tr. at A893, 155:1-4; A902, 173:7-173:20; A904, 175:4-8; A911, 265:7-14; A915-A916, 431:25-432:7.)  Because the Michelson Patents do not disclose a plate combined with a three dimensional body, there is of course no reason for the Michelson Patents to disclose plates with boreholes positioned within the space between vertebrae (which is where a three dimensional body would reside).  Rather, the Michelson Patents only disclose boreholes that are adjacent to the anterior sides of the vertebrae and allow for screws to enter directly into the anterior sides of the vertebra to which the plate is attached.  (See, e.g., Michelson '550 at A789, Fig. 33; Michelson '721 at A833-A836 (Figs. 31-40), A840 (Fig. 60), A841 (Fig. 63).  See also Ducheyne Report at A650, A653-A654, ¶¶ 134, 177.)

The Michelson Patents also do not disclose boreholes in plates that allow the plate to fit between adjacent vertebral bodies because the plates of the Michelson Patents are positioned entirely on the anterior side of the vertebral bodies.  (See Section II.B.1, supra.)  For this additional reason, the Michelson Patents do not anticipate any Asserted Claim of the '207 patent, which require boreholes positioned substantially between the upper and underside planes.

Finally, as previously explained, Michelson '019 (or its published patent application) were considered by the PTO during prosecution of all three Asserted Patents, and Michelson '019 was cited by the examiner during the prosecution of the '207 patent.  (See Section III.B, n.4, supra.)  Globus cannot meet the particularly high clear and convincing burden it faces given that the PTO already rejected its position.  McGinley, 262 F.3d at 1353.

## CONCLUSION

For the foregoing reasons, the Court should grant Synthes' Motion for Summary Judgment that the Asserted Patents are not invalid as anticipated.

*/s/ David M. Fry*
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
David M. Fry (No. 5486)
SHAW KELLER LLP
300 Delaware Avenue, Suite 1120
Wilmington, Delaware 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
dfry@shawkeller.com

*Attorneys for Plaintiffs*

OF COUNSEL:
Matthew J. Becker
Jeremy C. Lowe
Edward M. Mathias
Tara R. Rahemba
AXINN, VELTROP & HARKRIDER LLP
90 State House Square, 9th Floor
Hartford, CT 06103
(860) 275-8100

Diane C. Ragosa
AXINN, VELTROP & HARKRIDER LLP
114 West 47th Street
New York, NY 10036
(212) 728-2200

Dated:  February 13, 2013

# EXHIBIT A

(12) **United States Patent**
Mathieu et al.

(10) **Patent No.:** **US 7,875,076 B2**
(45) **Date of Patent:** *Jan. 25, 2011

(54) **INTERVERTEBRAL IMPLANT**

(75) Inventors: **Claude Mathieu**, Zurich (CH);
**Christopher Marden John Cain**,
Eastwood (AU)

(73) Assignee: **Synthes USA, LLC**, West Chester, PA
(US)

( * ) Notice: Subject to any disclaimer, the term of this
patent is extended or adjusted under 35
U.S.C. 154(b) by 0 days.

This patent is subject to a terminal dis-
claimer.

(21) Appl. No.: **12/574,222**

(22) Filed: **Oct. 6, 2009**

(65) **Prior Publication Data**

US 2010/0094421 A1     Apr. 15, 2010

**Related U.S. Application Data**

(63) Continuation of application No. 11/751,757, filed on
May 22, 2007, now Pat. No. 7,618,456, which is a
continuation of application No. 10/923,534, filed on
Aug. 19, 2004, now Pat. No. 7,232,464, which is a
continuation of application No. PCT/CH02/00099,
filed on Feb. 19, 2002.

(51) **Int. Cl.**
*A61F 2/44* (2006.01)

(52) **U.S. Cl.** .................................................. **623/17.11**

(58) **Field of Classification Search** .... 623/17.11–17.16
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

2002/0082597 A1* 6/2002 Fraser ......................... 606/61

2005/0033433 A1* 2/2005 Michelson ............... 623/17.11

OTHER PUBLICATIONS

Co-Pending U.S. Appl. No. 11/199,599—Preliminary Amendment
dated Jan. 9, 2008.
Co-Pending U.S. Appl. No. 11/199,599—Non-Final Office Action
dated Apr. 1, 2009.
Co-Pending U.S. Appl. No. 11/199,599—Interview Summary
including Draft Claim Amendments dated Sep. 24, 2009.
Co-Pending U.S. Appl. No. 11/199,599—Amendment dated Sep. 29,
2009.
Co-Pending U.S. Appl. No. 11/199,599—Final Office Action dated
Dec. 24, 2009.
Co-Pending U.S. Appl. No. 11/199,599—Appeal Brief dated Apr.
15, 2010.

* cited by examiner

*Primary Examiner*—Bruce E Snow
(74) *Attorney, Agent, or Firm*—Stroock & Stroock & Lavan
LLP

(57) **ABSTRACT**

The intervertebral implant is in the form of a three-dimen-
sional structure (**10**) comprising (a) a top side (**1**) and an
underside (**2**) which are designed to rest against the end plates
of two adjacent vertebras, (b) a left side face (**3**) and a right
side face (**4**), (c) a front face (**5**) and a rear face (**6**), (d) a
horizontal center plane situated between the top side (**1**) and
the underside (**2**), (e) a vertical center plane (**8**) situated
between the left side face (**3**) and the right side face (**8**) and (f)
a plurality of boreholes (**9**) passing through the implant struc-
ture (**10**) that are designed to receive longitudinal affixation
elements (**20**), the axes (**19**) of said elements intersecting the
horizontal center plane (**7**). At least one of the boreholes (**9**) is
designed in a manner that the affixation element (**10**) received
in it can be rigidly connected to the intervertebral implant.
Said connection is implemented using a thread or by match-
ing conical surfaces.

**16 Claims, 3 Drawing Sheets**





Fig. 1



Fig. 2



Fig. 3



Fig. 4



Fig. 5



Fig. 6



Fig. 7

1

## INTERVERTEBRAL IMPLANT

### CROSS-REFERENCE TO RELATED APPLICATIONS

This application is a continuation of U.S. patent application Ser. No. 11/751,757, now U.S. Pat. No. 7,618,456, filed May 22, 2007, which is a continuation of U.S. patent application Ser. No. 10/923,534, now U.S. Pat. No. 7,232,464, filed Aug. 19, 2004, which is a continuation of International Application No. PCT/CH02/00099, filed Feb. 19, 2002. The entire contents of these applications are expressly incorporated herein by reference thereto.

### FIELD OF THE INVENTION

The present invention relates to an intervertebral implant.

### BACKGROUND OF THE INVENTION

Such an intervertebral implant is known from the British patent document 2,207,607 A which discloses a horseshoe implant structure having a plurality of cylindrical holes. These holes are fitted with inner, smooth surfaces and comprise only one stop for the heads of the bone screws to be inserted into them. This design incurs the drawback that the inserted affixation screws may be anchored into the bone only by their shanks, a rigid connection with the horseshoe shaped intervertebral implant being lacking. As soon as the anchoring of the bone screw in the bone is weakened, the intervertebral implant becomes displaceable relative to the screw and the bone screws may then migrate while endangering the blood vessels. Moreover the loosening of the intervertebral implant may entail pseudoarthrosis.

The above cited state of the art is intended merely to elucidate the background of the present invention but it does imply that the cited state of the art had actually been made public or was publicly known at the time of this application or at the time of its priority.

### BRIEF SUMMARY OF THE INVENTION

The objective of the present invention is palliation. This invention creates an intervertebral implant which is able to rigidly connect to bone affixation means in a manner that even in the event of bone structure weakening, loosening between the intervertebral implant and the bone affixation means shall be precluded.

The above problem is solved in the present invention by an intervertebral implant exhibiting the features of claim **1**.

The advantages offered by the present invention substantially are attained by the rigid, that is by the firm connection between the intervertebral implant and the longitudinal affixing elements. Basically two different embodiment modes are available to attain said rigid connection.

In a first embodiment mode, at least one of the boreholes shall be internally threaded. In this case a matching bone screw fitted with a thread head may be rigidly screwed into the implant.

As regards a second embodiment mode, a front plate is mounted at the front surface of the three dimensional (3D) implant structure so as to be configured vertically to the horizontal center plane of the intervertebral implant, said boreholes passing through said front plate and receiving the anchored longitudinal affixation elements. Compared to the state of the art of a two-part implant, wherein a front plate is implanted in a separate operational step, the above design of

2

the present invention offers the advantage that the intervertebral implant shall be implanted in a single step and hence in a simple and quicker manner. The invention offers a further advantage in that the intervertebral implant shall be affixed as frontally to the vertebra as possible, namely at a place where good bone material may be expected to be. As a result anterior displacement is restricted without thereby incurring greater danger to the surrounding structures than when using a state of the art intervertebral implant. The load still is being borne by the compressed vertebral implant, not by the front plate or the affixation screws.

In yet another embodiment mode of the present invention, the front plate is displaceably configured in the 3D implant structure in order that it may move vertically relative to this 3D implant structure. "Stress shielding" is attained in this manner (namely protection from or neutralization of mechanical stresses), and as a result the end plates may gradually match the intervertebral implant during the healing process.

As regards a further embodiment, the front plate is made of a material different from that of the 3D implant structure.

As regards a further embodiment of the present invention, at least one borehole tapers conically towards its underside and as a result a bone screw fitted with a matching conical head may be rigidly anchored in said borehole. Preferably the conical borehole exhibits a cone angle smaller than the resultant angle of friction. Appropriately the borehole's conicity shall be 1:3.75 to 1:20, preferably 1:5 to 1:15.

As regards a further embodiment mode of the present invention, the intervertebral implant side faces shall all be substantially convex.

Appropriately the intervertebral implant's top and/or undersides are not planar but convex. In this manner better matching to the end plates of the adjacent vertebras may be attained.

The boreholes preferably shall not pass through the left and right intervertebral implant side faces. Preferably again no borehole shall run through the front surface.

As regards a further preferred embodiment mode of the present invention, at least two boreholes shall be mutually parallel. This features facilitates inserting the vertebral implant during implantation.

As regards another preferred embodiment mode of the present invention, at least two boreholes shall run in mutually divergent manner as seen from the front side. As a result the bone screws shall move into a vertebral region offering better bone quality than found at the vertebra's center. Appropriately the borehole axes subtend an angle of 25 degrees to 70 degrees, preferably 35 degrees to 55 degrees with the horizontal center plane. This feature offers improved access for screw insertion.

As regards a further embodiment mode of the present invention, the boreholes shall not cross the horizontal center plane.

Depending on circumstance, two, three, four or even more longitudinal affixation elements may rigidly connected to the intervertebral implant; appropriately at least one affixation element shall pass through the top side and at least one affixation element shall pass through the intervertebral implant side.

Preferably the longitudinal affixation elements shall be bone screws comprising a head and a shank, said head preferably being fitted with an external thread that matches the inner thread of the intervertebral implant's borehole. As regards a second appropriate connection, preferably a bone screw shall be used of which the head tapers conically in the

direction of the shank, the head's conicity corresponding to that of the intervertebral implant's borehole.

Regarding a further embodiment mode, at least two longitudinal affixation elements pass through the top side and at least two longitudinal affixation elements pass through the underside. In this manner the intervertebral implant is optimally anchored into the adjacent vertebras.

Preferably the screw-shaped longitudinal affixation elements exhibit a self-boring and self-tapping external thread. The longitudinal affixation elements also may be designed as unthreaded cylindrical pins fitted with a boring tip, preferably in the form of a trocar.

In another embodiment variation, the longitudinal affixation elements are spiral springs; lastly said longitudinal affixation elements also may be designed as single or multi-wing spiral blades.

In a further embodiment mode of the present invention, the longitudinal affixation element tip may be anchored in the structure of the intervertebral implant, as a result of which the head of the longitudinal affixation element may be anchored in the adjacent vertebra.

In a further embodiment mode of the present invention, the longitudinal affixation element head exhibits a widened diameter; also a support disk is provided for said head to rest against the vertebra.

The intervertebral implant may be made of any physiologically compatible material, though appropriately the implant structure shall consist of a physiologically compatible plastic, preferably an unreinforced plastic. The advantage offered by the invention over the already known, fiber-reinforced plastics used in implantology is that no reinforcing fibers will be bared—an eventuality that would be clinically disadvantageous. Appropriately bone screws consisting of non-reinforced plastic of which the external threads exhibit load levels of 11 degrees to 14 degrees, preferably 12 degrees to 13 degrees, may be used in such an implant structure. The relatively small slope of the load bevel implements high clamping forces, as a result of which radial elongation and danger of cracking of the plastic are reduced. Appropriately the bone screws' external thread exhibits the bones at an angular pitch of 6 degrees to 10 degrees, preferably 7 degrees to 9 degrees. This particular angular pitch produces thread self-locking and prevents the bone screw from loosening on its own.

