IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

SYNTHES USA, LLC,　　　　　　　　　 )
SYNTHES USA PRODUCTS, LLC and　　 )
SYNTHES USA SALES, LLC,　　　　　　 )
　　　　　　　　　　　　　　　　　　　 )
　　　　Plaintiffs,　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　　　 )
　　v.　　　　　　　　　　　　　　　　 )　　C.A. No. 11-652-LPS
　　　　　　　　　　　　　　　　　　　 )
GLOBUS MEDICAL, INC.,　　　　　　　 )
　　　　　　　　　　　　　　　　　　　 )
　　　　Defendant.　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　　　 )　　REDACTED – PUBLIC VERSION
　　　　　　　　　　　　　　　　　　　 )

**OPENING BRIEF IN SUPPORT OF
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT OF
INFRINGEMENT OF CLAIMS 1, 3 AND 5 OF U.S. PATENT NO. 7,862,616**

OF COUNSEL:
Matthew J. Becker
Jeremy C. Lowe
Edward M. Mathias
Tara R. Rahemba
AXINN, VELTROP & HARKRIDER LLP
90 State House Square, 9th Floor
Hartford, CT 06103
(860) 275-8100

Diane C. Ragosa
AXINN, VELTROP & HARKRIDER LLP
114 West 47th Street
New York, NY 10036

　　　　(212) 728-2200

Dated:　February 13, 2013

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
David M. Fry (No. 5486)
SHAW KELLER LLP
300 Delaware Avenue, Suite 1120
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
dfry@shawkeller.com
*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

TABLE OF CONTENTS..............................................................................................................I

NATURE AND STAGE OF THE PROCEEDINGS .....................................................................1

SUMMARY OF ARGUMENT .....................................................................................................1

STATEMENT OF UNDISPUTED FACTS ...................................................................................3

   I.     THE '616 PATENT ..........................................................................................................3

   II.    THE ACCUSED PRODUCTS ........................................................................................5

   III.   THERE IS NO DISPUTE THAT THE ACCUSED PRODUCTS
        SATISFY ELEMENTS (1) THROUGH (7) AND (9) OF CLAIM 1 AND THE
        ADDITIONAL LIMITATIONS OF CLAIMS 3 AND 5 OF THE '616 PATENT. ...........5

ARGUMENT .................................................................................................................................7

   I.     LEGAL STANDARDS ...................................................................................................7

   II.    SYNTHES IS ENTITLED TO SUMMARY JUDGMENT
        OF INFRINGEMENT OF CLAIMS 1, 3 AND 5 OF THE
        '616 PATENT UNDER BOTH PARTIES' PROPOSED CONSTRUCTIONS. ...............8

       A.    The Accused Products Infringe Under Synthes' Proposed Construction. ...................8

       B.    The Accused Products Infringe Under Globus' Proposed Construction....................12

CONCLUSION.............................................................................................................................17

## TABLE OF AUTHORITIES

**Page(s)**

CASES

Anderson v. Liberty Lobby, Inc.,
   477 U.S. 242 (1986)...........................................................................................................7

Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.,
   389 F.3d 1370 (Fed. Cir. 2004)........................................................................................8

Markman v. Westview Instruments, Inc.,
   52 F.3d 967 (Fed. Cir. 1995)............................................................................................8

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,
   475 U.S. 574 (1986)...........................................................................................................7

Padcom, Inc. v. Netmotion Wireless, Inc.,
   Civ. No. 03-983-SLR, 2006 U.S. Dist. LEXIS 6549 (D. Del. Feb. 22, 2006) ........................7

Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.,
   563 F.3d 1358 (Fed. Cir. 2009)....................................................................................3, 7

Warner-Jenkinson Co. v. Hilton Davis Chem. Co.,
   520 U.S. 17 (1997)............................................................................................................8

OTHER AUTHORITIES

Fed. R. Civ. P. 56........................................................................................................................3, 7

Plaintiffs Synthes USA, LLC, Synthes USA Sales, LLC and Synthes USA Products, LLC (collectively "Synthes") respectfully submit this Opening Brief in support of their Motion for Summary Judgment of Infringement of Claims 1, 3 and 5 of United States Patent No. 7,862,616 ("the '616 patent" (attached as Exhibit A[1])).  Under either Synthes' or Defendant Globus Medical, Inc.'s ("Globus'") proposed claim construction, there is no genuine issue of material fact.  Globus infringes these claims.

## NATURE AND STAGE OF THE PROCEEDINGS

This is an action for patent infringement.  On July 22, 2011, Synthes filed its Complaint in this action alleging that three spinal implants made by Globus infringe one or more claims of U.S. Patent Nos. 7,875,076 ("the '076 patent"), 7,846,207 ("the '207 patent") and the '616 patent (collectively "the Asserted Patents").  (D.I. 1 at ¶¶ 13, 20, 27.)  The three accused spinal implants are Globus' Independence®, Coalition® and InterContinental® products (collectively "the Accused Products").  Globus denies infringement and asserts a number of defenses.  (D.I. 9.)

The parties submitted a Joint Claim Construction Brief to the Court regarding the disputed claim terms of the Asserted Patents.  (D.I. 52.)  The Court's ruling on these disputed terms remains pending.  Fact discovery closed on October 1, 2012 and expert discovery closed on January 28, 2013.  (D.I. 24, 68.)

## SUMMARY OF ARGUMENT

1.      Globus and its expert dispute the presence of only one element of claims 1, 3 and 5 of the '616 patent in its Accused Products – whether the height of the three dimensional body

---

[1] For the Court's convenience, Exhibit A is attached to this Opening Brief.  Pursuant to Local Rule 7.1.3(d), other citations are included in Plaintiffs' Appendix in Support of its Opening Brief, and "A" refers to the specific appendix page on which the cited material may be found.

and the height of the plate[2] in each of the Accused Products are "substantially equal" so that the three dimensional body and the plate are contained "between" the adjacent vertebral bodies when the implant is inserted between the adjacent vertebral bodies ("the Height Requirement").

2.     Under either Synthes' or Globus' proposed construction of the Height Requirement, the Accused Products infringe.  Synthes' proposed construction requires the height of the plate to be substantially equal to the height of the body to allow the body and the front plate to *fit partly or entirely between* adjacent vertebral bodies when the implant is inserted between the adjacent vertebral bodies so that the three dimensional body and the plate are contained *partly or entirely* within a space separating the adjacent vertebral bodies when the implant is inserted between the adjacent vertebral bodies.  ██████████████ demonstrate that each of the Accused Products satisfies the Height Requirement of the '616 patent under this construction.  ████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████.  As a result, there is no genuine factual issue that Globus' Accused Products satisfy each and every element of, and therefore infringe, claims 1, 3 and 5 of the '616 patent under Synthes' proposed construction.

3.     The Accused Products also meet the Height Requirement under Globus' proposed construction, which requires the three dimensional body and the plate to be contained *entirely* within a space separating adjacent vertebral bodies when the implant is inserted between the adjacent vertebral bodies.  ██████████████ demonstrate that the plate and three dimensional body in the Accused Products reside entirely between adjacent vertebral bodies when the

---

[2] Synthes asserts that because the 'spikes' or so-called "torsional stabilizers" of the Coalition product do not house boreholes, they are extra structure and not part of the plate.  Globus disagrees.  These competing positions do not affect this summary judgment motion.

2

████████████████████████████████████
██████████████████████████████████████████

Accused Products are implanted.  Accordingly, Globus' Accused Products also infringe claims 1,

3 and 5 of the '616 patent under Globus' proposed construction.

**STATEMENT OF UNDISPUTED FACTS**

As discussed more fully below, summary judgment is appropriate when there is no

genuine dispute of material fact for trial and the moving party is entitled to judgment as a matter

of law.  Fed. R. Civ. P. 56; see also Revolution Eyewear, Inc. v. Aspex Eyewear, Inc., 563 F.3d

1358, 1365 (Fed. Cir. 2009).  Here, the undisputed facts support summary judgment of

infringement of at least claims 1, 3 and 5 of the '616 patent.[3]

I.      THE '616 PATENT

The '616 patent is directed to an intervertebral implant having a three-dimensional body,

a plate, and at least two bone fixation elements.  (See, e.g., '616 patent (Ex. A), Figures 3 and 4

(below).)



front view        side view

---

[3] Synthes has also alleged infringement of two other claims of the '616 patent as well as a
number of claims of the '207 and '076 patents.  Although Synthes maintains that all of the
asserted claims are infringed by the Accused Products, Synthes has elected not to move for
summary judgment of infringement on every asserted claim given potential factual disputes
regarding those claims, and the page limit for summary judgment motions.  Synthes reserves the
right to file a motion for judgment as a matter of law with respect to infringement of these other
claims after the evidence has been presented at trial.

