

Karen E. Keller
300 Delaware Avenue, Suite 1120
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com

June 13, 2013

**BY CM/ECF & HAND DELIVERY**
The Honorable Leonard P. Stark
United States District Court
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, DE 19801

Re:   *DePuy Synthes Products, LLC v. Globus Medical, Inc.*, C.A No. 11-652-LPS

Dear Judge Stark:

      Synthes submits this letter to request relief in light of Globus' closing argument presentation. Based on Synthes' review of the transcript of today's proceedings, it is apparent that Globus, throughout its closing statement, improperly and in violation of the Court's claim construction orders, attempted to argue for the fourth time in this lawsuit -- three of which have occurred during trial -- that the claims of the Asserted Patents require bone screws rigidly connected to the plate. Each time, Globus' attempt to import this limitation has failed, and all three of Globus' attempts to import this limitation throughout the presentation of evidence to the jury have prejudiced Synthes.

      During claim construction proceedings, Globus unsuccessfully proposed that "anchorable" be construed to require a rigid connection. Despite the Court's ruling to the contrary, Globus sought twice during the evidentiary phase of the trial to import the "rigid connection" requirement into the claims, the first time as a requirement of the "constrained" (the Court's construction of "anchorable") limitation of claim 1 of the '207 patent, and the second time as a requirement of the "sized and configured to extend through the [first/second] borehole and into the [upper/lower] endplate" limitation of claim 1 of the '076 patent.

      Synthes sought and obtained a standing objection to Globus' improper efforts to argue claim construction to the jury on the first day of evidence, Tuesday, June 4. Nevertheless, Globus proceeded to examine numerous witnesses on the specifications of the Asserted Patents and their discussion of "locking screws." The Court rejected both of Globus' first two attempts, ruling this morning that "constrained" in the construction of "anchorable" of the '207 patent, and "sized and configured" in claim 1 of the '076 patent get their ordinary meaning and do not require rigidly connected fixation elements. *See* Tr. at 1924:24-1925:13.

      Apparently prepared for the Court's ruling, only hours later, Globus argued with a prepared demonstrative that *yet another* portion of claim 1 of the '076 patent "requires there be something that constrains the bone screws into the implant," *see* Tr. at 2080:8-10, and that "the Court has interpreted rigid connection to be capable of being constrained." Tr. 2076:3-4.

SHAW KELLER LLP

The Honorable Leonard P. Stark
Page 2

Globus used the following demonstrative exhibit to advocate that the jury should import "rigid connection" into yet another part of the claim:



Not only is this an end run around the Court's three determinations that "rigid connection" is not part of the claims, but it is based on an incomplete recitation of the bone screw limitation claim 1, calculated to mislead the jury. The complete language of the last portion of claim 1 reads:

> first and second bone screws each having a head and a shank, the first bone screw being sized and configured to extend through the first borehole and into the upper endplate, the second bone screw being sized and configured to extend through the second borehole and into the lower endplate to anchor the intervertebral implant to the upper and lower vertebrae and the heads of the first and second bone screws *positioned between the upper and lower planes*.

By omitting the emphasized language above, and by the way it divided and indented the claim language in its closing presentation to the jury, Globus seeks to persuade the jury that (1) "the heads of the first and second bone screws" must be "anchored" to the implant, and (2) that "anchored" means rigidly connected. The full language of this limitation, and of the '076 patent, makes clear, however, that this is incorrect.

Globus' repeated efforts to import "rigid connection" into the claims are highly prejudicial, and threaten to taint the entire trial, because the volume of evidence presented on the "rigidly connected" issue, coupled with Globus' focus on "rigid connection" in its closing argument, suggest to the jury that it is invited to import a "rigid connection" requirement from the specification into one or more unconstrued limitations of the Asserted Claims.

Globus' tactics further prejudice Synthes. First, it is -- yet again -- an improper attempt to have the jury perform claim construction. In this instance, it is even more prejudicial to

Synthes, because Globus never sought construction of this limitation at any stage of the case, and never even raised its proposed new construction during the evidentiary stage of the trial. Should Globus prevail on infringement by the jury finding non-infringement of these claims based on Globus' latest argument, Globus could literally win on a limitation that has never once been discussed in the entire lawsuit, let alone at trial. Second, Globus' tactic relies on omitting claim language to mislead the jury. The omitted language makes clear that there is no requirement that the heads of the bone screws be anchored to the implant. And in any event, there is no support for Globus' argument that the jury should find that this language somehow requires a rigid connection between the bone screws and the implant.

Globus should not be permitted to invite the jury to conduct its own Markman analysis to determine the scope of the claims. It is the court's role to ascertain "the meaning a term would have to a person of ordinary skill in the art after reviewing the intrinsic record at the time of the invention." *O2 Micro v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1360-63 (Fed. Cir. 2008). "[T]he court's obligation is to ensure that questions of the scope of the patent claims are not left to the jury. In order to fulfill this obligation, the court must see to it that disputes concerning the scope of the patent claims are fully resolved." *Every Penny Counts, Inc. v. American Express Co.*, 563 F.3d 1378, 1383 (Fed. Cir. 2009) (citation omitted). Accordingly, it is "improper to argue claim construction to the jury." *Cordis Corp. v. Boston Sci. Corp.*, 561 F.3d 1319, 1337 (Fed. Cir. 2009) (explaining that the risk of confusing the jury is high when experts opine on claim construction); *see also Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1207 (Fed. Cir.2010) (district court correctly prevented expert from testifying regarding the meaning of a non-interpreted term). Even by agreement, the parties cannot argue conflicting claim constructions to the jury. *Cytologix Corp. v. Ventana Med. Sys., Inc.*, 424 F.3d 1168, 1172 (Fed. Cir. 2005). Similarly, submitting to the jury a dispute over "the meaning and scope of the patent claims asserted to be infringed" is error. *O2 Micro*, 521 F.3d at 1360-61 (vacating the jury verdict).

The Court has found multiple times that the claims do not require fixation elements to be rigidly connected to the front plate. Throughout this trial, Globus, as foreshadowed to the Court at the Pretrial Conference, has changed its theory of the case from day to day to import precisely the same "rigid connection" requirement into the claims, resulting in a whack-a-mole trial that focused to a large extent on screw fixation and on issues of claim construction to the jury.

Synthes respectfully requests that the Court provide the enclosed supplemental instruction to the jury, to cure the prejudice caused by Globus' latest improper argument. Alternatively, Synthes moves for a new trial.

Respectfully,

*/s/ Karen E. Keller*

Karen E. Keller (No. 4489)

cc: Clerk of Court (by CM/ECF & hand delivery)
Counsel of Record (by CM/ECF & e-mail)