The borehole may be in the form of a metal bush fitted with an inner thread for the purpose of improving anchoring the bone screw in the plastic implant structure. The intervertebral implant also may consist partly of plastic and, in the borehole zones, of metal. This design offers improved guidance and anchoring of the bone screw in the intervertebral implant.

As regards a further preferred embodiment mode, the inside borehole walls are smooth, the thread head of a metallic, longitudinal affixation element cutting or tapping into said smooth wall.

### BRIEF DESCRIPTION OF THE SEVERAL VIEWS OF THE DRAWINGS

The present invention and further embodiment modes of it are elucidated below in relation to the partly schematic representation of two illustrative embodiments.

FIG. 1 is a perspective view including a partial section of the intervertebral implant with inserted bone screws,

FIG. 2 is a front view of the intervertebral implant of FIG. 1,

FIG. 3 is a side view of the intervertebral implant of FIG. 1,

FIG. 4 is a top view of the intervertebral implant of FIG. 1,

FIG. 5 is a front view of the intervertebral implant with a front insert, in partial section,

FIG. 6 is a vertical, longitudinal section of the intervertebral implant of FIG. 5, and

FIG. 7 is a horizontal cross-section of the intervertebral implant of FIG. 5.

### DETAILED DESCRIPTION OF THE INVENTION

The intervertebral implant of FIGS. 1 through 4 consists of a 3D structure 10 exhibiting both a convex top side 1 and a convex underside 2, the two sides each being designed to rest against the end plates of two adjacent vertebras. To attain improved anchoring, the top side 1 and the underside 2 may be topographically shaped and be fitted with grooves, ribs or teeth, or their surfaces may be merely roughened.

The 3D implant structure 10 moreover comprises a left side face 3 and a right side face 4, also a front face 5 and a rear face 6. The implant structure 10 also may be hollow and its outer surface may comprise perforations.

The implant structure 10 comprises a plurality of boreholes 9 passing through it and receiving longitudinal affixation elements 20. Preferably four such boreholes 9 shall be provided.

At least one of the boreholes 9 is designed in a way that the longitudinal affixation element 20 received therein may be rigidly connected to the intervertebral implant. The boreholes 9 are conical for that purpose.

Preferably the affixation elements 20 are bone screws having a head 21 and a tip 22. The head 21 conically tapers toward the shank 23, the conicity of the head 21 corresponding to the conicity of the borehole 9. Moreover the four boreholes 9 may be fitted with inner threads 11.

As regards the embodiment variation shown in FIGS. 5 through 7, the 3D structure 10 is fitted at its front face 5 with a preferably metallic insert 8 into which the affixation elements 20 may be anchored. The insert 8 is mounted in vertically displaceable manner in the 3D structure 10.

While the invention has been shown and described herein with reference to particular embodiments, it is to be understood that the various additions, substitutions, or modifications of form, structure, arrangement, proportions, materials, and components and otherwise, used in the practice and which are particularly adapted to specific environments and operative requirements, may be made to the described embodiments without departing from the spirit and scope of the present invention. Accordingly, it should be understood that the embodiments disclosed herein are merely illustrative of the principles of the invention. Various other modifications may be made by those skilled in the art which will embody the principles of the invention and fall within the spirit and the scope thereof.

We claim:

1. An intervertebral implant for insertion between an upper vertebra having an upper endplate and a lower vertebra having a lower endplate, the implant comprising:

   a body having a first lateral side surface, a second lateral side surface, a posterior face, an anterior face, an upper surface and a lower surface, the upper and lower surfaces being sized and configured to contact the upper and lower endplates, respectively, of the upper and lower vertebrae, the upper surface defining an upper plane and the lower surface defining a lower plane;

   a plate operatively coupled to the body, the plate having a plate top surface located generally on the upper plane and a plate lower surface located generally on the lower plane when the plate is coupled to the body so that the

US 7,875,076 B2

5

body has a first height extending between the upper surface and the lower surface and the plate has a second height extending between the plate top surface and the plate lower surface, the second height being generally equal to the first height, first and second boreholes passing through the plate, the first and second boreholes positioned between the upper and lower planes; and

first and second bone screws each having a head and a shank, the first bone screw being sized and configured to extend through the first borehole and into the upper endplate, the second bone screw being sized and configured to extend through the second borehole and into the lower endplate to anchor the intervertebral implant to the upper and lower vertebrae and the heads of the first and second bone screws positioned between the upper and lower planes.

**2**. The implant of claim **1**, wherein the implant includes a plurality of teeth.

**3**. The implant of claim **1**, wherein the plate contacts the anterior face of the body.

**4**. The implant of claim **3**, wherein the anterior face of the body includes a recess for receiving the plate.

**5**. The implant of claim **1**, wherein the plate is entirely contained between the endplates of the upper and lower vertebrae when the implant is inserted between the upper and lower vertebrae.

**6**. The implant of claim **1**, wherein the body and the plate are pre-assembled so that the body and the plate are inserted between the upper and lower vertebrae as a single unit.

**7**. The implant of claim **1**, wherein the implant includes a vertical center plane, the first and second fasteners being laterally divergent from the vertical center plane.

**8**. The implant of claim **1**, wherein the body comprises a horizontal center plane and the plate is disposed substantially perpendicular to the horizontal center plane.

6

**9**. The implant of claim **1**, wherein the body comprises a horizontal center plane and the plate is displaceable in a direction substantially perpendicular to the horizontal center plane.

**10**. The implant of claim **1**, wherein the body is formed from a first biocompatible material and the plate is formed from a second biocompatible material, the second biocompatible material being different than the first biocompatible material.

**11**. The implant of claim **10**, wherein the plate is made from a biocompatible metal and the body is made from a biocompatible plastic.

**12**. The implant of claim **1**, wherein the body comprises a horizontal center plane and the first and second fastener holes have an axis angled from about twenty-five degrees (25°) to about seventy degrees (70°) with respect to the horizontal center plane.

**13**. The implant of claim **12**, wherein the axis is angled from about thirty-five degrees (35°) to about fifty-five degrees (55°) with respect to the horizontal center plane.

**14**. The implant of claim **1**, wherein the plate is slidably displaceable with respect to the body.

**15**. The implant of claim **1**, wherein the first and second fasteners are bone screws and wherein the first and second fastener holes formed in the plate are internally threaded and the heads of the bone screws are externally threaded for engaging the internally threaded holes.

**16**. The implant of claim **1**, wherein the plate further comprises a horizontal center midplane, the head of the first fastener being located between the top surface of the plate and the horizontal center midplane and the head of the second fastener being located between the bottom surface of the plate and the horizontal center midplane.

*   *   *   *   *

# **EXHIBIT B**

US007846207B2

(12) **United States Patent**
Lechmann et al.

(10) Patent No.: **US 7,846,207 B2**
(45) Date of Patent: **Dec. 7, 2010**

(54) **INTERVERTEBRAL IMPLANT**

(75) Inventors: **Beat Lechmann**, Bettlach (CH);
**Dominique Burkard**, Gretzenbach
(CH); **Chris M. J. Cain**, Norwood (AU);
**Claude Mathieu**, Zurich (CH)

(73) Assignee: **Synthes USA, LLC**, West Chester, PA
(US)

( * ) Notice: Subject to any disclaimer, the term of this
patent is extended or adjusted under 35
U.S.C. 154(b) by 1412 days.

(21) Appl. No.: **11/199,599**

(22) Filed: **Aug. 8, 2005**

(65) **Prior Publication Data**

US 2006/0085071 A1      Apr. 20, 2006

**Related U.S. Application Data**

(63) Continuation of application No. PCT/CH03/00089,
filed on Feb. 6, 2003.

(51) **Int. Cl.**
*A61F 2/44*          (2006.01)

(52) **U.S. Cl.** ................................. **623/17.11**; 623/17.16

(58) **Field of Classification Search** ................... 606/63,
606/291, 90, 293; 623/17.11, 17.15, 17.16
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

2,621,145 A    12/1952  Sano

(Continued)

FOREIGN PATENT DOCUMENTS

CA        2317791  A1     8/1999

DE        30 42 003  A1    7/1982
DE        39 33 459  A1    4/1991

(Continued)

OTHER PUBLICATIONS

Office Notice of Reason of Rejection issued by the Japanese Patent
Office.

*Primary Examiner*—Todd E Manahan
*Assistant Examiner*—Lynnsy Schneider
(74) *Attorney, Agent, or Firm*—Stroock & Stroock & Lavan
LLP

(57) **ABSTRACT**

An intervertebral implant having a three-dimensional body
(**10**) and a securing plate (**1**). The three-dimensional body
(**10**) includes an upper side (**1**) and an underside (**2**) which are
suitable for abutting the end plates of two adjacent vertebral
bodies, a left side surface (**3**) and a right side surface (**4**), a
front surface (**5**) and a rear surface (**6**), a horizontal middle
plane (**7**) between the upper side (**1**) and the underside (**2**), and
a vertical middle plane (**12**) extending from the front surface
(**5**) to the rear surface (**6**). The three-dimensional body further
includes a plurality of boreholes (**9***a*) passing through the
body (**10**), which are suitable for accommodating longitudi-
nal fixation elements (**20**). The intervertebral implant also
includes a front plate (**8**) displaceably disposed as an insert
with the front side (**5**) of the three-dimensional body, the front
plate (**8**) having a plurality of boreholes (**9**) in which the
longitudinal fixation elements (**20**) can be anchored, and
whose openings overlap with the openings of the boreholes of
the three-dimensional body (**10**). A securing plate can be
fastened essentially parallel to the front plate (**8**) at the three-
dimensional body (**10**) in such a manner that the boreholes of
the front plate (**9**) are covered at least partly by the securing
plate (**18**). By virtue of the configuration of the intervertebral
implant, a rigid, firm connection between the intervertebral
implant and the longitudinal fixation elements used to fasten
it, is possible.