The elements of claim 1 of the '616 patent are:

- (1) "[a]n intervertebral implant for implantation between two adjacent vertebral bodies";

- (2) "a plurality of bone fixation elements each including a head and a shaft, the shaft having a thread for engaging one of the adjacent vertebra";

- (3) "a three dimensional body having a left side surface, a right side surface, a front surface, a back surface, an upper side and an underside";

- (4) "the upper side and the underside being sized and configured to contact the one of the two adjacent vertebral bodies, respectively";

- (5) "the three dimensional body further including at least one partial borehole in communication with the front surface and the upper side of the body and at least one partial borehole in communication with the front surface and the underside of the body";

- (6) "a plate having an upper surface and a lower surface, the plate contacting the front surface of the three dimensional body";

- (7) "the plate including a plurality of boreholes, at least one of the plurality of boreholes formed in the plate aligning with the at least one partial borerhole in communication with the upper side of the body and at least one of the plurality of boreholes formed in the plate aligning with the at least one partial borehole in communication with the underside of the body when the three dimensional body is coupled to the plate so that one of the plurality of bone fixation elements is insertable through one of the plurality of boreholes formed in the plate, through one of the plurality of partial borehole[s] [sic] formed in the three dimensional body and into one of the adjacent vertebral bodies, respectively";

- (8) "wherein the three dimensional body further includes a first height as defined by the upper side and the underside and the plate includes a second height as defined by the upper and lower surfaces of the plate, the first height being substantially equal to the second height so that the three dimensional body and the plate are contained between the adjacent vertebral bodies when the implant is inserted between the adjacent vertebral bodies" ("the Height Requirement"); and

- (9) "wherein the plate is made from a biocompatible metallic material and the three dimensional body is made from a biocompatible non-metallic material."

('616 patent (Ex. A) at col. 6, ll. 26-67.)

Claim 3 of the '616 patent depends from claim 1 and further requires that "the three dimensional body is made from a biocompatible plastic."  ('616 patent (Ex. A) at col. 7, ll. 7-8.)

Claim 5 of the '616 patent depends from claim 1 and further requires that "the three dimensional

body includes at least one through hole extending from the upper side to the underside."

('616 patent (Ex. A) at col. 7, ll. 16-18.)

II.     THE ACCUSED PRODUCTS

Globus' Accused Products are "plate-spacer devices each comprised of a plate . . . and a spacer" and at least two fixation elements.  (Dec. 14, 2012 Expert Report of Dr. Domagoj Coric ("Coric Rebuttal Report") (A1000-A1013) at A1002, ¶ 36).)  "Independence® is used for [anterior lumbar interbody fusion] ALIF procedures, Coalition® for [anterior cervical discectomy and fusion] ACDF procedures, and InterContinental® for [lateral lumbar interbody fusion] LLIF procedures."  (Id.)  The Accused Products are depicted below.

| Independence | Coalition | InterContinental |
|---|---|---|



III.    THERE IS NO DISPUTE THAT THE ACCUSED PRODUCTS
        SATISFY ELEMENTS (1) THROUGH (7) AND (9) OF CLAIM 1 AND THE
        ADDITIONAL LIMITATIONS OF CLAIMS 3 AND 5 OF THE '616 PATENT.

As confirmed by Synthes' infringement expert, Dr. Wilson Hayes, each of Globus' Accused Products satisfies elements (1) through (7) and (9) of claim 1 of the '616 patent, and the additional elements of claims 3 and 5, under both Synthes' and Globus' proposed claim constructions.  (Nov. 5, 2012 Expert Report of Dr. Hayes ("Hayes Opening Report") (A1014-A1062) at A1044-1061, ¶¶ 257-288.)  Globus does not contest the presence of elements (1) through (7) in each of the Accused Products.  (Globus' Aug. 2, 2012 Supp. Resp. to

5

Interrogatory Nos. 3, 10, 12-14 ("Globus' Aug. 2. Supp. Interrog. Resp.") (A1063-A1156) at A1075-76.)  Moreover, Globus' sole expert on liability issues, Dr. Coric, did not contend that any of the Accused Products fails to meet elements (1) through (7).

It is further beyond dispute that the Accused Products satisfy element (9) because each has a three dimensional body that is made from ███, a biocompatible non-metallic material.[4] (See Hayes Opening Report at A1058-59, ¶¶ 281-284.)  Although Globus did not admit in its non-infringement contention interrogatory responses that element (9) is present in the Accused Products, Globus offered no evidence in these responses demonstrating that this element is missing from the Accused Products.  (Globus' Aug. 2 Supp. Interrog. Resp. at A1075-76.) Moreover, Dr. Coric did not contend that any of the Accused Products fails to satisfy element (9) of the '616 patent under either Synthes' or Globus' proposed construction of this term.  (Coric Rebuttal Report at A1013, ¶¶ 153-154.)

Accordingly, there is no genuine dispute that elements (1) through (7), (9) and the additional elements of claims 3 and 5 of the '616 patent are literally present in each of Globus' Accused Products.

---

[4] The three dimensional bodies of the Accused Products are made of ███ (See, e.g., ███ ███ is a biocompatible material. ███ ███

Because ███ is a biocompatible "material not having metallic qualities," per Synthes' proposed construction of "non-metallic material," and a biocompatible "material with no metallic components," per Globus' proposed construction, the Accused Products satisfy element (9) under either party's proposed construction.

6

## **ARGUMENT**

Synthes' proposed construction of the Height Requirement distills down to a requirement that the plate and three dimensional body of the implant be equal enough in height so that they allow the body and the plate to fit, or be contained, *at least partly* within the space separating the adjacent vertebral bodies when the implant is inserted between the adjacent vertebral bodies. Globus' proposed construction, on the other hand, requires that the plate and three dimensional body are contained *entirely* within the space separating the adjacent vertebral bodies when the implant is inserted between the adjacent vertebral bodies. There is no genuine issue of material fact that each of the Accused Products literally satisfies the Height Requirement under either party's construction.

I.   LEGAL STANDARDS

Summary judgment is appropriate when, after opportunity for discovery and upon motion, there is no genuine dispute of material fact for trial. Fed. R. Civ. P. 56; see also Revolution Eyewear, 563 F.3d at 1365. A fact is "material" if it would affect the outcome of the matter, and a dispute is "genuine" only if no "reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 258 (1986). Therefore, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). "The mere existence of some evidence in support of the nonmoving party [ ] will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue." Padcom, Inc. v. Netmotion Wireless, Inc., Civ. No. 03-983-SLR, 2006 U.S. Dist. LEXIS 6549, at *12 (D. Del. Feb. 22, 2006) (citing Anderson, 477 U.S. at 249).

7

A patent infringement analysis involves two steps:  (1) claim construction; and

(2) application of the properly construed claims to the accused product.  Markman v. Westview

Instruments, Inc., 52 F.3d 967, 976 (Fed. Cir. 1995).  A patent claim is infringed where the

patentee shows that each and every claim limitation is found – literally or by equivalents – in the

accused device.  Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 29 (1997).

"[L]iteral infringement requires that each and every limitation set forth in a claim appear in an

accused product."  Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc., 389 F.3d

1370, 1378 (Fed. Cir. 2004).[5]

II.   **SYNTHES IS ENTITLED TO SUMMARY JUDGMENT
      OF INFRINGEMENT OF CLAIMS 1, 3 AND 5 OF THE
      '616 PATENT UNDER BOTH PARTIES' PROPOSED CONSTRUCTIONS.**

A.   The Accused Products Infringe Under Synthes' Proposed Construction.

Synthes' proposed construction of the Height Requirement of claim 1 is as follows:

| The Height Requirement Language | Synthes' Proposed Construction |
|---|---|
| "the first height [i.e., the height of the body] being substantially equal to the second height [i.e., the height of the plate] so that the three dimensional body and the plate are contained between the adjacent vertebral bodies when the implant is inserted between the adjacent vertebral bodies" | the first and second heights are substantially equal *to allow* the body and the front plate to *fit partly or entirely between* adjacent vertebral bodies when the implant is inserted between the adjacent vertebral bodies so that the three dimensional body and the plate are contained *partly or entirely* within a space separating the adjacent vertebral bodies when the implant is inserted between the adjacent vertebral bodies |

(D.I. 53, Exhibit A at terms 17, 30 (emphasis added).)

---

[5] Although this motion only addresses literal infringement, Synthes alternatively contends (outside this motion) that the Accused Products infringe at least claims 1, 3 and 5 of the '616 patent under the doctrine of equivalents.

1.   The Height Requirement is satisfied under
Synthes' proposed construction if the plate and three
<u>dimensional body fit at least partly between adjacent vertebrae</u>.