**43 Claims, 6 Drawing Sheets**



**US 7,846,207 B2**

Page 2

## U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| 4,135,506 A | 1/1979 | Ulrich |
| 4,501,269 A | 2/1985 | Bagby |
| 4,512,038 A | 4/1985 | Alexander et al. |
| 4,627,853 A | 12/1986 | Campbell et al. |
| 4,678,470 A | 7/1987 | Nashef et al. |
| 4,717,115 A | 1/1988 | Schmitz |
| 4,858,603 A | 8/1989 | Clemow et al. |
| 4,904,261 A | 2/1990 | Dove et al. |
| 4,936,851 A | 6/1990 | Fox et al. |
| 4,950,296 A | 8/1990 | McIntyre |
| 4,961,740 A | 10/1990 | Ray et al. |
| 4,978,350 A  * | 12/1990 | Wagenknecht ............... 606/312 |
| 4,994,084 A | 2/1991 | Brennan |
| 5,026,373 A | 6/1991 | Ray et al. |
| 5,053,049 A | 10/1991 | Campbell |
| 5,062,850 A | 11/1991 | MacMillan et al. |
| 5,084,051 A | 1/1992 | Törmälä et al. |
| 5,112,354 A | 5/1992 | Sires |
| 5,192,327 A | 3/1993 | Brantigan |
| 5,211,664 A | 5/1993 | Tepic et al. |
| 5,281,226 A | 1/1994 | Davydov et al. |
| 5,284,655 A | 2/1994 | Bogdansky et al. |
| 5,298,254 A | 3/1994 | Prewett et al. |
| 5,314,476 A | 5/1994 | Prewett et al. |
| 5,348,788 A | 9/1994 | White |
| 5,405,391 A | 4/1995 | Hednerson et al. |
| 5,423,817 A | 6/1995 | Lin |
| 5,439,684 A | 8/1995 | Prewett et al. |
| 5,458,638 A | 10/1995 | Kuslich et al. |
| 5,489,308 A | 2/1996 | Kuslich et al. |
| 5,507,818 A | 4/1996 | McLaughlin |
| 5,514,180 A | 5/1996 | Heggeness et al. |
| 5,522,899 A | 6/1996 | Michelson |
| 5,534,030 A | 7/1996 | Navarro et al. |
| 5,549,679 A | 8/1996 | Kuslich |
| 5,554,191 A | 9/1996 | Lahille et al. |
| 5,556,430 A | 9/1996 | Gendler |
| 5,569,308 A | 10/1996 | Sottosanti |
| 5,571,190 A | 11/1996 | Ulrich et al. |
| 5,571,192 A | 11/1996 | Schönhöffer |
| 5,607,474 A | 3/1997 | Athanasiou et al. |
| 5,609,635 A | 3/1997 | Michelson |
| 5,609,636 A | 3/1997 | Kohrs et al. |
| 5,609,637 A | 3/1997 | Biedermann et al. |
| 5,676,699 A | 10/1997 | Gogolewski et al. |
| 5,683,394 A | 11/1997 | Rinner |
| 5,683,463 A | 11/1997 | Godefroy et al. |
| 5,702,449 A | 12/1997 | McKay |
| 5,702,451 A | 12/1997 | Biedermann et al. |
| 5,702,453 A | 12/1997 | Rabbe et al. |
| 5,702,455 A | 12/1997 | Saggar |
| 5,728,159 A | 3/1998 | Stroever et al. |
| 5,735,905 A | 4/1998 | Parr |
| 5,766,253 A | 6/1998 | Brosnahan, III |
| 5,776,194 A | 7/1998 | Mikol et al. |
| 5,776,197 A | 7/1998 | Rabbe et al. |
| 5,776,198 A | 7/1998 | Rabbe et al. |
| 5,776,199 A | 7/1998 | Michelson |
| 5,782,915 A | 7/1998 | Stone |
| 5,785,710 A | 7/1998 | Michelson |
| 5,800,433 A | 9/1998 | Benzel et al. ................. 606/61 |
| 5,865,849 A | 2/1999 | Stone |
| 5,876,452 A | 3/1999 | Athanasiou et al. |
| 5,885,299 A | 3/1999 | Winslow et al. |
| 5,888,222 A | 3/1999 | Coates et al. |
| 5,888,223 A | 3/1999 | Bray, Jr. ...................... 623/17 |
| 5,888,224 A | 3/1999 | Beckers et al. |
| 5,888,227 A | 3/1999 | Cottle |
| 5,895,426 A | 4/1999 | Scarborough et al. |
| 5,899,939 A | 5/1999 | Boyce et al. |
| 5,902,338 A | 5/1999 | Stone |
| 5,904,719 A | 5/1999 | Errico et al. |
| 5,910,315 A | 6/1999 | Stevenson et al. |
| 5,922,027 A | 7/1999 | Stone |
| 5,944,755 A | 8/1999 | Stone |
| 5,968,098 A | 10/1999 | Winslow |
| 5,972,368 A | 10/1999 | McKay |
| 5,976,187 A | 11/1999 | Richelsoph |
| 5,980,522 A | 11/1999 | Koros et al. |
| 5,981,828 A | 11/1999 | Nelson et al. |
| 5,984,967 A | 11/1999 | Zdeblick et al. |
| 5,989,289 A | 11/1999 | Coates et al. |
| 6,013,853 A | 1/2000 | Athanasiou et al. |
| 6,025,538 A | 2/2000 | Yaccarino, III |
| 6,033,405 A | 3/2000 | Winslow et al. |
| 6,033,438 A | 3/2000 | Bianchi et al. |
| 6,039,762 A | 3/2000 | McKay |
| 6,045,579 A | 4/2000 | Hochshuler et al. |
| 6,045,580 A | 4/2000 | Scarborough et al. |
| 6,080,158 A | 6/2000 | Lin |
| 6,080,193 A | 6/2000 | Hochshuler et al. |
| 6,090,998 A | 7/2000 | Grooms et al. |
| 6,096,081 A | 8/2000 | Grivas et al. |
| 6,110,482 A | 8/2000 | Khouri et al. |
| 6,123,731 A | 9/2000 | Boyce et al. |
| 6,129,763 A | 10/2000 | Chauvin et al. |
| 6,143,030 A | 11/2000 | Schroder |
| 6,143,033 A | 11/2000 | Paul et al. |
| 6,156,070 A | 12/2000 | Incavo et al. |
| 6,193,756 B1 | 2/2001 | Studer et al. |
| 6,200,347 B1 | 3/2001 | Anderson et al. |
| 6,206,922 B1 | 3/2001 | Zdeblick et al. |
| 6,231,610 B1 | 5/2001 | Geisler |
| 6,235,059 B1 | 5/2001 | Benezech et al. |
| 6,241,769 B1 | 6/2001 | Nicholson et al. |
| 6,245,108 B1 | 6/2001 | Biscup |
| 6,258,125 B1 | 7/2001 | Paul et al. |
| 6,261,586 B1 | 7/2001 | McKay |
| 6,264,695 B1 | 7/2001 | Stoy |
| 6,270,528 B1 | 8/2001 | McKay |
| 6,322,562 B1 * | 11/2001 | Wolter ......................... 606/62 |
| 6,342,074 B1 | 1/2002 | Simpson |
| 6,364,880 B1 | 4/2002 | Michelson |
| 6,423,063 B1 | 7/2002 | Bonutti |
| 6,432,106 B1 | 8/2002 | Fraser |
| 6,458,158 B1 | 10/2002 | Anderson et al. |
| 6,468,311 B2 | 10/2002 | Boyd et al. |
| 6,569,201 B2 | 5/2003 | Moumene et al. |
| 6,638,310 B2 | 10/2003 | Lin et al. |
| 6,645,212 B2 * | 11/2003 | Goldhahn et al. ........... 606/291 |
| 6,761,739 B2 | 7/2004 | Shepard |
| 6,884,242 B2 * | 4/2005 | LeHuec et al. ............. 606/86 B |
| 6,972,019 B2 * | 12/2005 | Michelson ............... 606/86 A |
| 6,984,234 B2 | 1/2006 | Bray ........................... 606/69 |
| 7,112,222 B2 | 9/2006 | Fraser et al. |
| 7,172,627 B2 * | 2/2007 | Fiere et al. ............... 623/17.11 |
| 7,232,464 B2 | 6/2007 | Mathieu et al. ......... 623/17.11 |
| 2001/0001129 A1 | 5/2001 | McKay et al. |
| 2001/0005796 A1 | 6/2001 | Zdeblick et al. |
| 2001/0010021 A1 | 7/2001 | Boyd et al. |
| 2001/0016777 A1 | 8/2001 | Biscup |
| 2001/0031254 A1 | 10/2001 | Bianchi et al. |
| 2001/0039456 A1 | 11/2001 | Boyer, II et al. |
| 2001/0041941 A1 | 11/2001 | Boyer, II et al. |
| 2002/0010511 A1 | 1/2002 | Michelson |
| 2002/0022843 A1 | 2/2002 | Michelson .................... 606/70 |
| 2002/0029084 A1 | 3/2002 | Paul et al. |
| 2002/0082597 A1 | 6/2002 | Fraser |
| 2002/0082603 A1 * | 6/2002 | Dixon et al. ................. 606/69 |
| 2002/0091447 A1 | 7/2002 | Shimp et al. |
| 2002/0099376 A1 | 7/2002 | Michelson .................... 606/61 |
| 2002/0106393 A1 | 8/2002 | Bianchi et al. |
| 2002/0111680 A1 | 8/2002 | Michelson |
| 2002/0147450 A1 | 10/2002 | LeHuec et al. ................ 606/61 |

**US 7,846,207 B2**

Page 3

| | | | | | | |
|---|---|---|---|---|---|---|
| 2002/0169508 A1 | 11/2002 | Songer et al. | ............ 623/17.11 | WO | WO 96/39988 | 12/1996 |
| 2002/0193880 A1* | 12/2002 | Fraser | ...................... 623/17.11 | WO | WO 97/20526 | 6/1997 |
| 2003/0078668 A1* | 4/2003 | Michelson | ............... 623/17.16 | WO | WO 97/25941 | 7/1997 |
| 2003/0125739 A1 | 7/2003 | Bagga et al. | | WO | WO 97/25945 | 7/1997 |
| 2004/0210314 A1 | 10/2004 | Michelson | | WO | WO 97/39693 | 10/1997 |
| 2005/0033433 A1 | 2/2005 | Michelson | | WO | WO 98/17209 | 4/1998 |
| 2007/0219635 A1 | 9/2007 | Mathieu et al. | .......... 623/17.16 | WO | WO 98/55052 | 12/1998 |
| | | | | WO | WO 98/56319 | 12/1998 |
| | FOREIGN PATENT DOCUMENTS | | | WO | WO 98/56433 | 12/1998 |
| | | | | WO | WO 99/29271 | 6/1999 |
| DE | 42 42 889 A1 | 6/1994 | | WO | WO 99/32055 | 7/1999 |
| DE | 44 09 392 A1 | 9/1995 | | WO | WO 99/38461 | 8/1999 |
| DE | 195 04 867 C1 | 2/1996 | | WO | WO 99/38463 | 8/1999 |
| DE | 299 13 200 U1 | 9/1999 | | WO | WO 99/56675 | 11/1999 |
| EP | 0505634 A1 | 9/1992 | | WO | WO 99/63914 | 12/1999 |
| EP | 0517030 A2 | 12/1992 | | WO | WO 00/07527 | 2/2000 |
| EP | 0577178 A1 | 1/1994 | | WO | WO 00/07528 | 2/2000 |
| EP | 0639351 A2 | 2/1995 | | WO | WO 00/30568 | 6/2000 |
| EP | 0505634 B1 | 8/1997 | | WO | WO 00/40177 | 7/2000 |
| EP | 0966930 | 12/1999 | | WO | WO 00/41654 | 7/2000 |
| EP | 0968692 A1 | 1/2000 | | WO | WO 00/59412 | 10/2000 |
| EP | 0906065 B1 | 1/2004 | | WO | WO 00/66044 A1 | 11/2000 |
| FR | 2 697 996 | 5/1994 | | WO | WO 00/66045 A1 | 11/2000 |
| FR | 2 700 947 | 8/1994 | | WO | WO 00/74607 A1 | 12/2000 |
| FR | 2 753 368 | 3/1998 | | WO | WO 01/08611 | 2/2001 |
| GB | 2 148 122 A | 5/1985 | | WO | WO 01/56497 A2 | 8/2001 |
| SU | 1465040 A1 | 3/1989 | | WO | WO 01/93742 A2 | 12/2001 |
| WO | WO 88/03417 | 5/1988 | | WO | WO 01/95837 A1 | 12/2001 |
| WO | WO 88/10100 | 12/1988 | | | | |
| WO | WO 92/01428 | 2/1992 | | | | |
| WO | WO 95/21053 | 8/1995 | | * cited by examiner | | |



**Fig. 1**



**Fig. 2**



Fig. 3



**Fig. 4**



Fig. 5                    Fig. 6



Fig. 7

US 7,846,207 B2

1

## INTERVERTEBRAL IMPLANT

### CROSS REFERENCE TO RELATED APPLICATION

This application is a continuation of International Patent Application No. PCT/CH2003/000089, filed Feb. 6, 2003, the entire contents of which is expressly incorporated herein by reference.

### TECHNICAL FIELD

The present invention relates generally to intervertebral implants.

### BACKGROUND OF THE INVENTION

GB-A-2 207 607 discloses an intervertebral implant, which has a horseshoe-shaped configuration with a plurality of cylindrical holes. The holes are smooth on the inside and only have a stop for the heads of the bone screws, which are to be introduced therein. A disadvantage of this arrangement is that the fastening screws, introduced therein, can be anchored only with their shaft in the bone. This does not result in a rigid connection with the horseshoe-shaped intervertebral implant. When the anchoring of the screw shaft in the bone is weakened, the intervertebral implant becomes movable with respect to the screw and the bone screws tend to migrate, endangering the blood vessels. Moreover, the loosening of the intervertebral implant can lead to a pseudoarthrosis.

U.S. Patent Publication US-A 2000/0010511 (Michelson) discloses an intervertebral implant, which, at its front surface, has two boreholes with an internal thread, into which bone screws with a threaded head can be introduced. A disadvantage of this implant is that the bone screws can become loose and are not secured against being screwed out or falling out. A further disadvantage is that the bone screws are fastened completely to the implant body itself and that therefore the latter experiences a relatively large stress.

Screws which emerge at the anterior or anterolateral edge of the vertebral body because of loosening run the risk of injuring main vessels such as the aorta and Vena cava, as well as supply vessels such as lumbar arteries and veins. Injury to these main vessels may result in internal bleeding possibly causing death within a very short time. Loosening of screws is more likely when they are not mounted angularly firmly.

### SUMMARY OF THE INVENTION

The present invention is to provide a remedy for the above-discussed disadvantages. The present invention is directed to an intervertebral implant which can enter into a permanent, rigid connection with bone fixation means, so that, even if the bone structure is weakened, there is no loosening between the intervertebral implant and the bone fixation means. Moreover, over a separately constructed front plate, there is tension chording for the bone fixation elements, so that the implant body experiences less stress, that is, is superimposed tensions. Moreover, a securing plate enables all bone fixation elements to be secured simultaneously.