Under Synthes' proposed construction, the Height Requirement is met if the heights of

the plate and three dimensional body of the implant allow the plate and the body to fit at least

partly between the adjacent vertebral bodies when the implant is inserted between the adjacent

vertebral bodies.  (<u>See, e.g.</u>, Hayes Opening Report at A1016-A0143, ¶¶ 65-125.)  Globus'

expert, Dr. Coric, expressly acknowledged this, stating that ████████████████████████

"████████████████████████████████████████████████

████████████████████  (Jan. 4, 2013 Expert Report of Dr. Domagoj Coric ("Coric Reply

Report") (A1254-A1257) at A1255-57, ¶¶ 27, 35.)  He also acknowledged this standard when he

contended that U.S. Pat. No. 6,432,106 to Fraser ("Fraser") (depicted below) meets the Height

Requirement under Synthes' construction because it has "████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

(Nov. 5, 2012 Expert Report of Dr. Domagoj Coric ("Coric Opening Report") (A1258-A1259) at

A1259, ¶ 265.  <u>See also</u> Coric Dep. Tr. (A1260-A1277) at A1266, 90:12-17.)  At his deposition,

Dr. Coric highlighted the portion of the plate in Fraser that is between the vertebral bodies, as

shown in Figure 3 of Fraser below.  (<u>See</u> Coric Dep. Tr. at A1267-68, 91:3-92:10.)



2.     It is undisputed that the plate and three dimensional body of
the Accused Products fit at least partly between adjacent vertebrae.

The heights of the plate and three dimensional body of each of the Accused Products

undisputedly allow the plate and three dimensional body to fit partly or entirely between adjacent

vertebral bodies so that the plate and three dimensional body are contained partly or entirely

within the space separating the adjacent vertebral bodies, as confirmed by excerpts from Globus'

documents, shown below.



. See also Hayes Opening

Report at A1018 (¶ 71), A1026 (¶ 90) and A1034-35 (¶ 108); Nov. 5, 2012 Expert Report of Dr.

Roger Härtl, one of Synthes' liability experts ("Härtl Opening Report") (A1289-A1294) at

A1290-93, ¶¶ 56-62; Jan. 4, 2013 Expert Report of Dr. Roger Härtl ("Härtl Reply Report")

(A1295-A1299) at A1297, ¶¶ 23-24.)  In fact,

.[6]

---

[6] The maximum difference in height is                    , depending on whether the "torsional

Globus' expert, Dr. Coric, admitted at his deposition that " ████████████████

████████████████████████████████████ s" and admitted that ████████████

████████████████." (Coric Dep. Tr. at A1274, 362:7-363:11.  See also id. at A1276,

370:3-371:9; A1273, 361:20-362:6.)[7]  Dr. Hayes confirmed that each of the Accused Products

satisfies the Height Requirement of claim 1 of the '616 patent under Synthes' proposed

constructions.  (See, e.g., Hayes Opening Report at A1018-19 (¶¶ 71-72), A1026-27 (¶¶ 90-91),

A1034-35 (¶¶ 108-109), A1056-57 (¶ 279).)

As a result, there is no genuine issue of material fact that all of the Accused Products fit

at least partly between the vertebral bodies when the implant is inserted, and accordingly that

they satisfy the Height Requirement under Synthes' proposed construction.   Therefore, the

Accused Products literally infringe claims 1, 3 and 5 of the '616 patent under Synthes' proposed

construction.

---

████████ are included in the height of the plate.  (Hayes Opening Report at A1021, at ¶¶ 80,
98, 116; Coric Rebuttal Report at A1003, ¶ 52.)

[7] Dr. Coric offers only a conclusory opinion in his report that the Height Requirement is not met
under Synthes' proposed constructions.  (Coric Rebuttal Report at A1004, ¶¶ 88, 91.)  This
opinion does not create a genuine issue of material fact for the reasons set forth above, and
because: (1) Dr. Coric failed to apply what he had already recognized to be the proper standard
under Synthes' proposed construction – namely that the Height Requirement ████████████
████████████████████████████████████" (Coric Reply
Report at A1002, ¶ 35); and (2) Dr. Coric provided no relevant basis at all for his opinion, but
instead used a standard he created himself – the alleged ████████████.  (Coric Rebuttal Report at A1005,
¶¶ 91-96.)  Dr. Coric's "clinical significance" argument is irrelevant because neither the claim
language nor Synthes' proposed construction requires the difference between the height of the
plate and the height of the three dimensional body to be "clinically insignificant" to satisfy the
Height Requirement.  As a result, these opinions are the subject of a Daubert motion filed
concurrently with the present motion, and  in any event do not create an issue of material fact.

11

B.    The Accused Products Infringe Under Globus' Proposed Construction.

Globus proposes the following construction for the Height Requirement:

| The Height Requirement Language | Globus' Proposed Construction |
|---|---|
| "the first height [i.e., the height of the body] being substantially equal to the second height [i.e., the height of the plate] so that the three dimensional body and the plate are contained between the adjacent vertebral bodies when the implant is inserted between the adjacent vertebral bodies" | the first height [i.e., the height of the body] being substantially equal to the second height [i.e., the height of the plate]⁸ so that the three dimensional body and the plate are contained *entirely* within a space separating the adjacent vertebral bodies when the implant is inserted between the adjacent vertebral bodies |

(See D.I. 53, Exhibit A at term 17 (emphasis added).)  The difference between Synthes'

proposed construction and the construction Globus has proposed is that Globus' proposed

construction requires "the first height [to be] substantially equal to the second height so that the

three dimensional body and the plate are contained *entirely* within a space separating the

adjacent vertebral bodies when the implant is inserted between the adjacent vertebral bodies."

Even under this construction, there is no genuine dispute that the Accused Products meet the

Height Requirement.

        1.    The plate and three dimensional body of each of the Accused Products are entirely within the space separating adjacent vertebral bodies when the implant is inserted between adjacent vertebral bodies.

The plates and three dimensional bodies of each of the Accused Products are in fact

entirely within the space separating the adjacent vertebral bodies when the implant is inserted

between the adjacent vertebral bodies.  (See, e.g., ████████████████████████████

████████████████████████████████████████████████████████████████████████████████®

---

⁸ Globus proposes no construction for the "the first height [i.e., the height of the body] being substantially equal to the second height [i.e., the height of the plate]" but instead contends that this portion of the Height Requirement renders the claim indefinite.  (D.I. 53, Exhibit A at term 30.)



As can be seen,[9][10] the plate and three dimensional body of each of the Accused Products are

entirely within the space separating adjacent vertebral bodies when the implant is inserted

---

[9] Although these pictures depict the Accused Coalition Product, the same concept applies to the Accused Independence and InterContinental Products.

[10] These images are based on a Globus CAD drawing of Coalition (A1337) as well as Globus' marketing literature regarding Coalition, ███████████████████████████████████████ ███████████ █ ████████████████████████████████████████████ even if the Coalition product is recessed into the vertebral bodies, the entire plate still would be contained entirely within the space separating adjacent vertebral bodies when the implant is inserted between the adjacent vertebral bodies.

13

between the adjacent vertebral bodies, as required by Globus construction' of the Height

Requirement.  (See, e.g., Härtl Reply Report at A1296, ¶ 19; Hayes Reply Report at A1286-87,

¶ 30.)

Globus' documents also demonstrate that the body and plate of each of the Accused

Products are contained entirely within the space separating the adjacent vertebral bodies when

the Accused Products are inserted between the adjacent vertebral bodies:



- Globus' website states that with the InterContinental product, "[t]he plate and
spacer are *fully contained* within the disc space . . . ."  (InterContinental
Description on Globus' Website (A1336).)



Dr. Coric admits that the "

).

(Coric Dep. Tr. at A1264-65, 75:14-76:4 ("

See also id. at A1261, 67:5-13; A1262-63, 71:3-72:9.)  As demonstrated above,

the space between the vertebral bodies when the implant is inserted into position is, if anything,

larger than the intradiscal space.  Because the plate and three dimensional body of each of the

Accused Products are completely within the intradiscal space,

that necessarily means that the entire implant is within the space separating the adjacent vertebral

bodies.

Dr. Roger Härtl, a surgeon expert for Synthes, confirmed that the three dimensional body

and plate of each of the Accused Products are contained entirely within the space separating

14

adjacent vertebral bodies when the implant is inserted between the adjacent vertebral bodies. (Härtl Opening Report at A1290-93, ¶¶ 56-62.  See also Härtl Reply Report at A1297, ¶¶ 23-24.) For example, Dr. Härtl explained that the diagram of Globus' Coalition product below ███ ██████████████████████████████████████████████████████████████████████ ████████████████████ demonstrates that the plate and the three dimensional body are contained entirely within the space separating adjacent vertebral bodies when the implant is inserted between adjacent vertebral bodies.  (Härtl Opening Report at A1290, ¶ 58.  See also id. at A1290-92, ¶¶ 56-61 (addressing Independence and InterContinental).)



There is no genuine issue that the entire plate and three dimensional body of the Accused Products reside in the space separating adjacent vertebral bodies when the implant is inserted between the vertebral adjacent bodies.