The present invention accomplishes the objective set out above with an intervertebral implant, comprising a three-dimensional body having an upper side and an under side which are suitable for abutting the end plates of two adjacent vertebral bodies. The three-dimensional body further includes a left side surface and a right side surface, a front surface and a rear surface, a horizontal middle plane between the upper side and the under side, and a vertical middle plane extending from the front surface to the rear surface. The three-dimensional body further comprising a plurality of boreholes, having openings at least at or near the front surface, passing there through and being suitable for accommodating longitudinal fixation elements. The intervertebral implant further including a front plate displaceably disposed as an insert with the front side of the three-dimensional body, where the front plate includes a plurality of boreholes having openings and in which the longitudinal fixation elements can be anchored, and whose openings overlap with the openings of the boreholes of the three-dimensional body. The intervertebral implant has a securing plate fastened substantially parallel to the front plate in such a manner that the boreholes of the front plate are covered at least partly by the securing plate. An advantage achieved by the present invention, arises essentially from the solid connection between the intervertebral implant and the longitudinal fixation elements, used to fasten it.

Compared to the two-part implants of the state of the art, for which a front plate is implanted in a separate step, the present invention has the advantage that the implantation of the intervertebral implant may be carried out in one step and, with that, can be carried out more easily and more quickly. A further advantage is that the intervertebral implant is fixed as frontally as possible at the body of the vertebra. That is, at a place where good bone material usually is present. The result is an anterior movement limitation without a greater risk to the surrounding structures. The load is still absorbed under compression by the intervertebral implant and not by the front plate or the fixation screws (longitudinal fixation elements).

A method for implanting an intervertebral implant of the present invention between two adjacent vertebral bodies includes introducing the intervertebral implant, having a three-dimensional body, a front plate, and one or more boreholes, between two adjacent vertebral bodies, attaching longitudinal fixation elements with heads through the boreholes into the vertebral bodies, and attaching a securing plate by means of a fastening agent over the heads of the longitudinal fixation elements to the front plate, such that the heads of the longitudinal fixation elements are captured between the front plate and the securing plate wherein the longitudinal fixation elements are secured against being shifted relative to the intervertebral implant.

Other objectives and advantages in addition to those discussed above will become apparent to those skilled in the art during the course of the description of a preferred embodiment of the invention which follows. In the description, reference is made to accompanying drawings, which form a part thereof, and which illustrate an example of the invention. Such example, however, is not exhaustive of the various embodiments of the invention, and therefore, reference is made to the claims that follow the description for determining the scope of the invention.

### BRIEF DESCRIPTION OF THE DRAWINGS

FIG. **1** shows an exploded drawing of the intervertebral implant,

FIG. **2** shows a longitudinal fixation element in the form of a screw,

FIG. **3** shows an elevation of the intervertebral implant of FIG. **1**,

FIG. **4** shows a side view of the intervertebral implant of FIG. **1**,

3

FIG. **5** shows a three-dimensional detailed representation of the body of the intervertebral implant, which shows the connecting elements to the front plate of FIG. **6**,

FIG. **6** shows a three-dimensional detailed representation of the front plate of the intervertebral implant and the connecting elements to the body of FIG. **5** and

FIG. **7** shows a completely installed intervertebral implant with front plate and securing plate.

## DESCRIPTION OF THE PREFERRED EMBODIMENTS

The intervertebral implant, shown in FIG. **1-7**, includes a three-dimensional body **10** in the form of a cage with an upper side **1** and an underside **2**, which are suitable for abutting the end plates of two adjacent vertebral bodies, a left side surface **3** and a right side surface **4**, a front surface **5** and a back surface **6**, a horizontal middle plane **7** located between the upper side **1** and the underside **2**, a vertical middle plane **12** extending from the front surface **5** to the rear surface **6** and four boreholes **9**a, which pass through the body **10** and are suitable for accommodating longitudinal fixation elements **20**. The body **10** may be constructed as a hollow body, the mantle surfaces of which are provided with perforations **19**. The upper side **1** and/or under side **2** of the intervertebral implant may preferably be convex in shape, not planar. A convex shape to the upper side **1** and the underside **2** allows for an improved fit with the end plates of the adjacent vertebral bodies by the intervertebral implant. Further, the side surfaces **1-6** of the intervertebral implant may be essentially convex, as well.

As shown in FIG. **7**, the upper side **1** and the underside **2** of the three-dimensional body **10** are provided with structuring in the form of teeth **30**.

At the front surface of the three-dimensional body **10**, a front plate **8** may be mounted, which is disposed perpendicular to the horizontal central plane of the intervertebral implant and through which four boreholes **9** pass and in which the longitudinal fixation elements **20** can be anchored. The front plate **8**, as shown in FIGS. **5** and **6**, is constructed as an insert for the three-dimensional body **10**. The three-dimensional body **10** has a semicircular groove **27** extending parallel to the vertical middle plane **12** at the transitions of the left side surface **3** and the right side surface **4** (FIG. **5**) to the front surface **5**. Correspondingly, the front plate **8** has right and left (FIG. **6**) similarly extending and similarly dimensioned, semicircular rail **28**. As a result, the front plate can be pushed and positioned easily with its two lateral rails **28** into the corresponding grooves **27** of the body **10** during the production of the intervertebral implant.

In one embodiment, at least one of the boreholes **9** in the front plate is constructed so that a longitudinal fixation element **20**, accommodated therein, can be connected rigidly with the front plate. A rigid connection may be accomplished, for example, owing to the fact that at least one of the boreholes **9** of the front plate **8** has an internal thread. A corresponding longitudinal fixation element **20**, bone screw, with a threaded end can then be screwed together rigidly with the implant. In an alternative embodiment, the four boreholes **9** in the front plate may have an internal thread **11**, so that longitudinal fixation elements **20** can be connected rigidly with the front plate **8**.

As discussed, the front plate **8** may be disposed, preferably vertically to the horizontal central plane, so that it can be displaced vertically with respect to the three-dimensional body **10**. By these means, "stress shielding" (protection and

4

neutralization of mechanical stresses) is attained, which permits the end plates to be adapted to the intervertebral implant during the healing process.

The intervertebral implant may have a securing plate **18**, which can be fastened by means of a screw connection parallel to the front plate **8** at the front plate **8** in such a manner that the boreholes **9** of the front plate **8** are partly covered by the securing plate **18**. The securing plate **18** may have a central borehole **17** provided, preferably, with an internal thread. Corresponding thereto, the front plate **8** has a central borehole **15** for accommodating fastening means **16**. Preferably, the central borehole **15** has an internal thread **14** for accommodating a fastening means **16** in the form of a screw. The securing plate **18** may also be fastened by a bayonet catch or a click catch. By fastening the securing plate **18** to the front plate **8**, the heads **21** of the longitudinal fixation elements **20** (discussed later) are contacted by the securing plate **18**, so that they are secured against being ejected or screwed out.

Preferably, the boreholes **9**a of the three-dimensional body **10** do not pass either through the left side surface **3** or the right side surface **4** or completely through the front surface **5**. The front surface **5**, preferably, is also not crossed by the boreholes **9**a. Further, the horizontal middle plane **7** is not pierced by the boreholes **9**a. Only the axes **24** of the longitudinal fixation elements **20**, introduced therein, intersect the horizontal middle plane **7** of the body **10**. As seen from the front surface **5**, the boreholes of the three-dimensional body **10** and the front plate **8** diverge. The axes **24** of the boreholes of the three-dimensional plate **10** and the front plate **8** enclose an angle β ranging from 20° to 60°, specifically from 36° to 48°, and more preferably an angle β of 42° with the horizontal middle plane **7** (FIG. **4**) and an angle α ranging from 10° to 45°, specifically from 27° to 33°, and more preferably an angle α of 30° with the vertical middle plane **12** (FIG. **3**). Thus, better access for introducing the screws is achieved.

In one embodiment, at least one of the boreholes **9** of the front plate **8** may taper conically towards the underside **2**, so that a bone screw, with a corresponding conical head, can be anchored rigidly therein. The conical borehole preferably has a conical angle, which is smaller than the resulting frictional angle. Advisably, the conicity of the conical borehole is 1:3.75 to 1:20.00 and preferably 1:5 to 1:15.

In another configuration, at least two of the boreholes **9** of the front plate **8** extend parallel to each other. This makes insertion of the intervertebral implant easier. In another embodiment, at least two of the boreholes **9** of the front plate **8** diverge when viewed from the front side. By these means, a region of the vertebral body, which has a better bone quality than does the center of the vertebral body, is reached by the bone screws.

To improve the anchoring of the bone screw in a plastic body of the intervertebral implant (discussed later), a metal sleeve with an internal thread (not shown) may be inserted in the boreholes of the front plate and three-dimensional body. The intervertebral implant may also consist only partially of an x-ray transparent plastic and, in the region of the boreholes consist of a metal, such as titanium or a titanium alloy. Improved guidance and anchoring of the bone screws in the intervertebral implant may be achieved. Further, the boreholes **9** may have a smooth internal wall, into which the threaded head of a metallic, longitudinal fixation element may cut or be molded.

Depending on circumstances, two, three, four or more longitudinal fixation elements may be connected rigidly with the intervertebral implant. Preferably, at least one fixation element should pierce the upper side and at least one fixation element the underside of the intervertebral implant. The lon-

gitudinal fixation elements **20** may have either a smooth head, so that there will not be a rigid connection with the implant or a threaded, conical or expendable end, so that there will be a rigid connection with the implant. In both cases, however, the longitudinal fixation elements **20** are secured by the securing plate against rotating out, being ejected out or falling out at a later time.

The longitudinal fixation elements **20** are preferably constructed as bone screws. As shown in FIG. **2**, the longitudinal fixation elements **20**, introduced into the boreholes **9**, have a head **21**, a tip **22**, a shaft **23** and an axis **24**. The head **21** may preferably be provided with an external thread **25**, which corresponds to the internal thread **11** of the borehole **9**, so that the heads **21** can be anchored in the boreholes **9** in a rigid manner. The shaft **23** may be provided with a thread **26**, which is self-drilling and self-cutting. The load thread angle of the thread **26** has a range of between 11° to 14°, preferably between 12° and 13°, and more preferably a load thread angle of 12.5°. The pitch angle of the thread may have a range of between 6° and 10°, preferably between 7° and 9°, and more preferably have a pitch angle of 8°. The special pitch angle produces a self-retardation in the thread, thus ensuring that the bone screw will not automatically become loose.

In the case of a second, possibly rigid type of connection, a longitudinal fixation element **20**, bone screw, may preferably be used, the head of which tapers conically towards the shaft, the conicity of the head corresponding to the conicity of the borehole of the intervertebral implant. The longitudinal fixation elements may also be constructed as threadless cylindrical pins, which are provided with a drilling tip, preferably in the form of a trocar. A further variation consist therein that the longitudinal fixation elements are constructed as spiral springs. Finally, the longitudinal fixation elements may also be constructed as single-vaned or multi-vaned spiral blades.

As shown in FIG. **7**, two longitudinal fixation elements **20** pierce the upper side **1** and two longitudinal fixation elements **20** pierce the underside **2** of the body **10**, thereby anchoring the intervertebral implant to the adjacent vertebral bodies.

The intervertebral implant may be produced from any material which is compatible with the body. Preferably, the three-dimensional body **10** may consist of a body-compatible plastic which has not been reinforced and which may be transparent to x-rays. The advantage over fiber-reinforced plastics, which are already known in implant technology, is that no reinforcing fibers are exposed. Such exposure may be disadvantageous clinically. In such a three-dimensional body **10** constructed of a plastic that has not been reinforced, the use bone screws may be preferable. As discussed previously, the external thread of the bone screw(s) may have a load thread angle range of 11° to 14°, and preferably between 12° to 13°. A comparatively slight inclination of the load flank brings about a high clamping force. As a result, radial expansion and the danger of forming cracks in the plastic are reduced. Furthermore, the external thread of the bone screw(s) may preferably have a pitch angle between 6° and 10° and preferably between 7° and 9°.

The front plate **8** may be made from materials different than the three-dimensional body **10**. The front plate **8** is preferably made from a metallic material. Titanium or titanium alloys are particularly suitable as metallic materials. The complete tension chord arrangement (front plate and screws) may also be made from implant steel or highly alloyed metallic materials, such as CoCrMo or CoCrMoC. The advantage of titanium lies in that there is good tissue compatibility and the good ingrowing behavior of bones. The advantage of highly alloyed metallic materials lies in their high-strength values, which permit filigree constructions.

A brief description of a surgical procedure follows in order to explain the invention further.