> 2.   Globus' and Dr. Coric's positions are based on
>       an incorrect and irrelevant application of Globus' construction.

Dr. Coric's contention that the Accused Products are not contained "entirely" within the space separating adjacent vertebral bodies is based only on his position that ████████████

██████████████████████
████████████████████████████████████

██████████████████████████.[11]  To make this argument, Dr. Coric repeatedly mischaracterizes the Height Requirement as requiring the body and the plate to be contained "within the intradiscal space," which is narrower than "the space separating the adjacent vertebral bodies" that is required under Globus' construction.  (See, e.g., Coric Rebuttal Report at A1010-11, ¶ 99.)  In any event, no claim language or proposed construction of any term in the '616 patent refers to the "intradiscal space."  Even if ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████ no portion of the Accused Products extends above or below the space separating adjacent vertebral bodies when the implant is inserted between the adjacent vertebral bodies.  ██████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████.)  Therefore, the plate and three dimensional body of each of the Accused Products are entirely within the space separating the adjacent vertebral bodies when the implant is inserted between the adjacent vertebral bodies, as required by Globus' proposed construction of the Height Requirement.

Dr. Coric further contends that because the plates of the Accused Products "████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████.  (See, e.g., Coric Rebuttal Report at A1010-12, ¶¶ 99, 100.)  This is flatly

---

[11] (See Coric Rebuttal Report at A1001, ¶ 27.)  In addition, Dr. Coric admits that the Accused Products ██████████████████████████████████  (See Coric Dep. Tr. at A1270-71, 283:23-284:6 (defining ████████████

████████████████████████████████████████████████████



inconsistent with the ordinary meaning of "between" that is incorporated into both parties' proposed constructions:  in the space separating.  As explained above, ████████████ ████████████████████████████████████████████████████████ ████ the plate and the three dimensional body of the Accused Products are nevertheless contained entirely within the space separating the adjacent vertebral bodies.

As a result, there is no genuine issue of material fact as to whether the Accused Products satisfy the Height Requirement of claim 1 of the '616 patent under Globus' proposed construction.[12]  And accordingly, there is no genuine issue of material fact that the Accused Products satisfy all of the elements of claims 1, 3 and 5 of the '616 patent under Globus' proposed construction.

## CONCLUSION

For the foregoing reasons, the Court should grant Synthes' Motion for Summary Judgment of Infringement of Claims 1, 3 and 5 of the '616 Patent under both Synthes' and Globus' proposed constructions.

---

[12] Dr. Coric cites no facts demonstrating that any portion of the plate of the Accused Products resides outside the space separating adjacent vertebral bodies when the implant is inserted between adjacent vertebral bodies.  Rather, he again supports his conclusory opinion with only an irrelevant analysis of ████████████████████████████████████████, to contend that the Accused Products are not contained entirely between the adjacent vertebral bodies.  (Coric Rebuttal Report at A1006-12, ¶¶ 94-100.)  As explained above, Synthes is filing a Daubert motion concurrently with this motion to exclude these unsupported and irrelevant opinions.

/s/ David M. Fry
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
David M. Fry (No. 5486)
SHAW KELLER LLP
300 Delaware Avenue, Suite 1120
Wilmington, Delaware 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
dfry@shawkeller.com
*Attorneys for Plaintiffs*

OF COUNSEL:
Matthew J. Becker
Jeremy C. Lowe
Edward M. Mathias
Tara R. Rahemba
AXINN, VELTROP & HARKRIDER LLP
90 State House Square, 9th Floor
Hartford, CT 06103
(860) 275-8100

Diane C. Ragosa
AXINN, VELTROP & HARKRIDER LLP
114 West 47th Street
New York, NY 10036
(212) 728-2200

Dated:  February 13, 2013

18

# EXHIBIT A

Case 1:11-cv-00652-LPS   Document 162

US007862616B2

(12) **United States Patent**
    Lechmann et al.

(10) **Patent No.:     US 7,862,616 B2**
(45) **Date of Patent:       *Jan. 4, 2011**

(54) **INTERVERTEBRAL IMPLANT**

(75) Inventors: **Beat Lechmann**, Bettlach (CH);
                **Dominique Burkard**, Gretzenbach
                (CH); **Chris M. J. Cain**, Norwood (AU);
                **Claude Mathieu**, Zurich (CH)

(73) Assignee: **Synthes USA, LLC**, West Chester, PA
               (US)

( * ) Notice:    Subject to any disclaimer, the term of this
                 patent is extended or adjusted under 35
                 U.S.C. 154(b) by 0 days.

                 This patent is subject to a terminal dis-
                 claimer.

(21) Appl. No.: **12/432,088**

(22) Filed:      **Apr. 29, 2009**

(65)             **Prior Publication Data**

        US 2009/0210064 A1      Aug. 20, 2009

             **Related U.S. Application Data**

(63) Continuation of application No. 11/199,599, filed on
     Aug. 8, 2005, which is a continuation of application
     No. PCT/CH03/00089, filed on Feb. 6, 2003.

(51) **Int. Cl.**
     *A61F 2/44*           (2006.01)

(52) **U.S. Cl.** ................................. **623/17.11**; 623/17.16

(58) **Field of Classification Search** ...  623/17.11–17.16;
                                             606/90, 293
     See application file for complete search history.

(56)                   **References Cited**

                 U.S. PATENT DOCUMENTS

        2,621,145 A     12/1952  Sano

                        (Continued)

                 FOREIGN PATENT DOCUMENTS

CA            2317791 A1     8/1999

                        (Continued)

                 OTHER PUBLICATIONS

Office Notice of Reason of Rejection issued by the Japanese Patent
Office.

*Primary Examiner*—Todd E Manahan
*Assistant Examiner*—Lynnsy Schneider
(74) *Attorney, Agent, or Firm*—Stroock & Stroock & Lavan
LLP

(57)                    **ABSTRACT**

An intervertebral implant having a three-dimensional body
(**10**) and a securing plate (**1**). The three-dimensional body
(**10**) includes an upper side (**1**) and an underside (**2**) which are
suitable for abutting the end plates of two adjacent vertebral
bodies, a left side surface (**3**) and a right side surface (**4**), a
front surface (**5**) and a rear surface (**6**), a horizontal middle
plane (**7**) between the upper side (**1**) and the underside (**2**), and
a vertical middle plane (**12**) extending from the front surface
(**5**) to the rear surface (**6**). The three-dimensional body further
includes a plurality of boreholes (**9***a*) passing through the
body (**10**), which are suitable for accommodating longitudi-
nal fixation elements (**20**). The intervertebral implant also
includes a front plate (**8**) displaceably disposed as an insert
with the front side (**5**) of the three-dimensional body, the front
plate (**8**) having a plurality of boreholes (**9**) in which the
longitudinal fixation elements (**20**) can be anchored, and
whose openings overlap with the openings of the boreholes of
the three-dimensional body (**10**). A securing plate can be
fastened essentially parallel to the front plate (**8**) at the three-
dimensional body (**10**) in such a manner that the boreholes of
the front plate (**9**) are covered at least partly by the securing
plate (**18**). By virtue of the configuration of the intervertebral
implant, a rigid, firm connection between the intervertebral
implant and the longitudinal fixation elements used to fasten
it, is possible.