The intervertebral implant, in the form of a three-dimensional body **10**, is introduced between two adjacent vertebral bodies by means of a suitable instrument. Longitudinal fixation elements **20**, in the form of bone screws, securing the three-dimensional body **10** are screwed/inserted by means of a suitable aiming device through the boreholes **9** of the front plate **8** into the vertebral bodies. The front plate **8** may be displaced vertically with respect to the three-dimensional body **10**, such that the openings of the boreholes **9a** of the three-dimensional plate **10** and the boreholes **9** of the front plate **8** overlap, to obtain stress shielding. The securing plate **18** is fastened by means of the fastening agent **16** in the form of a screw over the heads **21** of the longitudinal fixation elements **20** at the front plate **8**, so that the heads **21** of the longitudinal fixation elements **20** and, with that, the screws themselves, are captured between the front plate **8** and the securing plate **18** and secured against being shifted relative to the three-dimensional body **10** (for example, by falling out or by turning out). The fastening agent **16**, in the form of a screw, preferably is provided with a thread, which is distinguished by a large self-retardation.

The invention claimed is:

**1**. An intervertebral implant for insertion into an intervertebral disc space between endplates of adjacent vertebral bodies, the implant comprising:

a three-dimensional body having an upper side and an underside provided with teeth, the upper side and underside suitable for abutting the end plates of the adjacent vertebral bodies, the upper side defining an upper plane and the underside defining an underside plane, a left side surface and a right side surface, a front surface including first and second partial boreholes, a rear surface, a horizontal middle plane between the upper side and the underside, and a vertical middle plane extending from the front surface to the rear surface;

a front plate mounted to the front surface of the three-dimensional body, the front plate including a first borehole and a second borehole having openings, the first borehole and the second borehole each being aligned with a respective first and second partial borehole;

first and second fixation elements being anchorable within the first and second boreholes and the first and second partial boreholes, respectively, the first and second fixation elements having first and second heads and first and second shafts, respectively, the first and second heads and the first and second boreholes and partial boreholes positioned substantially between the upper and underside planes in an assembled configuration, the first and second shafts being positioned substantially on an opposite side of the upper and underside planes, respectively, in the assembled configuration; and

a securing plate fastened substantially parallel to the front plate in such a manner that the first and second boreholes of the front plate and the first and second heads are covered at least partly by the securing plate.

**2**. The intervertebral implant according to claim **1**, wherein the securing plate is fastened parallel to the front plate, by at least one of a screw connection, a bayonet catch or a click catch.

**3**. The intervertebral implant according to claim **1**, wherein the securing plate has a central borehole.

**4**. The intervertebral implant according to claim **3**, wherein the front plate has a central borehole for accommodating a fastening agent.

US 7,846,207 B2

**5**. The intervertebral implant according to claim **1**, wherein at least one of the first and second boreholes includes internal threads.

**6**. The intervertebral implant according to claim **5**, wherein the first and second boreholes are tapered conically in the direction of the underside of the three-dimensional body.

**7**. The intervertebral implant according to claim **6**, wherein the first and second boreholes have a conical angle, which is smaller than a resulting angle of friction.

**8**. The intervertebral implant according to claim **7**, wherein a conicity of the first and second boreholes range from 1:3.75 to 1:20.00.

**9**. The intervertebral implant according to claim **7**, wherein a conicity of the first and second boreholes range from 1:5 to 1:15.

**10**. The intervertebral implant according to claim **1**, wherein the front plate is preferably disposed vertically relative to the horizontal middle plane.

**11**. The intervertebral implant according to claim **10**, wherein the front plate is disposed in the three-dimensional body, such that it can be shifted vertically relative to the middle plane.

**12**. The intervertebral implant according to claim **1**, wherein the front plate is constructed of a material, which is different from that of the three-dimensional body and is metallic.

**13**. The intervertebral implant according to claim **1**, wherein the side surfaces are constructed convexly.

**14**. The intervertebral implant according to claim **1**, wherein at least one of the upper side and underside are not planar and are constructed convexly.

**15**. The intervertebral implant according to claim **1**, wherein the partial boreholes of the three-dimensional body do not pass completely through the front surface.

**16**. The intervertebral implant according to claim **1**, wherein the first and second boreholes of the front plate diverge when viewed from the front surface.

**17**. The intervertebral implant according to claim **1**, wherein axes of the first and second boreholes define an angle β, ranging from 20° to 60° with the horizontal middle plane.

**18**. The intervertebral plant according to claim **1**, wherein axes of the first and second boreholes enclose an angle α ranging from 10° to 45° with the vertical middle plane.

**19**. The intervertebral implant according to claim **1**, wherein the three-dimensional body consists of a reinforced plastic.

**20**. The intervertebral implant according to claim **1**, wherein the three-dimensional body consists partly of a material which is transparent to x-rays.

**21**. The intervertebral implant according to claim **1**, wherein the first and second boreholes of the front plate have a smooth inner wall, and the first and second heads of the first and second fixation elements include external threads for embedding in the smooth inner walls of the first and second boreholes.

**22**. The intervertebral implant according to claim **1**, wherein the three-dimensional body is constructed as a hollow body and includes casing surfaces which are provided with perforations.

**23**. The intervertebral implant according to claim **1**, wherein the first and second heads are in contact with the securing plate in the assembled configuration.

**24**. The intervertebral implant according to claim **23**, wherein each of the first and second fixation elements include an axis, the axes of the first and second fixation elements intersect the horizontal middle plane of the three-dimensional body.

**25**. The intervertebral implant according to claim **1**, wherein the first fixation element pierces the upper side and the second fixation element pierces the underside.

**26**. The intervertebral implant according to claim **1**, wherein the first and second boreholes include internal threads and the first and second heads of the first and second fixation elements are provided with an external thread, which is threadably matable with the internal threads of the first and second boreholes.

**27**. The intervertebral implant according to claim **1**, wherein the first and second heads taper conically toward the first and second shafts, respectively.

**28**. The intervertebral implant according to claim **1**, wherein the first fixation element passes through the upper side and the second fixation element passes through the underside.

**29**. The intervertebral implant according to claim **1**, wherein the first and second fixation elements are constructed as bone screws, the first and second shafts including a thread capable of self-drilling and self-cutting.

**30**. The intervertebral implant according to claim **1**, wherein the first and second fixation elements are constructed as a threadless cylindrical pins with a drill tip.

**31**. The intervertebral implant according to claim **1**, wherein the first and second fixation elements are constructed as spiral springs.

**32**. The intervertebral implant according to claim **1**, wherein the first and second fixation elements are constructed as single-vaned or multi-vaned spiral blades.

**33**. The intervertebral implant according to claim **1**, wherein the first and second shafts of the first and second fixation elements include a plurality of threads having a load thread angle of 11° to 14°.

**34**. The intervertebral implant according to claim **1**, wherein the first and second shafts of the first and second fixation elements include a plurality of threads having a pitch angle ranging from 6° to 10°.

**35**. The intervertebral implant according to claim **1**, wherein axes of the first and second boreholes define an angle β, ranging from 36° to 48, with the horizontal middle plane.

**36**. The intervertebral plant according to claim **1**, wherein axes of the first and second boreholes enclose an angle α ranging from 27° to 33° with the vertical middle plane.

**37**. The intervertebral implant according to claim **1**, wherein the front surface of the three-dimensional body includes a recess for receiving the front plate.

**38**. A method for implanting an intervertebral implant between first and second adjacent vertebral bodies, said method comprising the steps of:

(a) introducing the intervertebral implant between the first and second adjacent vertebral bodies, the implant comprising:

   a three-dimensional body having first and second partial boreholes extending through a front surface, an upper side and an underside including teeth, the upper side defining an upper plane and the underside defining an underside plane, and

   a front plate having first and second boreholes which are aligned with the first and second partial boreholes, respectively, the first and second boreholes and first and second partial boreholes being positioned substantially between the upper and underside planes;

(b) attaching a first fixation element having a first head portion and a first shaft portion through the first borehole of the front plate, through the first partial borehole of the three-dimensional body, and into the first vertebral body;

9

(c) attaching a second fixation element having a second head portion and a second shaft portion through the second borehole of the front plate, through the second partial borehole of the three-dimensional body, and into the second vertebral body; and

(d) attaching a securing plate with a fastening agent over the first and second head portions of the first and second fixation elements to the front plate, such that the first and second head portions of the first and second fixation elements are captured between the front plate and the securing plate wherein the first and second fixation elements are secured against being shifted relative to the intervertebral implant.

**39**. The method according to claim **38**, wherein the front surface of the three-dimensional body includes a recess for receiving the front plate.

**40**. An intervertebral implant for mounting between adjacent vertebral bodies including a first vertebral body and a second vertebral body, the intervertebral implant comprising:

a body defining a horizontal middle plane, the body having an upper side including teeth for abutting the first vertebral body and an underside having teeth for abutting the second vertebral body, the upper side defining an upper plane and the underside defining an underside plane, the body further including a front surface having first and second partial boreholes;

a front plate mounted to the front surface of the body, the front plate including a first borehole and a second borehole, the first and second boreholes aligning with the first and second partial boreholes, respectively, and extending through the front plate at an angle ranging from about twenty degrees (20°) to about sixty degrees (60°) relative to the horizontal middle plane;

a first fixation element having a first head portion and a first shaft portion, the first head portion positioned in the first borehole and the first partial borehole and positioned between the upper and underside planes in an assembled configuration, the first shaft portion sized and configured to engage the first vertebral body;

a second fixation element having a second head portion and a second shaft portion, the second head portion positioned in the second borehole and the second partial borehole and positioned between the upper and under-

10

side planes in the assembled configuration, the second shaft portion sized and configured to engage the second vertebral body; and

a securing plate fastened to the front plate to at least partly cover the first and second head portions and prevent the first and second fixation elements from moving out of the first and second boreholes, respectively.

**41**. The intervertebral implant according to claim **40**, wherein the front surface of the body includes a recess for receiving the front plate.

**42**. An intervertebral implant for insertion into an intervertebral disc space between endplates of first and second vertebral bodies, the implant comprising:

a body portion including a left side surface, a right side surface, a front surface having first and second partial boreholes, a rear surface, an upper side having teeth suitable for abutting the end plate of the first vertebral body, the upper side defining an upper plane, an underside having teeth suitable for abutting the end plate of the second adjacent vertebral body, the underside defining an underside plane;

a front plate operatively coupled to the front surface of the body, the front plate including a first borehole and a second borehole having respective openings, the first and second boreholes being aligned with the first and second partial boreholes, respectively;

first and second fixation elements being anchorable within the first and second boreholes and partial boreholes, respectively, the first and second fixation elements having first and second heads and first and second shafts, respectively, the first and second heads and the first and second boreholes and partial boreholes positioned substantially between the upper and underside planes in an assembled configuration, the first and second shafts being positioned substantially on an opposite side of the upper and underside planes, respectively, in the assembled configuration; the implant further comprising a securing plate operatively connectable to the front plate in such a manner that the first and second boreholes of the front plate and the first and second heads are covered at least partly by the securing plate.

**43**. The intervertebral implant according to claim **42**, wherein the front plate is received within a recess formed in the body portion.

* * * * *

# **EXHIBIT C**

(12) **United States Patent**     (10) **Patent No.:**     **US 7,862,616 B2**
Lechmann et al.                    (45) **Date of Patent:**     ***Jan. 4, 2011**

(54) **INTERVERTEBRAL IMPLANT**

(75) Inventors: **Beat Lechmann**, Bettlach (CH);
**Dominique Burkard**, Gretzenbach
(CH); **Chris M. J. Cain**, Norwood (AU);
**Claude Mathieu**, Zurich (CH)

(73) Assignee: **Synthes USA, LLC**, West Chester, PA
(US)

( * ) Notice: Subject to any disclaimer, the term of this
patent is extended or adjusted under 35
U.S.C. 154(b) by 0 days.

This patent is subject to a terminal dis-
claimer.

(21) Appl. No.: **12/432,088**

(22) Filed: **Apr. 29, 2009**

(65) **Prior Publication Data**

US 2009/0210064 A1     Aug. 20, 2009

**Related U.S. Application Data**

(63) Continuation of application No. 11/199,599, filed on
Aug. 8, 2005, which is a continuation of application
No. PCT/CH03/00089, filed on Feb. 6, 2003.

(51) **Int. Cl.**
*A61F 2/44*     (2006.01)

(52) **U.S. Cl.** .................................. **623/17.11**; 623/17.16

(58) **Field of Classification Search** ...  623/17.11–17.16;
606/90, 293

See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

2,621,145  A     12/1952  Sano

(Continued)

FOREIGN PATENT DOCUMENTS

CA     2317791 A1     8/1999

(Continued)

OTHER PUBLICATIONS

Office Notice of Reason of Rejection issued by the Japanese Patent
Office.