**13 Claims, 6 Drawing Sheets**



# US 7,862,616 B2

Page 2

## U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,135,506 | A | 1/1979 | Ulrich |
| 4,501,269 | A | 2/1985 | Bagby |
| 4,512,038 | A | 4/1985 | Alexander et al. |
| 4,627,853 | A | 12/1986 | Campbell et al. |
| 4,678,470 | A | 7/1987 | Nashef et al. |
| 4,717,115 | A | 1/1988 | Schmitz et al. |
| 4,858,603 | A | 8/1989 | Clemow et al. |
| 4,904,261 | A | 2/1990 | Dove et al. |
| 4,936,851 | A | 6/1990 | Fox et al. |
| 4,950,296 | A | 8/1990 | McIntyre |
| 4,961,740 | A | 10/1990 | Ray et al. |
| 4,978,350 | A | 12/1990 | Wagenknecht .............. 606/312 |
| 4,994,084 | A | 2/1991 | Brennan |
| 5,026,373 | A | 6/1991 | Ray et al. |
| 5,053,049 | A | 10/1991 | Campbell |
| 5,062,850 | A | 11/1991 | MacMillan et al. |
| 5,084,051 | A | 1/1992 | Törmälä et al. |
| 5,112,354 | A | 5/1992 | Sires |
| 5,192,327 | A | 3/1993 | Brantigan |
| 5,211,664 | A | 5/1993 | Tepic et al. |
| 5,281,226 | A | 1/1994 | Davydov et al. |
| 5,284,655 | A | 2/1994 | Bogdansky et al. |
| 5,290,312 | A * | 3/1994 | Kojimoto et al. ......... 623/17.15 |
| 5,298,254 | A | 3/1994 | Prewett et al. |
| 5,314,476 | A | 5/1994 | Prewett et al. |
| 5,348,788 | A | 9/1994 | White |
| 5,397,364 | A * | 3/1995 | Kozak et al. .............. 623/17.11 |
| 5,405,391 | A * | 4/1995 | Hedmerson et al. ........ 623/17.15 |
| 5,423,817 | A | 6/1995 | Lin |
| 5,439,684 | A | 8/1995 | Prewett et al. |
| 5,458,638 | A | 10/1995 | Kuslich et al. |
| 5,489,308 | A | 2/1996 | Kuslich et al. |
| 5,507,818 | A | 4/1996 | McLaughlin |
| 5,514,180 | A | 5/1996 | Heggeness et al. |
| 5,522,899 | A | 6/1996 | Michelson |
| 5,534,030 | A | 7/1996 | Navarro et al. |
| 5,549,679 | A | 8/1996 | Kuslich |
| 5,554,191 | A | 9/1996 | Lahille et al. |
| 5,556,430 | A | 9/1996 | Gendler |
| 5,569,308 | A | 10/1996 | Sottosanti |
| 5,571,190 | A | 11/1996 | Ulrich et al. |
| 5,571,192 | A | 11/1996 | Schönhöffer |
| 5,607,474 | A | 3/1997 | Athanasiou et al. |
| 5,609,635 | A * | 3/1997 | Michelson ............... 623/17.16 |
| 5,609,636 | A | 3/1997 | Kohrs et al. |
| 5,609,637 | A | 3/1997 | Biedermann et al. |
| 5,676,699 | A | 10/1997 | Gogolewski et al. |
| 5,683,394 | A | 11/1997 | Rinner |
| 5,683,463 | A | 11/1997 | Godefroy et al. |
| 5,702,449 | A | 12/1997 | McKay |
| 5,702,451 | A | 12/1997 | Biedermann et al. |
| 5,702,453 | A | 12/1997 | Rabbe et al. |
| 5,702,455 | A | 12/1997 | Saggar |
| 5,728,159 | A | 3/1998 | Stroever et al. |
| 5,735,905 | A | 4/1998 | Parr |
| 5,766,253 | A | 6/1998 | Brosnahan, III |
| 5,776,194 | A | 7/1998 | Mikol et al. |
| 5,776,197 | A | 7/1998 | Rabbe et al. |
| 5,776,198 | A | 7/1998 | Rabbe et al. |
| 5,776,199 | A | 7/1998 | Michelson |
| 5,782,915 | A | 7/1998 | Stone |
| 5,785,710 | A | 7/1998 | Michelson |
| 5,800,433 | A * | 9/1998 | Benzel et al. .............. 606/61 |
| 5,861,041 | A * | 1/1999 | Tienboon ................ 623/17.16 |
| 5,865,849 | A | 2/1999 | Stone |
| 5,876,452 | A | 3/1999 | Athanasiou et al. |
| 5,885,299 | A | 3/1999 | Winslow et al. |
| 5,888,222 | A | 3/1999 | Coates et al. |
| 5,888,223 | A * | 3/1999 | Bray, Jr. ................... 623/17.16 |
| 5,888,224 | A | 3/1999 | Beckers et al. |
| 5,888,227 | A | 3/1999 | Cottle |

| | | | |
|---|---|---|---|
| 5,895,426 | A | 4/1999 | Scarborough et al. |
| 5,899,939 | A | 5/1999 | Boyce et al. |
| 5,902,338 | A | 5/1999 | Stone |
| 5,904,719 | A | 5/1999 | Errico et al. |
| 5,910,315 | A | 6/1999 | Stevenson et al. |
| 5,922,027 | A | 7/1999 | Stone |
| 5,944,755 | A | 8/1999 | Stone |
| 5,968,098 | A | 10/1999 | Winslow |
| 5,972,368 | A | 10/1999 | McKay |
| 5,976,187 | A | 11/1999 | Richelsoph |
| 5,980,522 | A | 11/1999 | Koros et al. |
| 5,981,828 | A | 11/1999 | Nelson et al. |
| 5,984,967 | A | 11/1999 | Zdeblick et al. |
| 5,989,289 | A | 11/1999 | Coates et al. |
| 6,013,853 | A | 1/2000 | Athanasiou et al. |
| 6,025,538 | A | 2/2000 | Yaccarino, III |
| 6,033,405 | A | 3/2000 | Winslow et al. |
| 6,033,438 | A | 3/2000 | Bianchi et al. |
| 6,039,762 | A | 3/2000 | McKay |
| 6,045,579 | A | 4/2000 | Hochshuler et al. |
| 6,045,580 | A | 4/2000 | Scarborough et al. |
| 6,066,175 | A * | 5/2000 | Henderson et al. ........ 623/17.11 |
| 6,080,158 | A | 6/2000 | Lin |
| 6,080,193 | A | 6/2000 | Hochshuler et al. |
| 6,090,998 | A | 7/2000 | Grooms et al. |
| 6,096,080 | A * | 8/2000 | Nicholson et al. ........ 623/17.16 |
| 6,096,081 | A | 8/2000 | Grivas et al. |
| 6,110,482 | A | 8/2000 | Khouri et al. |
| 6,123,731 | A | 9/2000 | Boyce et al. |
| 6,129,763 | A | 10/2000 | Chauvin et al. |
| 6,143,030 | A | 11/2000 | Schroder |
| 6,143,033 | A | 11/2000 | Paul et al. |
| 6,156,070 | A | 12/2000 | Incavo et al. |
| 6,193,756 | B1 | 2/2001 | Studer et al. |
| 6,200,347 | B1 | 3/2001 | Anderson et al. |
| 6,206,922 | B1 * | 3/2001 | Zdeblick et al. .......... 623/17.11 |
| 6,231,610 | B1 | 5/2001 | Geisler |
| 6,235,059 | B1 | 5/2001 | Benezech et al. |
| 6,241,769 | B1 | 6/2001 | Nicholson et al. |
| 6,245,108 | B1 | 6/2001 | Biscup |
| 6,258,125 | B1 | 7/2001 | Paul et al. |
| 6,261,586 | B1 | 7/2001 | McKay |
| 6,264,695 | B1 | 7/2001 | Stoy |
| 6,270,528 | B1 | 8/2001 | McKay |
| 6,306,139 | B1 * | 10/2001 | Fuentes ...................... 606/70 |
| 6,342,074 | B1 | 1/2002 | Simpson |
| 6,364,880 | B1 | 4/2002 | Michelson |
| 6,423,063 | B1 | 7/2002 | Bonutti |
| 6,432,106 | B1 * | 8/2002 | Fraser ..................... 623/17.11 |
| 6,458,158 | B1 | 10/2002 | Anderson et al. |
| 6,468,311 | B2 | 10/2002 | Boyd et al. |
| 6,558,423 | B1 * | 5/2003 | Michelson ............... 623/17.11 |
| 6,569,201 | B2 | 5/2003 | Moumene et al. |
| 6,576,017 | B2 * | 6/2003 | Foley et al. .............. 623/17.16 |
| 6,629,998 | B1 * | 10/2003 | Lin ......................... 623/17.11 |
| 6,638,310 | B2 | 10/2003 | Lin et al. |
| 6,645,212 | B2 | 11/2003 | Goldhahn et al. ........... 606/291 |
| 6,761,739 | B2 | 7/2004 | Shepard |
| 6,972,019 | B2 | 12/2005 | Michelson ................ 606/86 A |
| 6,984,234 | B2 | 1/2006 | Bray ........................... 606/69 |
| 7,044,968 | B1 * | 5/2006 | Yaccarino et al. ......... 623/16.11 |
| 7,172,627 | B2 | 2/2007 | Fiere et al. ............... 623/17.11 |
| 7,232,463 | B2 * | 6/2007 | Falahee ................... 623/17.11 |
| 7,232,464 | B2 | 6/2007 | Mathieu et al. ........... 623/17.11 |
| 7,323,011 | B2 * | 1/2008 | Shepard et al. ........... 623/17.11 |
| 7,608,107 | B2 * | 10/2009 | Michelson ................ 623/17.15 |
| 2001/0001129 | A1 | 5/2001 | McKay et al. |
| 2001/0005796 | A1 | 6/2001 | Zdeblick et al. |
| 2001/0010021 | A1 | 7/2001 | Boyd et al. |
| 2001/0016777 | A1 | 8/2001 | Biscup |
| 2001/0031254 | A1 | 10/2001 | Bianchi et al. |
| 2001/0039456 | A1 | 11/2001 | Boyer, II et al. |
| 2001/0041941 | A1 | 11/2001 | Boyer, II et al. |