*Primary Examiner*—Todd E Manahan
*Assistant Examiner*—Lynnsy Schneider
(74) *Attorney, Agent, or Firm*—Stroock & Stroock & Lavan
LLP

(57)     **ABSTRACT**

An intervertebral implant having a three-dimensional body
(**10**) and a securing plate (**1**). The three-dimensional body
(**10**) includes an upper side (**1**) and an underside (**2**) which are
suitable for abutting the end plates of two adjacent vertebral
bodies, a left side surface (**3**) and a right side surface (**4**), a
front surface (**5**) and a rear surface (**6**), a horizontal middle
plane (**7**) between the upper side (**1**) and the underside (**2**), and
a vertical middle plane (**12**) extending from the front surface
(**5**) to the rear surface (**6**). The three-dimensional body further
includes a plurality of boreholes (**9***a*) passing through the
body (**10**), which are suitable for accommodating longitudi-
nal fixation elements (**20**). The intervertebral implant also
includes a front plate (**8**) displaceably disposed as an insert
with the front side (**5**) of the three-dimensional body, the front
plate (**8**) having a plurality of boreholes (**9**) in which the
longitudinal fixation elements (**20**) can be anchored, and
whose openings overlap with the openings of the boreholes of
the three-dimensional body (**10**). A securing plate can be
fastened essentially parallel to the front plate (**8**) at the three-
dimensional body (**10**) in such a manner that the boreholes of
the front plate (**9**) are covered at least partly by the securing
plate (**18**). By virtue of the configuration of the intervertebral
implant, a rigid, firm connection between the intervertebral
implant and the longitudinal fixation elements used to fasten
it, is possible.

**13 Claims, 6 Drawing Sheets**



# US 7,862,616 B2
Page 2

## U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,135,506 A | 1/1979 | Ulrich | |
| 4,501,269 A | 2/1985 | Bagby | |
| 4,512,038 A | 4/1985 | Alexander et al. | |
| 4,627,853 A | 12/1986 | Campbell et al. | |
| 4,678,470 A | 7/1987 | Nashef et al. | |
| 4,717,115 A | 1/1988 | Schmitz et al. | |
| 4,858,603 A | 8/1989 | Clemow et al. | |
| 4,904,261 A | 2/1990 | Dove et al. | |
| 4,936,851 A | 6/1990 | Fox et al. | |
| 4,950,296 A | 8/1990 | McIntyre | |
| 4,961,740 A | 10/1990 | Ray et al. | |
| 4,978,350 A | 12/1990 | Wagenknecht | 606/312 |
| 4,994,084 A | 2/1991 | Brennan | |
| 5,026,373 A | 6/1991 | Ray et al. | |
| 5,053,049 A | 10/1991 | Campbell | |
| 5,062,850 A | 11/1991 | MacMillan et al. | |
| 5,084,051 A | 1/1992 | Törmälä et al. | |
| 5,112,354 A | 5/1992 | Sires | |
| 5,192,327 A | 3/1993 | Brantigan | |
| 5,211,664 A | 5/1993 | Tepic et al. | |
| 5,281,226 A | 1/1994 | Davydov et al. | |
| 5,284,655 A | 2/1994 | Bogdansky et al. | |
| 5,290,312 A * | 3/1994 | Kojimoto et al. | 623/17.15 |
| 5,298,254 A | 3/1994 | Prewett et al. | |
| 5,314,476 A | 5/1994 | Prewett et al. | |
| 5,348,788 A | 9/1994 | White | |
| 5,397,364 A * | 3/1995 | Kozak et al. | 623/17.11 |
| 5,405,391 A * | 4/1995 | Hednerson et al. | 623/17.15 |
| 5,423,817 A | 6/1995 | Lin | |
| 5,439,684 A | 8/1995 | Prewett et al. | |
| 5,458,638 A | 10/1995 | Kuslich et al. | |
| 5,489,308 A | 2/1996 | Kuslich et al. | |
| 5,507,818 A | 4/1996 | McLaughlin | |
| 5,514,180 A | 5/1996 | Heggeness et al. | |
| 5,522,899 A | 6/1996 | Michelson | |
| 5,534,030 A | 7/1996 | Navarro et al. | |
| 5,549,679 A | 8/1996 | Kuslich | |
| 5,554,191 A | 9/1996 | Lahille et al. | |
| 5,556,430 A | 9/1996 | Gendler | |
| 5,569,308 A | 10/1996 | Sottosanti | |
| 5,571,190 A | 11/1996 | Ulrich et al. | |
| 5,571,192 A | 11/1996 | Schönhöffer | |
| 5,607,474 A | 3/1997 | Athanasiou et al. | |
| 5,609,635 A * | 3/1997 | Michelson | 623/17.16 |
| 5,609,636 A | 3/1997 | Kohrs et al. | |
| 5,609,637 A | 3/1997 | Biedermann et al. | |
| 5,676,699 A | 10/1997 | Gogolewski et al. | |
| 5,683,394 A | 11/1997 | Rinner | |
| 5,683,463 A | 11/1997 | Godefroy et al. | |
| 5,702,449 A | 12/1997 | McKay | |
| 5,702,451 A | 12/1997 | Biedermann et al. | |
| 5,702,453 A | 12/1997 | Rabbe et al. | |
| 5,702,455 A | 12/1997 | Saggar | |
| 5,728,159 A | 3/1998 | Stroever et al. | |
| 5,735,905 A | 4/1998 | Parr | |
| 5,766,253 A | 6/1998 | Brosnahan, III | |
| 5,776,194 A | 7/1998 | Mikol et al. | |
| 5,776,197 A | 7/1998 | Rabbe et al. | |
| 5,776,198 A | 7/1998 | Rabbe et al. | |
| 5,776,199 A | 7/1998 | Michelson | |
| 5,782,915 A | 7/1998 | Stone | |
| 5,785,710 A | 7/1998 | Michelson | |
| 5,800,433 A | 9/1998 | Benzel et al. | 606/61 |
| 5,861,041 A * | 1/1999 | Tienboon | 623/17.16 |
| 5,865,849 A | 2/1999 | Stone | |
| 5,876,452 A | 3/1999 | Athanasiou et al. | |
| 5,885,299 A | 3/1999 | Winslow et al. | |
| 5,888,222 A | 3/1999 | Coates et al. | |
| 5,888,223 A * | 3/1999 | Bray, Jr. | 623/17.16 |
| 5,888,224 A | 3/1999 | Beckers et al. | |
| 5,888,227 A | 3/1999 | Cottle | |
| 5,895,426 A | 4/1999 | Scarborough et al. | |
| 5,899,939 A | 5/1999 | Boyce et al. | |
| 5,902,338 A | 5/1999 | Stone | |
| 5,904,719 A | 5/1999 | Errico et al. | |
| 5,910,315 A | 6/1999 | Stevenson et al. | |
| 5,922,027 A | 7/1999 | Stone | |
| 5,944,755 A | 8/1999 | Stone | |
| 5,968,098 A | 10/1999 | Winslow | |
| 5,972,368 A | 10/1999 | McKay | |
| 5,976,187 A | 11/1999 | Richelsoph | |
| 5,980,522 A | 11/1999 | Koros et al. | |
| 5,981,828 A | 11/1999 | Nelson et al. | |
| 5,984,967 A | 11/1999 | Zdeblick et al. | |
| 5,989,289 A | 11/1999 | Coates et al. | |
| 6,013,853 A | 1/2000 | Athanasiou et al. | |
| 6,025,538 A | 2/2000 | Yaccarino, III | |
| 6,033,405 A | 3/2000 | Winslow et al. | |
| 6,033,438 A | 3/2000 | Bianchi et al. | |
| 6,039,762 A | 3/2000 | McKay | |
| 6,045,579 A | 4/2000 | Hochshuler et al. | |
| 6,045,580 A | 4/2000 | Scarborough et al. | |
| 6,066,175 A * | 5/2000 | Henderson et al. | 623/17.11 |
| 6,080,158 A | 6/2000 | Lin | |
| 6,080,193 A | 6/2000 | Hochshuler et al. | |
| 6,090,998 A | 7/2000 | Grooms et al. | |
| 6,096,080 A * | 8/2000 | Nicholson et al. | 623/17.16 |
| 6,096,081 A | 8/2000 | Grivas et al. | |
| 6,110,482 A | 8/2000 | Khouri et al. | |
| 6,123,731 A | 9/2000 | Boyce et al. | |
| 6,129,763 A | 10/2000 | Chauvin et al. | |
| 6,143,030 A | 11/2000 | Schroder | |
| 6,143,033 A | 11/2000 | Paul et al. | |
| 6,156,070 A | 12/2000 | Incavo et al. | |
| 6,193,756 B1 | 2/2001 | Studer et al. | |
| 6,200,347 B1 | 3/2001 | Anderson et al. | |
| 6,206,922 B1 * | 3/2001 | Zdeblick et al. | 623/17.11 |
| 6,231,610 B1 | 5/2001 | Geisler | |
| 6,235,059 B1 | 5/2001 | Benezech et al. | |
| 6,241,769 B1 | 6/2001 | Nicholson et al. | |
| 6,245,108 B1 | 6/2001 | Biscup | |
| 6,258,125 B1 | 7/2001 | Paul et al. | |
| 6,261,586 B1 | 7/2001 | McKay | |
| 6,264,695 B1 | 7/2001 | Stoy | |
| 6,270,528 B1 | 8/2001 | McKay | |
| 6,306,139 B1 * | 10/2001 | Fuentes | 606/70 |
| 6,342,074 B1 | 1/2002 | Simpson | |
| 6,364,880 B1 | 4/2002 | Michelson | |
| 6,423,063 B1 | 7/2002 | Bonutti | |
| 6,432,106 B1 * | 8/2002 | Fraser | 623/17.11 |
| 6,458,158 B1 | 10/2002 | Anderson et al. | |
| 6,468,311 B2 | 10/2002 | Boyd et al. | |
| 6,558,423 B1 * | 5/2003 | Michelson | 623/17.11 |
| 6,569,201 B2 | 5/2003 | Moumene et al. | |
| 6,576,017 B2 * | 6/2003 | Foley et al. | 623/17.16 |
| 6,629,998 B1 * | 10/2003 | Lin | 623/17.11 |
| 6,638,310 B2 | 10/2003 | Lin et al. | |
| 6,645,212 B2 | 11/2003 | Goldhahn et al. | 606/291 |
| 6,761,739 B2 | 7/2004 | Shepard | |
| 6,972,019 B2 | 12/2005 | Michelson | 606/86 A |
| 6,984,234 B2 | 1/2006 | Bray | 606/69 |
| 7,044,968 B1 * | 5/2006 | Yaccarino et al. | 623/16.11 |
| 7,172,627 B2 | 2/2007 | Fiere et al. | 623/17.11 |
| 7,232,463 B2 * | 6/2007 | Falahee | 623/17.11 |
| 7,232,464 B2 | 6/2007 | Mathieu et al. | 623/17.11 |
| 7,323,011 B2 * | 1/2008 | Shepard et al. | 623/17.11 |
| 7,608,107 B2 * | 10/2009 | Michelson | 623/17.15 |
| 2001/0001129 A1 | 5/2001 | McKay et al. | |
| 2001/0005796 A1 | 6/2001 | Zdeblick et al. | |
| 2001/0010021 A1 | 7/2001 | Boyd et al. | |
| 2001/0016777 A1 | 8/2001 | Biscup | |
| 2001/0031254 A1 | 10/2001 | Bianchi et al. | |
| 2001/0039456 A1 | 11/2001 | Boyer, II et al. | |
| 2001/0041941 A1 | 11/2001 | Boyer, II et al. | |