**US 7,862,616 B2**

Page 3

| | | | |
|---|---|---|---|
| 2002/0010511 A1* | 1/2002 | Michelson ............... 623/17.15 | |
| 2002/0022843 A1* | 2/2002 | Michelson .................. 606/70 | |
| 2002/0029084 A1 | 3/2002 | Paul et al. | |
| 2002/0082597 A1* | 6/2002 | Fraser .......................... 606/61 | |
| 2002/0082603 A1 | 6/2002 | Dixon et al. .................. 607/69 | |
| 2002/0091447 A1 | 7/2002 | Shimp et al. | |
| 2002/0099376 A1* | 7/2002 | Michelson ................... 606/61 | |
| 2002/0106393 A1 | 8/2002 | Bianchi et al. | |
| 2002/0111680 A1 | 8/2002 | Michelson | |
| 2002/0128712 A1* | 9/2002 | Michelson ............... 623/17.11 | |
| 2002/0147450 A1* | 10/2002 | LeHuec et al. ............... 606/61 | |
| 2002/0169508 A1* | 11/2002 | Songer et al. ........... 623/17.11 | |
| 2002/0193880 A1* | 12/2002 | Fraser ...................... 623/17.11 | |
| 2003/0078668 A1 | 4/2003 | Michelson ............... 623/17.16 | |
| 2003/0125739 A1* | 7/2003 | Bagga et al. ................. 606/61 | |
| 2003/0153975 A1* | 8/2003 | Byrd et al. .............. 623/17.11 | |
| 2004/0078078 A1* | 4/2004 | Shepard .................... 623/17.11 | |
| 2004/0210314 A1 | 10/2004 | Michelson | |
| 2004/0254644 A1* | 12/2004 | Taylor ...................... 623/17.13 | |
| 2005/0033433 A1 | 2/2005 | Michelson | |
| 2005/0101960 A1* | 5/2005 | Fiere et al. .................... 606/72 | |
| 2005/0159813 A1* | 7/2005 | Molz ....................... 623/17.11 | |
| 2007/0219635 A1 | 9/2007 | Mathieu et al. .......... 623/17.16 | |

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| DE | 42 42 889 A1 | 6/1944 |
| DE | 30 42 003 A1 | 7/1982 |
| DE | 39 33 459 A1 | 4/1991 |
| DE | 44 09 392 A1 | 9/1995 |
| DE | 195 04 867 C1 | 2/1996 |
| DE | 299 13 200 U1 | 9/1999 |
| EP | 0505634 A1 | 9/1992 |
| EP | 0517030 A2 | 12/1992 |
| EP | 0577178 A1 | 1/1994 |
| EP | 0639351 A2 | 2/1995 |
| EP | 05056341 B1 | 8/1997 |
| EP | 0966930 | 12/1999 |
| EP | 0968692 A1 | 1/2000 |
| EP | 0906065 B1 | 1/2004 |

| | | |
|---|---|---|
| FR | 2 697 996 | 5/1994 |
| FR | 2 700 947 | 8/1994 |
| FR | 2 753 368 | 3/1998 |
| GB | 2 148 122 A | 5/1985 |
| SU | 1465040 A1 | 3/1989 |
| WO | WO 88/03417 | 5/1988 |
| WO | WO 88/10100 | 12/1988 |
| WO | WO 92/01428 | 2/1992 |
| WO | WO 95/21053 | 8/1995 |
| WO | WO 96/39988 | 12/1996 |
| WO | WO 97/20526 | 6/1997 |
| WO | WO 97/25941 | 7/1997 |
| WO | WO 97/25945 | 7/1997 |
| WO | WO 97/39693 | 10/1997 |
| WO | WO 98/17209 | 4/1998 |
| WO | WO 98/55052 | 12/1998 |
| WO | WO 98/56319 | 12/1998 |
| WO | WO 98/56433 | 12/1998 |
| WO | WO 99/29271 | 6/1999 |
| WO | WO 99/32055 | 7/1999 |
| WO | WO 99/38461 | 8/1999 |
| WO | WO 99/38963 | 8/1999 |
| WO | WO 99/56675 | 11/1999 |
| WO | WO 99/63914 | 12/1999 |
| WO | WO 00/07527 | 2/2000 |
| WO | WO 00/07528 | 2/2000 |
| WO | WO 00/30568 | 6/2000 |
| WO | WO 00/40177 | 7/2000 |
| WO | WO 00/41654 | 7/2000 |
| WO | WO 00/59412 | 10/2000 |
| WO | WO 00/66044 A1 | 11/2000 |
| WO | WO 00/66045 A1 | 11/2000 |
| WO | WO 00/74607 A1 | 12/2000 |
| WO | WO 01/08611 | 2/2001 |
| WO | WO 01/56497 A2 | 8/2001 |
| WO | WO 01/93742 A2 | 12/2001 |
| WO | WO 01/95837 A1 | 12/2001 |

* cited by examiner



Fig. 1



**Fig. 2**



**Fig. 3**



Fig. 4



Fig. 5                    Fig. 6



**Fig. 7**

US 7,862,616 B2

**1**

## INTERVERTEBRAL IMPLANT

### CROSS REFERENCE TO RELATED APPLICATION

This application is a continuation of U.S. patent application Ser. No. 11/199,599, filed Aug. 8, 2005, which is a continuation of International Patent Application No. PCT/CH2003/000089, filed Feb. 6, 2003, the entire contents of which are expressly incorporated herein by reference thereto.

### TECHNICAL FIELD

The present invention relates generally to intervertebral implants.

### BACKGROUND OF THE INVENTION

GB-A-2 207 607 discloses an intervertebral implant, which has a horseshoe-shaped configuration with a plurality of cylindrical holes. The holes are smooth on the inside and only have a stop for the heads of the bone screws, which are to be introduced therein. A disadvantage of this arrangement is that the fastening screws, introduced therein, can be anchored only with their shaft in the bone. This does not result in a rigid connection with the horseshoe-shaped intervertebral implant. When the anchoring of the screw shaft in the bone is weakened, the intervertebral implant becomes movable with respect to the screw and the bone screws tend to migrate, endangering the blood vessels. Moreover, the loosening of the intervertebral implant can lead to a pseudoarthrosis.

U.S. Patent Publication US-A 2000/0010511 (Michelson) discloses an intervertebral implant, which, at its front surface, has two boreholes with an internal thread, into which bone screws with a threaded head can be introduced. A disadvantage of this implant is that the bone screws can become loose and are not secured against being screwed out or falling out. A further disadvantage is that the bone screws are fastened completely to the implant body itself and that therefore the latter experiences a relatively large stress.

Screws which emerge at the anterior or anterolateral edge of the vertebral body because of loosening run the risk of injuring main vessels such as the aorta and Vena calva, as well as supply vessels such as lumbar arteries and veins. Injury to these main vessels may result in internal bleeding possibly causing death within a very short time. Loosening of screws is more likely when they are not mounted angularly firmly.

### SUMMARY OF THE INVENTION

The present invention is to provide a remedy for the above-discussed disadvantages. The present invention is directed to an intervertebral implant which can enter into a permanent, rigid connection with bone fixation means, so that, even if the bone structure is weakened, there is no loosening between the intervertebral implant and the bone fixation means. Moreover, over a separately constructed front plate, there is tension chording for the bone fixation elements, so that the implant body experiences less stress, that is, superimposed tensions. Moreover, a securing plate enables all bone fixation elements to be secured simultaneously.

The present invention accomplishes the objective set out above with an intervertebral implant, comprising a three-dimensional body having an upper side and an under side which are suitable for abutting the end plates of two adjacent vertebral bodies. The three-dimensional body further includes a left side surface and a right side surface, a front

**2**

surface and a rear surface, a horizontal middle plane between the upper side and the under side, and a vertical middle plane extending from the front surface to the rear surface. The three-dimensional body further comprising a plurality of boreholes, having openings at least at or near the front surface, passing there through and being suitable for accommodating longitudinal fixation elements. The intervertebral implant further including a front plate displaceably disposed as an insert into the front side of the three-dimensional body, where the front plate includes a plurality of boreholes having openings and in which the longitudinal fixation elements can be anchored, and whose openings overlap with the openings of the boreholes of the three-dimensional body. The intervertebral implant has a securing plate fastened substantially parallel to the front plate in such a manner that the boreholes of the front plate are covered at least partly by the securing plate. An advantage achieved by the present invention, arises essentially from the solid connection between the intervertebral implant and the longitudinal fixation elements, used to fasten it.

Compared to the two-part implants of the state of the art, for which a front plate is implanted in a separate step, the present invention has the advantage that the implantation of the intervertebral implant may be carried out in one step and, with that, can be carried out more easily and more quickly. A further advantage is that the intervertebral implant is fixed as frontally as possible at the body of the vertebra. That is, at a place where good bone material usually is present. The result is an anterior movement limitation without a greater risk to the surrounding structures. The load is still absorbed under compression by the intervertebral implant and not by the front plate or the fixation screws (longitudinal fixation elements).