**US 7,862,616 B2**

Page 3

| | | | |
|---|---|---|---|
| 2002/0010511 A1* | 1/2002 | Michelson ............... 623/17.15 | |
| 2002/0022843 A1* | 2/2002 | Michelson ................... 606/70 | |
| 2002/0029084 A1 | 3/2002 | Paul et al. | |
| 2002/0082597 A1* | 6/2002 | Fraser ......................... 606/61 | |
| 2002/0082603 A1 | 6/2002 | Dixon et al. .................. 607/69 | |
| 2002/0091447 A1 | 7/2002 | Shimp et al. | |
| 2002/0099376 A1* | 7/2002 | Michelson ................... 606/61 | |
| 2002/0106393 A1 | 8/2002 | Bianchi et al. | |
| 2002/0111680 A1 | 8/2002 | Michelson | |
| 2002/0128712 A1* | 9/2002 | Michelson ............... 623/17.11 | |
| 2002/0147450 A1* | 10/2002 | LeHuec et al. ............... 606/61 | |
| 2002/0169508 A1* | 11/2002 | Songer et al. ............ 623/17.11 | |
| 2002/0193880 A1* | 12/2002 | Fraser ...................... 623/17.11 | |
| 2003/0078668 A1 | 4/2003 | Michelson ............... 623/17.16 | |
| 2003/0125739 A1* | 7/2003 | Bagga et al. .................. 606/61 | |
| 2003/0153975 A1* | 8/2003 | Byrd et al. .............. 623/17.11 | |
| 2004/0078078 A1* | 4/2004 | Shepard ................... 623/17.11 | |
| 2004/0210314 A1 | 10/2004 | Michelson | |
| 2004/0254644 A1* | 12/2004 | Taylor ...................... 623/17.13 | |
| 2005/0033433 A1 | 2/2005 | Michelson | |
| 2005/0101960 A1* | 5/2005 | Fiere et al. ................... 606/72 | |
| 2005/0159813 A1* | 7/2005 | Molz ....................... 623/17.11 | |
| 2007/0219635 A1 | 9/2007 | Mathieu et al. .......... 623/17.16 | |

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| DE | 42 42 889 A1 | 6/1944 |
| DE | 30 42 003 A1 | 7/1982 |
| DE | 39 33 459 A1 | 4/1991 |
| DE | 44 09 392 A1 | 9/1995 |
| DE | 195 04 867 C1 | 2/1996 |
| DE | 299 13 200 U1 | 9/1999 |
| EP | 0505634 A1 | 9/1992 |
| EP | 0517030 A2 | 12/1992 |
| EP | 0577178 A1 | 1/1994 |
| EP | 0639351 A2 | 2/1995 |
| EP | 05056341 B1 | 8/1997 |
| EP | 0966930 | 12/1999 |
| EP | 0968692 A1 | 1/2000 |
| EP | 0906065 B1 | 1/2004 |

| | | |
|---|---|---|
| FR | 2 697 996 | 5/1994 |
| FR | 2 700 947 | 8/1994 |
| FR | 2 753 368 | 3/1998 |
| GB | 2 148 122 A | 5/1985 |
| SU | 1465040 A1 | 3/1989 |
| WO | WO 88/03417 | 5/1988 |
| WO | WO 88/10100 | 12/1988 |
| WO | WO 92/01428 | 2/1992 |
| WO | WO 95/21053 | 8/1995 |
| WO | WO 96/39988 | 12/1996 |
| WO | WO 97/20526 | 6/1997 |
| WO | WO 97/25941 | 7/1997 |
| WO | WO 97/25945 | 7/1997 |
| WO | WO 97/39693 | 10/1997 |
| WO | WO 98/17209 | 4/1998 |
| WO | WO 98/55052 | 12/1998 |
| WO | WO 98/56319 | 12/1998 |
| WO | WO 98/56433 | 12/1998 |
| WO | WO 99/29271 | 6/1999 |
| WO | WO 99/32055 | 7/1999 |
| WO | WO 99/38461 | 8/1999 |
| WO | WO 99/38963 | 8/1999 |
| WO | WO 99/56675 | 11/1999 |
| WO | WO 99/63914 | 12/1999 |
| WO | WO 00/07527 | 2/2000 |
| WO | WO 00/07528 | 2/2000 |
| WO | WO 00/30568 | 6/2000 |
| WO | WO 00/40177 | 7/2000 |
| WO | WO 00/41654 | 7/2000 |
| WO | WO 00/59412 | 10/2000 |
| WO | WO 00/66044 A1 | 11/2000 |
| WO | WO 00/66045 A1 | 11/2000 |
| WO | WO 00/74607 A1 | 12/2000 |
| WO | WO 01/08611 | 2/2001 |
| WO | WO 01/56497 A2 | 8/2001 |
| WO | WO 01/93742 A2 | 12/2001 |
| WO | WO 01/95837 A1 | 12/2001 |

* cited by examiner



Fig. 1



**Fig. 2**



**Fig. 3**



**Fig. 4**



Fig. 5                    Fig. 6



**Fig. 7**

US 7,862,616 B2

1

**INTERVERTEBRAL IMPLANT**

CROSS REFERENCE TO RELATED
APPLICATION

This application is a continuation of U.S. patent application Ser. No. 11/199,599, filed Aug. 8, 2005, which is a continuation of International Patent Application No. PCT/CH2003/000089, filed Feb. 6, 2003, the entire contents of which are expressly incorporated herein by reference thereto.

TECHNICAL FIELD

The present invention relates generally to intervertebral implants.

BACKGROUND OF THE INVENTION

GB-A-2 207 607 discloses an intervertebral implant, which has a horseshoe-shaped configuration with a plurality of cylindrical holes. The holes are smooth on the inside and only have a stop for the heads of the bone screws, which are to be introduced therein. A disadvantage of this arrangement is that the fastening screws, introduced therein, can be anchored only with their shaft in the bone. This does not result in a rigid connection with the horseshoe-shaped intervertebral implant. When the anchoring of the screw shaft in the bone is weakened, the intervertebral implant becomes movable with respect to the screw and the bone screws tend to migrate, endangering the blood vessels. Moreover, the loosening of the intervertebral implant can lead to a pseudoarthrosis.

U.S. Patent Publication US-A 2000/0010511 (Michelson) discloses an intervertebral implant, which, at its front surface, has two boreholes with an internal thread, into which bone screws with a threaded head can be introduced. A disadvantage of this implant is that the bone screws can become loose and are not secured against being screwed out or falling out. A further disadvantage is that the bone screws are fastened completely to the implant body itself and that therefore the latter experiences a relatively large stress.

Screws which emerge at the anterior or anterolateral edge of the vertebral body because of loosening run the risk of injuring main vessels such as the aorta and Vena calva, as well as supply vessels such as lumbar arteries and veins. Injury to these main vessels may result in internal bleeding possibly causing death within a very short time. Loosening of screws is more likely when they are not mounted angularly firmly.

SUMMARY OF THE INVENTION

The present invention is to provide a remedy for the above-discussed disadvantages. The present invention is directed to an intervertebral implant which can enter into a permanent, rigid connection with bone fixation means, so that, even if the bone structure is weakened, there is no loosening between the intervertebral implant and the bone fixation means. Moreover, over a separately constructed front plate, there is tension chording for the bone fixation elements, so that the implant body experiences less stress, that is, superimposed tensions. Moreover, a securing plate enables all bone fixation elements to be secured simultaneously.

The present invention accomplishes the objective set out above with an intervertebral implant, comprising a three-dimensional body having an upper side and an under side which are suitable for abutting the end plates of two adjacent vertebral bodies. The three-dimensional body further includes a left side surface and a right side surface, a front

2

surface and a rear surface, a horizontal middle plane between the upper side and the under side, and a vertical middle plane extending from the front surface to the rear surface. The three-dimensional body further comprising a plurality of boreholes, having openings at least at or near the front surface, passing there through and being suitable for accommodating longitudinal fixation elements. The intervertebral implant further including a front plate displaceably disposed as an insert within the front side of the three-dimensional body, where the front plate includes a plurality of boreholes having openings and in which the longitudinal fixation elements can be anchored, and whose openings overlap with the openings of the boreholes of the three-dimensional body. The intervertebral implant has a securing plate fastened substantially parallel to the front plate in such a manner that the boreholes of the front plate are covered at least partly by the securing plate. An advantage achieved by the present invention, arises essentially from the solid connection between the intervertebral implant and the longitudinal fixation elements, used to fasten it.

Compared to the two-part implants of the state of the art, for which a front plate is implanted in a separate step, the present invention has the advantage that the implantation of the intervertebral implant may be carried out in one step and, with that, can be carried out more easily and more quickly. A further advantage is that the intervertebral implant is fixed as frontally as possible at the body of the vertebra. That is, at a place where good bone material usually is present. The result is an anterior movement limitation without a greater risk to the surrounding structures. The load is still absorbed under compression by the intervertebral implant and not by the front plate or the fixation screws (longitudinal fixation elements).

A method for implanting an intervertebral implant of the present invention between two adjacent vertebral bodies includes introducing the intervertebral implant, having a three-dimensional body, a front plate, and one or more boreholes, between two adjacent vertebral bodies, attaching longitudinal fixation elements with heads through the boreholes into the vertebral bodies, and attaching a securing plate by means of a fastening agent over the heads of the longitudinal fixation elements to the front plate, such that the heads of the longitudinal fixation elements are captured between the front plate and the securing plate wherein the longitudinal fixation elements are secured against being shifted relative to the intervertebral implant.

Other objectives and advantages in addition to those discussed above will become apparent to those skilled in the art during the course of the description of a preferred embodiment of the invention which follows. In the description, reference is made to accompanying drawings, which form a part thereof, and which illustrate an example of the invention. Such example, however, is not exhaustive of the various embodiments of the invention, and therefore, reference is made to the claims that follow the description for determining the scope of the invention.

BRIEF DESCRIPTION OF THE DRAWINGS

FIG. **1** shows an exploded drawing of the intervertebral implant,

FIG. **2** shows a longitudinal fixation element in the form of a screw,

FIG. **3** shows an elevation of the intervertebral implant of FIG. **1**,

FIG. **4** shows a side view of the intervertebral implant of FIG. **1**,

US 7,862,616 B2

3

FIG. **5** shows a three-dimensional detailed representation of the body of the intervertebral implant, which shows the connecting elements to the front plate of FIG. **6**,

FIG. **6** shows a three-dimensional detailed representation of the front plate of the intervertebral implant and the connecting elements to the body of FIG. **5** and

FIG. **7** shows a completely installed intervertebral implant with front plate and securing plate.

## DESCRIPTION OF THE PREFERRED EMBODIMENTS

The intervertebral implant, shown in FIG. **1-7**, includes a three-dimensional body **10** in the form of a cage with an upper side **1** and an underside **2**, which are suitable for abutting the end plates of two adjacent vertebral bodies, a left side surface **3** and a right side surface **4**, a front surface **5** and a back surface **6**, a horizontal middle plane **7** located between the upper side **1** and the underside **2**, a vertical middle plane **12** extending from the front surface **5** to the rear surface **6** and four boreholes **9***a*, which pass through the body **10** and are suitable for accommodating longitudinal fixation elements **20**. The body **10** may be constructed as a hollow body, the mantle surfaces of which are provided with perforations **19**. The upper side **1** and/or under side **2** of the intervertebral implant may preferably be convex in shape, not planar. A convex shape to the upper side **1** and the underside **2** allows for an improved fit with the end plates of the adjacent vertebral bodies by the intervertebral implant. Further, the side surfaces **1-6** of the intervertebral implant may be essentially convex, as well.

As shown in FIG. **7**, the upper side **1** and the underside **2** of the three-dimensional body **10** are provided with structuring in the form of teeth **30**.

At the front surface of the three-dimensional body **10**, a front plate **8** may be mounted, which is disposed perpendicular to the horizontal central plane of the intervertebral implant and through which four boreholes **9** pass and in which the longitudinal fixation elements **20** can be anchored. The front plate **8**, as shown in FIGS. **5** and **6**, is constructed as an insert for the three-dimensional body **10**. The three-dimensional body **10** has a semicircular groove **27** extending parallel to the vertical middle plane **12** at the transitions of the left side surface **3** and the right side surface **4** (FIG. **5**) to the front surface **5**. Correspondingly, the front plate **3** has right and left (FIG. **6**) similarly extending and similarly dimensioned, semicircular rail **28**. As a result, the front plate can be pushed and positioned easily with its two lateral rails **28** into the corresponding grooves **27** of the body **10** during the production of the intervertebral implant.

In one embodiment at least one of the boreholes **9** in the front plate is constructed so that a longitudinal fixation element **20**, accommodated therein, can be connected rigidly with the front plate. A rigid connection may be accomplished, for example, owing to the fact that at least one of the boreholes **9** of the front plate **8** has an internal thread. A corresponding longitudinal fixation element **20**, bone screw, with a threaded end can then be screwed together rigidly with the implant. In an alternative embodiment, the four boreholes **9** in the front plate may have an internal thread **11**, so that longitudinal fixation elements **20** can be connected rigidly with the front plate **8**.

As discussed, the front plate **8** may be disposed, preferably vertically to the horizontal central plane, so that it can be displaced vertically with respect to the three-dimensional body **10**. By these means, "stress shielding" (protection and

4

neutralization of mechanical stresses) is attained, which permits the end plates to be adapted to the intervertebral implant during the healing process.