A method for implanting an intervertebral implant of the present invention between two adjacent vertebral bodies includes introducing the intervertebral implant, having a three-dimensional body, a front plate, and one or more boreholes, between two adjacent vertebral bodies, attaching longitudinal fixation elements with heads through the boreholes into the vertebral bodies, and attaching a securing plate by means of a fastening agent over the heads of the longitudinal fixation elements to the front plate, such that the heads of the longitudinal fixation elements are captured between the front plate and the securing plate wherein the longitudinal fixation elements are secured against being shifted relative to the intervertebral implant.

Other objectives and advantages in addition to those discussed above will become apparent to those skilled in the art during the course of the description of a preferred embodiment of the invention which follows. In the description, reference is made to accompanying drawings, which form a part thereof, and which illustrate an example of the invention. Such example, however, is not exhaustive of the various embodiments of the invention, and therefore, reference is made to the claims that follow the description for determining the scope of the invention.

### BRIEF DESCRIPTION OF THE DRAWINGS

FIG. **1** shows an exploded drawing of the intervertebral implant,

FIG. **2** shows a longitudinal fixation element in the form of a screw,

FIG. **3** shows an elevation of the intervertebral implant of FIG. **1**,

FIG. **4** shows a side view of the intervertebral implant of FIG. **1**,

US 7,862,616 B2

3

FIG. **5** shows a three-dimensional detailed representation of the body of the intervertebral implant, which shows the connecting elements to the front plate of FIG. **6**,

FIG. **6** shows a three-dimensional detailed representation of the front plate of the intervertebral implant and the connecting elements to the body of FIG. **5** and

FIG. **7** shows a completely installed intervertebral implant with front plate and securing plate.

## DESCRIPTION OF THE PREFERRED EMBODIMENTS

The intervertebral implant, shown in FIG. **1-7**, includes a three-dimensional body **10** in the form of a cage with an upper side **1** and an underside **2**, which are suitable for abutting the end plates of two adjacent vertebral bodies, a left side surface **3** and a right side surface **4**, a front surface **5** and a back surface **6**, a horizontal middle plane **7** located between the upper side **1** and the underside **2**, a vertical middle plane **12** extending from the front surface **5** to the rear surface **6** and four boreholes **9**a, which pass through the body **10** and are suitable for accommodating longitudinal fixation elements **20**. The body **10** may be constructed as a hollow body, the mantle surfaces of which are provided with perforations **19**. The upper side **1** and/or under side **2** of the intervertebral implant may preferably be convex in shape, not planar. A convex shape to the upper side **1** and the underside **2** allows for an improved fit with the end plates of the adjacent vertebral bodies by the intervertebral implant. Further, the side surfaces **1-6** of the intervertebral implant may be essentially convex, as well.

As shown in FIG. **7**, the upper side **1** and the underside **2** of the three-dimensional body **10** are provided with structuring in the form of teeth **30**.

At the front surface of the three-dimensional body **10**, a front plate **8** may be mounted, which is disposed perpendicular to the horizontal central plane of the intervertebral implant and through which four boreholes **9** pass and in which the longitudinal fixation elements **20** can be anchored. The front plate **8**, as shown in FIGS. **5** and **6**, is constructed as an insert for the three-dimensional body **10**. The three-dimensional body **10** has a semicircular groove **27** extending parallel to the vertical middle plane **12** at the transitions of the left side surface **3** and the right side surface **4** (FIG. **5**) to the front surface **5**. Correspondingly, the front plate **3** has right and left (FIG. **6**) similarly extending and similarly dimensioned, semicircular rail **28**. As a result, the front plate can be pushed and positioned easily with its two lateral rails **28** into the corresponding grooves **27** of the body **10** during the production of the intervertebral implant.

In one embodiment at least one of the boreholes **9** in the front plate is constructed so that a longitudinal fixation element **20**, accommodated therein, can be connected rigidly with the front plate. A rigid connection may be accomplished, for example, owing to the fact that at least one of the boreholes **9** of the front plate **8** has an internal thread. A corresponding longitudinal fixation element **20**, bone screw, with a threaded end can then be screwed together rigidly with the implant. In an alternative embodiment, the four boreholes **9** in the front plate may have an internal thread **11**, so that longitudinal fixation elements **20** can be connected rigidly with the front plate **8**.

As discussed, the front plate **8** may be disposed, preferably vertically to the horizontal central plane, so that it can be displaced vertically with respect to the three-dimensional body **10**. By these means, "stress shielding" (protection and

4

neutralization of mechanical stresses) is attained, which permits the end plates to be adapted to the intervertebral implant during the healing process.

The intervertebral implant may have a securing plate **18**, which can be fastened by means of a screw connection parallel to the front plate **8** at the front plate **8** in such a manner that the boreholes **9** of the front plate **3** are partly covered by the securing plate **18**. The securing plate **18** may have a central borehole **17** provided, preferably, with an internal thread. Corresponding thereto, the front plate **8** has a central borehole **15** for accommodating fastening means **16**. Preferably, the central borehole **15** has an internal thread **14** for accommodating a fastening means **16** in the form of a screw. The securing plate **18** may also be fastened by a bayonet catch or a click catch. By fastening the securing plate **18** to the front plate **8**, the heads **21** of the longitudinal fixation elements **20** (discussed later) are contacted by the securing plate **18**, so that they are secured against being ejected or screwed out.

Preferably, the boreholes **9**a of the three-dimensional body **10** do not pass either through the left side surface **3** or the right side surface **4** or completely through the front surface **5**. The front surface **5**, preferably, is also not crossed by the boreholes **9**a. Further, the horizontal middle plane **7** is not pierced by the boreholes **9**a. Only the axes **24** of the longitudinal fixation elements **20**, introduced therein, intersect the horizontal middle plane **7** of the body **10**. As seen from the front surface **5**, the boreholes of the three-dimensional body **10** and the front plate diverge. The axes **24** of the boreholes of the three-dimensional plate **10** and the front plate **8** enclose an angle $\beta$ ranging from 20° to 60°, specifically from 36° to 48°, and more preferably an angle $\beta$ of 42° with the horizontal middle plane **7** (FIG. **4**) and an angle $\alpha$ ranging from 10° to 45°, specifically from 27° to 33°, and more preferably an angle $\alpha$ of 30° with the vertical middle plane **12** (FIG. **3**). Thus, better access for introducing the screws is achieved.

In one embodiment, at least one of the boreholes **9** of the front plate **8** may taper conically towards the underside **2**, so that a bone screw, with a corresponding conical head, can be anchored rigidly therein. The conical borehole preferably has a conical angle, which is smaller than the resulting frictional angle. Advisably, the conicity of the conical borehole is 1:3.75 to 1:20.00 and preferably 1:5 to 1:15.

In another configuration, at least two of the boreholes **9** of the front plate **8** extend parallel to each other. This makes insertion of the intervertebral implant easier. In another embodiment, at least two of the boreholes **9** of the front plate **8** diverge when viewed from the front side. By these means, a region of the vertebral body, which has a better bone quality than does the center of the vertebral body, is reached by the bone screws.

To improve the anchoring of the bone screw in a plastic body of the intervertebral implant (discussed later), a metal sleeve with an internal thread (not shown) may be inserted in the boreholes of the front plate and three-dimensional body. The intervertebral implant may also consist only partially of an x-ray transparent plastic and, in the region of the boreholes consist of a metal, such as titanium or a titanium alloy. Improved guidance and anchoring of the bone screws in the intervertebral implant may be achieved. Further, the boreholes **9** may have a smooth internal wall, into which the threaded head of a metallic, longitudinal fixation element may cut or be molded.

Depending on circumstances, two, three, four or more longitudinal fixation elements may be connected rigidly with the intervertebral implant. Preferably, at least one fixation element should pierce the upper side and at least one fixation element the underside of the intervertebral implant. The lon-

US 7,862,616 B2

5

gitudinal fixation elements **20** may have either a smooth head, so that there will not be a rigid connection with the implant or a threaded, conical or expendable end, so that there will be a rigid connection with the implant. In both cases, however, the longitudinal fixation elements **20** are secured by the securing plate against rotating out, being ejected out or falling out at a later time.

The longitudinal fixation elements **20** are preferably constructed as bone screws. As shown in FIG. **2**, the longitudinal fixation elements **20**, introduced into the boreholes **9**, have a head **21**, a tip **22**, a shaft **23** and an axis **24**. The head **21** may preferably be provided with an external thread **25**, which corresponds to the internal thread **11** of the borehole **9**, so that the heads **21** can be anchored in the boreholes **9** in a rigid manner. The shaft **23** may be provided with a thread **26**, which is self-drilling and self-cutting. The load thread angle of the thread **26** has a range of between $11°$ to $14°$, preferably between $12°$ and $13°$, and more preferably a load thread angle of $12.5°$. The pitch angle of the thread may have a range of between $6°$ and $10°$, preferably between $7°$ and $9°$, and more preferably have a pitch angle of $8°$. The special pitch angle produces a self-retardation in the thread, thus ensuring that the bone screw will not automatically become loose.