The intervertebral implant may have a securing plate **18**, which can be fastened by means of a screw connection parallel to the front plate **8** at the front plate **8** in such a manner that the boreholes **9** of the front plate **3** are partly covered by the securing plate **18**. The securing plate **18** may have a central borehole **17** provided, preferably, with an internal thread. Corresponding thereto, the front plate **8** has a central borehole **15** for accommodating fastening means **16**. Preferably, the central borehole **15** has an internal thread **14** for accommodating a fastening means **16** in the form of a screw. The securing plate **18** may also be fastened by a bayonet catch or a click catch. By fastening the securing plate **18** to the front plate **8**, the heads **21** of the longitudinal fixation elements **20** (discussed later) are contacted by the securing plate **18**, so that they are secured against being ejected or screwed out.

Preferably, the boreholes **9***a* of the three-dimensional body **10** do not pass either through the left side surface **3** or the right side surface **4** or completely through the front surface **5**. The front surface **5**, preferably, is also not crossed by the boreholes **9***a*. Further, the horizontal middle plane **7** is not pierced by the boreholes **9***a*. Only the axes **24** of the longitudinal fixation elements **20**, introduced therein, intersect the horizontal middle plane **7** of the body **10**. As seen from the front surface **5**, the boreholes of the three-dimensional body **10** and the front plate diverge. The axes **24** of the boreholes of the three-dimensional plate **10** and the front plate **8** enclose an angle β ranging from 20° to 60°, specifically from 36° to 48°, and more preferably an angle β of 42° with the horizontal middle plane **7** (FIG. **4**) and an angle α ranging from 10° to 45°, specifically from 27° to 33°, and more preferably an angle α of 30° with the vertical middle plane **12** (FIG. **3**). Thus, better access for introducing the screws is achieved.

In one embodiment, at least one of the boreholes **9** of the front plate **8** may taper conically towards the underside **2**, so that a bone screw, with a corresponding conical head, can be anchored rigidly therein. The conical borehole preferably has a conical angle, which is smaller than the resulting frictional angle. Advisably, the conicity of the conical borehole is 1:3.75 to 1:20.00 and preferably 1:5 to 1:15.

In another configuration, at least two of the boreholes **9** of the front plate **8** extend parallel to each other. This makes insertion of the intervertebral implant easier. In another embodiment, at least two of the boreholes **9** of the front plate **8** diverge when viewed from the front side. By these means, a region of the vertebral body, which has a better bone quality than does the center of the vertebral body, is reached by the bone screws.

To improve the anchoring of the bone screw in a plastic body of the intervertebral implant (discussed later), a metal sleeve with an internal thread (not shown) may be inserted in the boreholes of the front plate and three-dimensional body. The intervertebral implant may also consist only partially of an x-ray transparent plastic and, in the region of the boreholes consist of a metal, such as titanium or a titanium alloy. Improved guidance and anchoring of the bone screws in the intervertebral implant may be achieved. Further, the boreholes **9** may have a smooth internal wall, into which the threaded head of a metallic, longitudinal fixation element may cut or be molded.

Depending on circumstances, two, three, four or more longitudinal fixation elements may be connected rigidly with the intervertebral implant. Preferably, at least one fixation element should pierce the upper side and at least one fixation element the underside of the intervertebral implant. The lon-

US 7,862,616 B2

5

gitudinal fixation elements **20** may have either a smooth head, so that there will not be a rigid connection with the implant or a threaded, conical or expendable end, so that there will be a rigid connection with the implant. In both cases, however, the longitudinal fixation elements **20** are secured by the securing plate against rotating out, being ejected out or falling out at a later time.

The longitudinal fixation elements **20** are preferably constructed as bone screws. As shown in FIG. **2**, the longitudinal fixation elements **20**, introduced into the boreholes **9**, have a head **21**, a tip **22**, a shaft **23** and an axis **24**. The head **21** may preferably be provided with an external thread **25**, which corresponds to the internal thread **11** of the borehole **9**, so that the heads **21** can be anchored in the boreholes **9** in a rigid manner. The shaft **23** may be provided with a thread **26**, which is self-drilling and self-cutting. The load thread angle of the thread **26** has a range of between 11° to 14°, preferably between 12° and 13°, and more preferably a load thread angle of 12.5°. The pitch angle of the thread may have a range of between 6° and 10°, preferably between 7° and 9°, and more preferably have a pitch angle of 8°. The special pitch angle produces a self-retardation in the thread, thus ensuring that the bone screw will not automatically become loose.

In the case of a second, possibly rigid type of connection, a longitudinal fixation element **20**, bone screw, may preferably be used, the head of which tapers conically towards the shaft, the conicity of the head corresponding to the conicity of the borehole of the intervertebral implant. The longitudinal fixation elements may also be constructed as threadless cylindrical pins, which are provided with a drilling tip, preferably in the form of a trocar. A further variation consist therein that the longitudinal fixation elements are constructed as spiral springs. Finally, the longitudinal fixation elements may also be constructed as single-vaned or multi-vaned spiral blades.

As shown in FIG. **7**, two longitudinal fixation elements **20** pierce the upper side **1** and two longitudinal fixation elements **20** pierce the underside **2** of the body **10**, thereby anchoring the intervertebral implant to the adjacent vertebral bodies.

The intervertebral implant may be produced from any material which is compatible with the body. Preferably, the three-dimensional body **10** may consist of a body-compatible plastic which has not been reinforced and which may be transparent to x-rays. The advantage over fiber-reinforced plastics, which are already known in implant technology, is that no reinforcing fibers are exposed. Such exposure may be disadvantageous clinically. In such a three-dimensional body **10** constructed of a plastic that has not been reinforced, the use bone screws may be preferable. As discussed previously, the external thread of the bone screw(s) may have a load thread angle range of 11° to 14°, and preferably between 12° to 13°. A comparatively slight inclination of the load flank brings about a high clamping force. As a result, radial expansion and the danger of forming cracks in the plastic are reduced. Furthermore, the external thread of the bone screw(s) may preferably have a pitch angle between 6° and 10° and preferably between 7° and 9°.

The front plate **8** may be made from materials different than the three-dimensional body **10**. The front plate **8** is preferably made from a metallic material. Titanium or titanium alloys are particularly suitable as metallic materials. The complete tension chord arrangement (front plate and screws) may also be made from implant steel or highly alloyed metallic materials, such as CoCrMo or CoCrMoC. The advantage of titanium lies in that there is good tissue compatibility and the good ingrowing behavior of bones. The advantage of highly alloyed metallic materials lies in their high-strength values, which permit filigree constructions.

6

A brief description of a surgical procedure follows in order to explain the invention further.

The intervertebral implant, in the form of a three-dimensional body **10**, is introduced between two adjacent vertebral bodies by means of a suitable instrument. Longitudinal fixation elements **20**, in the form of bone screws, securing the three-dimensional body **10** are screwed/inserted by means of a suitable aiming device through the boreholes **9** of the front plate **8** into the vertebral bodies. The front plate **8** may be displaced vertically with respect to the three-dimensional body **10**, such that the openings of the boreholes **9a** of the three-dimensional plate **10** and the boreholes **9** of the front plate **8** overlap, to obtain stress shielding. The securing plate **18** is fastened by means of a fastening agent **16** in the form of a screw over the heads **21** of the longitudinal fixation elements **20** at the front plate **8**, so that the heads **21** of the longitudinal fixation elements **20** and, with that, the screws themselves, are captured between the front plate **8** and the securing plate **18** and secured against being shifted relative to the three-dimensional body **10** (for example, by falling out or by turning out). The fastening agent **16**, in the form of a screw, preferably is provided with a thread, which is distinguished by a large self-retardation.

The invention claimed is:

1. An intervertebral implant for implantation between two adjacent vertebral bodies, the implant comprising:

a plurality of bone fixation elements each including a head and a shaft, the shaft having a thread for engaging one of the adjacent vertebra;

a three dimensional body having a left side surface, a right side surface, a front surface, a back surface, an upper side and an underside, the upper side and the underside being sized and configured to contact the one of the two adjacent vertebral bodies, respectively, the three dimensional body further including at least one partial borehole in communication with the front surface and the upper side of the body and at least one partial borehole in communication with the front surface and the underside of the body;

a plate having an upper surface and a lower surface, the plate contacting the front surface of the three dimensional body, the plate including a plurality of boreholes, at least one of the plurality of boreholes formed in the plate aligning with the at least one partial borehole in communication with the upper side of the body and at least one of the plurality of boreholes formed in the plate aligning with the at least one partial borehole in communication with the underside of the body when the three dimensional body is coupled to the plate so that one of the plurality of bone fixation elements is insertable through one of the plurality of boreholes formed in the plate, through one of the plurality of partial borehole formed in the three dimensional body and into one of the adjacent vertebral bodies, respectively, wherein the three dimensional body further includes a first height as defined by the upper side and the underside and the plate includes a second height as defined by the upper and lower surfaces of the plate, the first height being substantially equal to the second height so that the three dimensional body and the plate are contained between the adjacent vertebral bodies when the implant is inserted between the adjacent vertebral bodies;

wherein the plate is made from a biocompatible metallic material and the three dimensional body is made from a biocompatible non-metallic material.

US 7,862,616 B2

7

**2**. The intervertebral implant of claim **1**, further comprising:

a semicircular groove extending parallel to a vertical middle plane at transitions of the left and right side surfaces to the front surface.

**3**. The intervertebral implant of claim **1**, wherein the three dimensional body is made from a biocompatible plastic.

**4**. The intervertebral implant of claim **1**, wherein the plurality of bone fixation elements are bone screws and the plurality of boreholes formed in the plate include internal threads, at least a portion of the heads of the bone screws being externally threaded for engaging the internal threads of the plurality of boreholes to anchor the plurality of bone screws to the plurality of boreholes in a rigid manner.

**5**. The intervertebral implant of claim **1**, wherein the three dimensional body includes at least one through hole extending from the upper side to the underside.

**6**. The intervertebral implant of claim **1**, wherein the body includes a horizontal middle plane and a vertical middle plane, the plurality of partial borehole formed in the body comprise four body partial borehole, the plurality of boreholes formed in the plate comprise four plate boreholes and the plurality of bone fixation elements comprise four bone fixation elements, two of the bone fixation elements passing through the upper side of the body and two of the bone fixation elements passing through the underside of the body, the four partial borehole formed in the body and the four boreholes formed in the plate being arranged such that the heads of the four bone fixation elements are located between the upper side and an underside in an assembled configuration.

**7**. The intervertebral implant of claim **6**, wherein the two of bone fixation elements passing through the upper side diverge

8

with respect to one another and the two bone fixation elements passing through the underside diverge with respect to one another.

**8**. The intervertebral implant of claim **1**, wherein the plate may be pushed and placed easily with respect to the front surface of the body.

**9**. The intervertebral implant of claim **1**, further comprising:

a securing plate fastenable to the plate, the securing plate at least partially covering each of the plurality of boreholes formed in the plate so that, once implanted, the head of the bone fixation elements are located between the plate and the securing plate.

**10**. The intervertebral implant of claim **9**, wherein the plate includes an internally threaded central borehole for receiving a central screw for fastening the securing plate to the plate.

**11**. The intervertebral implant of claim **1**, wherein the body is convex in shape.

**12**. The intervertebral implant of claim **1**, wherein the body includes a horizontal middle plane and a vertical middle plane, the plurality of partial borehole formed in the body and the plurality of boreholes formed in the plate define borehole axes, the borehole axes defining a first angle $\beta$ relative to the horizontal middle plane and a second angle $\alpha$ relative to the vertical middle plane, the first angle ranging from twenty to sixty degrees (20-60°) and the second angle ranging from ten to forty-five degrees (10-45).

**13**. The intervertebral implant of claim **1**, further comprising:

a securing mechanism operatively engaging the plate, the securing mechanism at least partially covering each of the plurality of boreholes formed in the plate to inhibit the bone fixation elements from falling out.

\*    \*    \*    \*    \*

## CERTIFICATE OF SERVICE

I, David M. Fry, hereby certify that on February 13, 2013, this document was served on

the persons listed below in the manner indicated:

### BY EMAIL

Luke A. Culpepper
WINSTON & STRAWN LLP
1111 Louisiana, 25th Floor
Houston, TX 77002
lculpepper@winston.com

Vivian S. Kuo
Robert F. Ruyak
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, DC 10006
vkuo@winston.com
rruyak@winston.com

David E. Moore
POTTER ANDERSON & CORROON LLP
1313 North Market Street
Wilmington, DE 19801
dmoore@potteranderson.com


/s/ *David M. Fry*
David M. Fry (No. 5486)
SHAW KELLER LLP
300 Delaware Avenue, Suite 1120
Wilmington, Delaware 19801
(302) 298-0700
dfry@shawkeller.com
*Attorney for Plaintiffs*