In the case of a second, possibly rigid type of connection, a longitudinal fixation element **20**, bone screw, may preferably be used, the head of which tapers conically towards the shaft, the conicity of the head corresponding to the conicity of the borehole of the intervertebral implant. The longitudinal fixation elements may also be constructed as threadless cylindrical pins, which are provided with a drilling tip, preferably in the form of a trocar. A further variation consist therein that the longitudinal fixation elements are constructed as spiral springs. Finally, the longitudinal fixation elements may also be constructed as single-vaned or multi-vaned spiral blades.

As shown in FIG. **7**, two longitudinal fixation elements **20** pierce the upper side **1** and two longitudinal fixation elements **20** pierce the underside **2** of the body **10**, thereby anchoring the intervertebral implant to the adjacent vertebral bodies.

The intervertebral implant may be produced from any material which is compatible with the body. Preferably, the three-dimensional body **10** may consist of a body-compatible plastic which has not been reinforced and which may be transparent to x-rays. The advantage over fiber-reinforced plastics, which are already known in implant technology, is that no reinforcing fibers are exposed. Such exposure may be disadvantageous clinically. In such a three-dimensional body **10** constructed of a plastic that has not been reinforced, the use bone screws may be preferable. As discussed previously, the external thread of the bone screw(s) may have a load thread angle range of $11°$ to $14°$, and preferably between $12°$ to $13°$. A comparatively slight inclination of the load flank brings about a high clamping force. As a result, radial expansion and the danger of forming cracks in the plastic are reduced. Furthermore, the external thread of the bone screw(s) may preferably have a pitch angle between $6°$ and $10°$ and preferably between $7°$ and $9°$.

The front plate **8** may be made from materials different than the three-dimensional body **10**. The front plate **8** is preferably made from a metallic material. Titanium or titanium alloys are particularly suitable as metallic materials. The complete tension chord arrangement (front plate and screws) may also be made from implant steel or highly alloyed metallic materials, such as CoCrMo or CoCrMoC. The advantage of titanium lies in that there is good tissue compatibility and the good ingrowing behavior of bones. The advantage of highly alloyed metallic materials lies in their high-strength values, which permit filigree constructions.

6

A brief description of a surgical procedure follows in order to explain the invention further.

The intervertebral implant, in the form of a three-dimensional body **10**, is introduced between two adjacent vertebral bodies by means of a suitable instrument. Longitudinal fixation elements **20**, in the form of bone screws, securing the three-dimensional body **10** are screwed/inserted by means of a suitable aiming device through the boreholes **9** of the front plate **8** into the vertebral bodies. The front plate **8** may be displaced vertically with respect to the three-dimensional body **10**, such that the openings of the boreholes **9a** of the three-dimensional plate **10** and the boreholes **9** of the front plate **8** overlap, to obtain stress shielding. The securing plate **18** is fastened by means of a fastening agent **16** in the form of a screw over the heads **21** of the longitudinal fixation elements **20** at the front plate **8**, so that the heads **21** of the longitudinal fixation elements **20** and, with that, the screws themselves, are captured between the front plate **8** and the securing plate **18** and secured against being shifted relative to the three-dimensional body **10** (for example, by falling out or by turning out). The fastening agent **16**, in the form of a screw, preferably is provided with a thread, which is distinguished by a large self-retardation.

The invention claimed is:

1. An intervertebral implant for implantation between two adjacent vertebral bodies, the implant comprising:

a plurality of bone fixation elements each including a head and a shaft, the shaft having a thread for engaging one of the adjacent vertebra;

a three dimensional body having a left side surface, a right side surface, a front surface, a back surface, an upper side and an underside, the upper side and the underside being sized and configured to contact the one of the two adjacent vertebral bodies, respectively, the three dimensional body further including at least one partial borehole in communication with the front surface and the upper side of the body and at least one partial borehole in communication with the front surface and the underside of the body;

a plate having an upper surface and a lower surface, the plate contacting the front surface of the three dimensional body, the plate including a plurality of boreholes, at least one of the plurality of boreholes formed in the plate aligning with the at least one partial borehole in communication with the upper side of the body and at least one of the plurality of boreholes formed in the plate aligning with the at least one partial borehole in communication with the underside of the body when the three dimensional body is coupled to the plate so that one of the plurality of bone fixation elements is insertable through one of the plurality of boreholes formed in the plate, through one of the plurality of partial borehole formed in the three dimensional body and into one of the adjacent vertebral bodies, respectively, wherein the three dimensional body further includes a first height as defined by the upper side and the underside and the plate includes a second height as defined by the upper and lower surfaces of the plate, the first height being substantially equal to the second height so that the three dimensional body and the plate are contained between the adjacent vertebral bodies when the implant is inserted between the adjacent vertebral bodies;

wherein the plate is made from a biocompatible metallic material and the three dimensional body is made from a biocompatible non-metallic material.

US 7,862,616 B2

7

**2**. The intervertebral implant of claim **1**, further comprising:

a semicircular groove extending parallel to a vertical middle plane at transitions of the left and right side surfaces to the front surface.

**3**. The intervertebral implant of claim **1**, wherein the three dimensional body is made from a biocompatible plastic.

**4**. The intervertebral implant of claim **1**, wherein the plurality of bone fixation elements are bone screws and the plurality of boreholes formed in the plate include internal threads, at least a portion of the heads of the bone screws being externally threaded for engaging the internal threads of the plurality of boreholes to anchor the plurality of bone screws to the plurality of boreholes in a rigid manner.

**5**. The intervertebral implant of claim **1**, wherein the three dimensional body includes at least one through hole extending from the upper side to the underside.

**6**. The intervertebral implant of claim **1**, wherein the body includes a horizontal middle plane and a vertical middle plane, the plurality of partial borehole formed in the body comprise four body partial borehole, the plurality of boreholes formed in the plate comprise four plate boreholes and the plurality of bone fixation elements comprise four bone fixation elements, two of the bone fixation elements passing through the upper side of the body and two of the bone fixation elements passing through the underside of the body, the four partial borehole formed in the body and the four boreholes formed in the plate being arranged such that the heads of the four bone fixation elements are located between the upper side and an underside in an assembled configuration.

**7**. The intervertebral implant of claim **6**, wherein the two of bone fixation elements passing through the upper side diverge

8

with respect to one another and the two bone fixation elements passing through the underside diverge with respect to one another.

**8**. The intervertebral implant of claim **1**, wherein the plate may be pushed and placed easily with respect to the front surface of the body.

**9**. The intervertebral implant of claim **1**, further comprising:

a securing plate fastenable to the plate, the securing plate at least partially covering each of the plurality of boreholes formed in the plate so that, once implanted, the head of the bone fixation elements are located between the plate and the securing plate.

**10**. The intervertebral implant of claim **9**, wherein the plate includes an internally threaded central borehole for receiving a central screw for fastening the securing plate to the plate.

**11**. The intervertebral implant of claim **1**, wherein the body is convex in shape.

**12**. The intervertebral implant of claim **1**, wherein the body includes a horizontal middle plane and a vertical middle plane, the plurality of partial borehole formed in the body and the plurality of boreholes formed in the plate define borehole axes, the borehole axes defining a first angle $\beta$ relative to the horizontal middle plane and a second angle $\alpha$ relative to the vertical middle plane, the first angle ranging from twenty to sixty degrees (20-60°) and the second angle ranging from ten to forty-five degrees (10-45).

**13**. The intervertebral implant of claim **1**, further comprising:

a securing mechanism operatively engaging the plate, the securing mechanism at least partially covering each of the plurality of boreholes formed in the plate to inhibit the bone fixation elements from falling out.

\*   \*   \*   \*   \*

## CERTIFICATE OF SERVICE

I, David M. Fry, hereby certify that on February 13, 2013, this document was served on the persons listed below in the manner indicated:

### BY EMAIL

Luke A. Culpepper
WINSTON & STRAWN LLP
1111 Louisiana, 25th Floor
Houston, TX 77002
lculpepper@winston.com

Vivian S. Kuo
Robert F. Ruyak
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, DC 10006
vkuo@winston.com
rruyak@winston.com

David E. Moore
POTTER ANDERSON & CORROON LLP
1313 North Market Street
Wilmington, DE 19801
dmoore@potteranderson.com

/s/ *David M. Fry*
David M. Fry (No. 5486)
SHAW KELLER LLP
300 Delaware Avenue, Suite 1120
Wilmington, Delaware 19801
(302) 298-0700
dfry@shawkeller.com
*Attorney for Plaintiffs*