IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DEPUY SYNTHES PRODUCTS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | REDACTED – PUBLIC VERSION |
| | ) | |
| v. | ) | C.A. No. 11-652-LPS |
| | ) | |
| GLOBUS MEDICAL, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**APPENDIX OF EXHIBITS CITED IN PLAINTIFF'S
ANSWERING BRIEF TO DEFENDANT'S MOTION FOR ATTORNEY'S FEES**

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
David M. Fry (No. 5486)
SHAW KELLER LLP
300 Delaware Avenue, Suite 1120
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
dfry@shawkeller.com
*Attorneys for Plaintiff*

OF COUNSEL:
Francis H. Morrison III
Matthew J. Becker
Edward M. Mathias
Tara R. Rahemba
AXINN, VELTROP & HARKRIDER LLP
90 State House Square, 9th Floor
Hartford, CT 06103
(860) 275-8100

Diane C. Ragosa
AXINN, VELTROP & HARKRIDER LLP
114 West 47th Street
New York, NY 10036
(212) 728-2200

Dated:   August 22, 2013

| Page Cite | Document Description |
|---|---|
| B0001 – B0003 | October 3, 2011 Correspondence from M. Becker to R. Ruyak |
| B0004 – B0007 | Excerpt of Deposition Transcript of D. Messerli, dated October 4, 2012 |
| B0008 | Biotech Week, Synthes and Globus agree on settlement, 2007 WLNR 16972156 |
| B0009 – B0033 | Plaintiffs' Third Amended Complaint, C.A. No. 04-cv-01235 (E.D. Pa., filed June 23, 2006) |
| B0034 – B0060 | Plaintiffs' Response in Opposition to Defendants' Motion for Summary Judgment as to Counts I-IX of Plaintiffs' Third Amended Complaint, C.A. No. 04-cv-01235 (E.D. Pa., filed June 19, 2007) |
| B0061 – B0075 | Settlement Agreement and Mutual Release, dated August 15, 2007 |
| B0076 – B0094 | Settlement Agreement and Mutual Release, dated September 23, 2010 |

AXINN | VELTROP | HARKRIDER | LLP

AXINN, VELTROP & HARKRIDER LLP
90 STATE HOUSE SQUARE HARTFORD, CT 06103-3702
TEL: 860.275.8100  FAX: 860.275.8101

114 WEST 47TH STREET NEW YORK, NY 10036
TEL: 212.728.2200  FAX: 212.728.2201

1330 CONNECTICUT AVENUE, N.W. WASHINGTON, DC 20036
TEL: 202.912.4700  FAX: 202.912.4701

www.avhlaw.com

MATTHEW J. BECKER
(860) 275-8177
MJB@AVHLAW.COM

October 3, 2011

VIA ELECTRONIC AND FIRST-CLASS MAIL

Robert F. Ruyak
Winston & Strawn LLP
1700 K Street, N.W.
Washington, D.C. 20006-3817
rruyak@winston.com

Dear Mr. Ruyak:

We write in response to your September 16, 2011 letter to Synthes contending that Globus' accused spinal products – including the Coalition ACDF® System, Independence® ALIF System and InterContinental™ Plate-Spacer products (the "Accused Products") – do not infringe Synthes' U.S. Patent No. 7,846,207 (the "'207 patent"), and threatening to seek sanctions under Fed. R. Civ. P. 11 if Synthes does not withdraw this infringement claim.

Synthes conducted a careful pre-suit infringement analysis in which it interpreted the claims, reviewed Globus' product information, examined available samples, and determined that Globus' Accused Products contain, literally and/or equivalently, each and every element of claims of the '207 patent. The sole basis of your letter is the assertion that the Accused Products do not contain any structure that meets the "securing plate" limitation of the claims of the '207 patent, but your letter provides no legally-cognizable analysis to support this contention. Synthes maintains that a comparison of the Accused Products with the properly construed claims demonstrates that Globus' Accused Products meet the claimed "securing plate" limitation.

As Globus acknowledges, an infringement analysis contains two steps: construing the claim(s); and comparing the accused product(s) to the construed claim(s). Your letter contains no analysis of either prong. Your letter does not construe "securing plate," but instead simply cites to the preferred embodiment of the '207 patent, implying that "securing plate" is limited to a "separate" plate that is fastened to the front plate with a screw. Although not expressly asserted in your letter, Globus' noninfringement contention appears to depend on this narrow construction of "securing plate." This position is not supported by the intrinsic evidence of the

October 3, 2011
Page 2

'207 patent and is inconsistent with basic tenets of patent law. The law is clear that, absent limiting statements, it is improper to import limitations from the preferred embodiment into the claims.

> [A]lthough the specification often describes very specific embodiments of the invention, [the Federal Circuit has] repeatedly warned against confining the claims to those embodiments . . . . In particular, [the Federal Circuit has] expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment.

Phillips v. AWH Corp., 415 F.3d 1303, 1323 (Fed. Cir. 2005).[1]  Globus cites no evidence supporting the conclusion that "securing plate" should be limited to the preferred embodiment. The reason for Globus' omission is simple: there is no such support in the record. The Accused Products need not have a securing plate identical to that in the preferred embodiment in order to infringe the '207 patent.

Globus makes the additional point that the securing mechanism used in its products was known in the prior art. This point, even if correct, is irrelevant as a matter of law. The '207 patent claims a combination of multiple elements; it makes no difference whether one specific aspect of one of these elements was known in the prior art. See, e.g., Fiskars, Inc. v. Hunt Mfg. Co., 221 F.3d 1318, 1324 (Fed. Cir. 2000) ("A claim to a mechanical device usually recites a combination of several elements, most or all of which may be separately known," citing Rosemount, Inc. v. Beckman Instruments, Inc., 727 F.2d 1540, 1546 (Fed. Cir. 1984) ("a combination may be patentable whether it be composed of elements all new, partly new, or all old") and Fromson v. Advance Offset Plate, Inc., 755 F.2d 1549, 1556 n.3 (Fed. Cir. 1985) ("Only God works from nothing. Men must work with old elements.")).  Globus does not even attempt to show that the securing structure at issue is relevant to an analysis of the validity of the overall combination of elements claimed by the '207 patent, or to explain why the prior art would somehow compel a construction of "securing plate" that excludes Globus' structure.

Because Globus does not provide an express or proper construction of "securing plate," it correspondingly fails to explain why the securing mechanisms in the Accused Products do not meet the securing plate limitation. Our pre-suit investigation revealed, and Globus does not contest, that the Accused Products each contain a generally flat structure that is fastened

---

[1] See also Anchor Wall Sys. v. Rockwood Retaining Walls, 340 F.3d 1298, 1308 (Fed. Cir. 2003) (finding that in construing the term "protrusion," nothing in the specification warranted departure from the general rule of claim construction that "claims of a patent are not limited to a preferred embodiment, unless by their own language"); Virginia Panel Corp. v. MAC Panel Co., 133 F.3d 860, 866 (Fed. Cir. 1997) ("[I]t is well-settled that device claims are not limited to devices which operate precisely as the embodiments described in detail in the patent.").

October 3, 2011
Page 3

substantially parallel to the front plate and secures fixation elements in place by at least partly covering the boreholes in the front plate and the heads of the fixation elements. This structure is disclosed in the drawings accompanying your letter as well as in other drawings of the Accused Products and in the Accused Products themselves. This structure meets the securing plate limitation as properly construed. You offer no explanation grounded in law or fact to support your conclusory statement that this structure does not meet the securing plate limitation.

A Rule 11 movant's motion for sanctions must demonstrate that the claim at issue is frivolous or patently unmeritorious. See, e.g., Arab African Int'l Bank v. Epstein, 10 F.3d 168, 175 (3d Cir. 1993) (affirming denial of Rule 11 sanctions because "Rule 11 sanctions are reserved for circumstances where a claim or motion is 'patently unmeritorious or frivolous'"), quoting Doering v. Union County Bd. of Chosen Freeholders, 857 F.2d 191, 194 (3d Cir. 1988); LG. Phillips LCD Co. v. Chi Mei Optoelectronics, Corp., 551 F. Supp. 2d 333, 342 (D. Del. 2008) (denying motion for sanctions where the non-movant's litigation decisions were not in bad faith nor patently unmeritorious). Moreover, a Rule 11 notice letter must disclose all of the movant's arguments to this effect. Mondelli v. Delzotti, No. 10-3393, 2011 U.S. Dist. LEXIS 32822, at *15-17 (D.N.J. Mar. 29, 2011). Assuming that Globus' September 16, 2011 letter is intended to serve this purpose, Globus' letter is deficient, incomplete and legally flawed in that it fails to demonstrate that Synthes' claim is objectively baseless or even that the Accused Products do not infringe. Synthes can only conclude that Globus is improperly using Rule 11 as a pretext to obtain early discovery. (See Notes of Advisory Committee on 1993 amendments to Rule 11 (Rule 11 motions "should not be employed as a discovery device or to test the legal sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes.").)

We urge Globus to reconsider its intention to file a Rule 11 motion. If Globus proceeds with a motion as described in your letter, Synthes intends to seek its attorneys' fees and costs, and/or respond with its own motion for sanctions. (See id. ("[T]he filing of a motion for sanctions is itself subject to the requirements of the rule and can lead to sanctions.").)

Sincerely,

Matthew J. Becker

cc:     All Counsel of Record (*via email*)

# B004-B007

# REDACTED

9/5/07 BIOTECHWK 749                                                           Page 1

9/5/07 Biotech Wk. 749
2007 WLNR 16972156

Biotech Week
Copyright 2007 Biotech Week via NewsRx.com

September 5, 2007

Section: Expanded Reporting

Synthes and Globus agree on settlement
Synthes

2007 SEP 5 - (NewsRx.com) -- Synthes, Inc. and Globus Medical Inc. and certain distributors of Globus products jointly announce that, in return for a payment of $13,500,000.00 to Synthes, an agreement by Globus Medical that it and its agents will not solicit or hire Synthes employees for one year until August 10, 2008, and the exchange of mutual general releases, the parties have resolved, without any admission of liability or wrong-doing by Globus, all six cases currently pending between them.

---- INDEX REFERENCES ---

COMPANY: GLOBUS MEDICAL INC

Language: EN

OTHER INDEXING: (GLOBUS MEDICAL; GLOBUS MEDICAL INC) (Synthes)

KEYWORDS: Synthes; Biotechweek

Word Count: 100
9/5/07 BIOTECHWK 749
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| SYNTHES (U.S.A.)<br>1690 Russell Road<br>Paoli, PA 19301 | : <br> : <br> : <br> : |
| and | : Civil Action No. 04CV1235 <br> : |
| SYNTHES SPINE COMPANY, L.P.<br>1690 Russell Road<br>Paoli, PA 19301 | : <br> : JURY TRIAL DEMANDED <br> : |
| Plaintiffs, | : <br> : |
| v. | : <br> : |
| GLOBUS MEDICAL, INC.<br>303 Schell Lane<br>Phoenixville, PA 19460 | : <br> : <br> : |
| and | : <br> : |
| DAVID C. PAUL<br>405 Greene Lane<br>Phoenixville, PA 19460 | : <br> : <br> : |
| and | : <br> : |
| RICHARD A. KIENZLE<br>1241 Wisteria Drive<br>Malvern, PA 19355 | : <br> : <br> : |
| and | : <br> : |
| LAWRENCE BINDER<br>2848 Creek Road<br>Langhorne, PA 19053 | : <br> : <br> : |
| Defendants. | : <br> : |

## THIRD AMENDED COMPLAINT

Plaintiffs, Synthes (U.S.A.) and Synthes Spine Company, L.P. (collectively, "Synthes"), by their undersigned counsel, file this Amended Complaint against Defendants Globus Medical Inc., David C. Paul, Richard A. Kienzle, and Lawrence Binder and in support thereof aver as follows:

## PARTIES

1.       Plaintiff Synthes (U.S.A.) is a Pennsylvania partnership between Synthes, Inc. and Synthes North America, Inc., both of which are corporations organized under the laws of the State of Delaware.  Synthes (U.S.A.) is authorized to conduct business in the Commonwealth of Pennsylvania and maintains its principal place of business at 1690 Russell Road, P.O. Box 1766, Paoli, Pennsylvania, 19301.

2.       Plaintiff Synthes Spine Company, L.P. ("Synthes Spine") is a Delaware limited partnership among Synthes (U.S.A.) and Synthes Spine, Inc. and Synthes Management, Inc. (collectively "Synthes"), all of which are business entities authorized to conduct business within the Commonwealth of Pennsylvania.  Synthes Spine maintains its principal place of business at 1690 Russell Road, P.O. Box 1766, Paoli, Pennsylvania, 19301.

3.       Defendant Globus Medical, Inc. ("Globus") is a corporation organized under the laws of the State of Delaware and, upon information and belief, is authorized to conduct business within the Commonwealth of Pennsylvania.  Globus maintains its principal place of business at 303 Schell Road, Phoenixville, Pennsylvania, 19460.

4.       Defendant David C. Paul ("Paul"), a former Synthes employee, is, upon information and belief, a citizen of India.  Paul maintains an address at 405 Greene Lane, Phoenixville, Pennsylvania, 19460.

B0010

5. Defendant Richard A. Kienzle ("Kienzle"), a former Synthes employee, is, upon information and belief, a citizen of the Commonwealth of Pennsylvania. Kienzle maintains an address at 1241 Wisteria Drive, Malvern, Pennsylvania, 19355.

6. Defendant Lawrence Binder ("Binder"), a former Synthes employee, is, upon information and belief, a citizen of the Commonwealth of Pennsylvania. Binder maintains an address at 2848 Creek Road, Langhorne, Pennsylvania, 19053.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this matter under 28 U.S.C. § 1331 because the Amended Complaint raises at least one claim arising under the laws of the United States. In addition, this Court may exercise jurisdiction over the remaining state law claims under 28 U.S.C. § 1367(a) because they are so related to the federal question claim that they form part of the same case and controversy under Article III of the United States Constitution.

8. Venue is appropriate in this judicial district under 28 U.S.C. § 1391(a) because a substantial part of the events and omissions giving rise to Synthes' claims occurred in this judicial district.

## FACTS

### A. BACKGROUND

9. As more fully set forth below, this case involves (1) Globus' illegal "passing off" of Synthes' products as its own; (2) Globus, Paul and Kienzle's misappropriation of Synthes' confidential and proprietary trade secret information in violation of the Pennsylvania common law; (3) Paul and Kienzle's use of confidential and proprietary information in violation of specific non-disclosure agreements each signed with Synthes; (4) Kienzle's violation of his non-compete agreement with Synthes; (5) Globus' tortious interference with contracts between Synthes and its

employees; (6) Globus' unfair competitive activities in violation of Pennsylvania common law; (7) Paul and Kienzle's breach of their fiduciary duties to Synthes; (8) Globus, Kienzle, and Paul's aiding and abetting of Synthes employees' breaches of fiduciary duty; and (9) the use of computers at Synthes by Binder and Globus to defraud Synthes of confidential and valuable information for Globus' benefit.

10.     Synthes is a worldwide leader in the medical device industry.  Synthes (U.S.A.) manufactures, produces, and markets medical implants and instrumentation, such as plates, screws, rods, and other devices for orthopedic surgery for internal fixation of broken bones and for facial surgery.  Synthes Spine markets and sells plates, screws, rods and other devices for spinal surgery.

11.     Synthes is in a highly competitive business in which the protection of its confidential, proprietary and trade secret information is vital in order to prevent competitors or would be competitors from obtaining an unfair competitive advantage.

12.     Synthes invests millions of dollars annually in resources to develop its technology, systems and products.  In order to protect its investment, Synthes requires all employees to sign an Employee Innovation and Non-Disclosure Agreement which protects against the use or disclosure of confidential, proprietary, and trade secret information, defined to cover, among other things, product technology, product development information, project information, and manufacturing methods and technology.

13.     Employees hired after 1997 in, among others, capacities which involve sales and marketing and product development, were also asked to sign Confidentiality and Non-Competition Agreements protecting against disclosure of confidential information and prohibiting

post-employment activities with or on behalf of a direct competitor, subject to reasonable geographic and temporal limitations.

## B. DAVID PAUL'S EMPLOYMENT WITH SYNTHES AND SUBSEQUENT CREATION OF GLOBUS.

14. Beginning in November 1996, Synthes employed David Paul in a number of positions, including Mechanical Test Engineer, Product Development Engineer, and Group Manager.

15. As a condition of Paul's employment with Synthes, on November 25, 1996, he executed an Innovation and Non-Disclosure Agreement. A true and correct copy of Paul's Innovation and Non-Disclosure Agreement is attached hereto as Exhibit "A."

16. Section (d) of the Innovation and Non-Disclosure Agreement obligated Paul to the following:

> [U]pon any termination of my employment to deliver to SYNTHES promptly all items which belong to SYNTHES or which by their nature are for the use of SYNTHES employees only, including, without limitation, all written and other materials which are of a secret or confidential nature relating to the business of the Company or its affiliates.

17. Further, Section (e) of the Innovation and Non-Disclosure Agreement obligated Paul to the following:

> [N]ot to use, publish or otherwise disclose (except as my SYNTHES duties may require) either during or subsequent to my employment, any secret or confidential information or data of SYNTHES or any information or data of others, such as, but not limited to, sales dollars or units, product technology or product development, project information, manufacturing methods or technology, reports or reporting systems, which SYNTHES is obligated to maintain in confidence. . . .

18. Effective April 3, 2000, Synthes promoted Paul from Group Manager to Synthes' Director of Spine Product Development, a position that he remained in for almost three years.

19.     During the course of his employment with Synthes, Paul was intimately involved in the development of Synthes' products, systems and technology and privy to highly sensitive strategic information about the company and its product development on a worldwide basis.

20.     On January 2, 2003, Paul resigned from Synthes to create Globus, which is now one of Synthes' direct competitors in the medical device industry.  A true and correct copy of Paul's resignation letter is attached hereto as Exhibit "B."

21.     Paul is currently Globus' Chief Executive Officer.  Upon information and belief, he is a shareholder of the company along with Rick Kienzle, Rick Kienzle's brother and other individuals.

22.     Although Paul is no longer employed by Synthes, his obligations to Synthes under the Innovation and Non-Disclosure Agreement remain valid and binding.

23.     Since starting Globus, Paul has targeted Synthes employees, including but not limited to Kienzle, some of whom have binding non-competition and non-solicitation agreements with Synthes, and has improperly used information and technology he obtained while employed by Synthes for the advancement of Globus.

## C.     KIENZLE'S EMPLOYMENT WITH SYNTHES

24.     In 1998, Kienzle began working as Synthes' Mid-Atlantic Regional Manager.  A true and correct copy of Synthes' letter confirming its verbal offer to Kienzle and indicating Kienzle's written acknowledgement of acceptance is attached hereto as Exhibit "C."

25.     Among other things, as Mid-Atlantic Regional Manager, Kienzle was responsible for directing Synthes' sales in the following states: Ohio, Pennsylvania, West Virginia, Washington, D.C., Maryland, Delaware, and portions of New Jersey.

B0014

26.     As Synthes' Mid-Atlantic Regional Manager, Kienzle became familiar with Synthes' confidential and proprietary business information and customers.

27.     On October 20, 1998, in conjunction with the commencement of his employment and in exchange for training and access to Synthes' confidential and proprietary business information, Kienzle executed a Confidentiality and Non-Compete Agreement. A true and correct copy of Kienzle's Confidentiality and Non-Compete Agreement is attached hereto as Exhibit "D."

28.     Under this Agreement, Kienzle promised, among other things, to return Synthes' property immediately upon separation from employment, not to disclose Synthes' confidential and proprietary information at any time after leaving Synthes' employ, and not to solicit the customers he serviced for Synthes for a period of one year after leaving Synthes' employ.

29.     The confidentiality provisions of this agreement specifically provide that Kienzle shall not disclose: (1) the identity of customers and prospects, their specific requirements, and the names, addresses and telephone numbers of individual contacts; (2) prices, renewal dates and other detailed terms of customer and supplier contracts and proposals; (3) pricing policies, methods of delivering services and products, marketing and sales strategies, product know-how, product technology and product development strategies; (4) physical security systems, access control systems, network and other equipment designs; (5) employment and payroll records; (6 ) forecasts, budgets and other non-public financial information; product performance information, product technical information and product know-how; and (7) expansion plans, management policies and other business strategies and policies.

30.     The non-competition covenant in Kienzle's Confidentiality and Non-Compete Agreement provides, in relevant part:

> I agree I will not, for a period of one year after my employment terminates for any reason, work for (as an employee, consultant, contractor, agent or representative) any competitor of Synthes in the territory or territories that I am now, or have been responsible for at any time during the last year of my employment with Synthes.

31.     In addition, the Confidentiality and Non-Compete Agreement prohibits Kienzle from soliciting business from the following categories of Synthes customers and prospective customers:  (1) any customer of Synthes at any time during the last three years of his employment; (2) any prospect that received or requested a proposal or offer from Synthes at any time during the last three years of his employment; (3) any affiliate of any such customer or prospect; or (4) any of the individual customer or prospect contacts he established during his employment with Synthes.

32.     The restrictions in the Confidentiality and Non-Compete Agreement are reasonable in scope and time, as they limit Kienzle from competing in his former Synthes sales territory for a period of only one year.  In addition, the restrictions do not impose a greater restraint than necessary to protect Synthes' legitimate business interests.

33.     As a further condition of his employment, Kienzle also signed an Innovation and Non-Disclosure Agreement, which is identical to that signed by Paul.  The Innovation and Non-Disclosure Agreement prohibits Kienzle from, among other things, using, publishing or otherwise disclosing any of Synthes' secret or confidential information or data either during or subsequent to his employment with Synthes.  A true and correct copy of Kienzle's executed Innovation and Non-Disclosure Agreement is attached hereto as Exhibit "E."

34.     On March 26, 2003, Synthes promoted Kienzle to Vice President of Sales, Northeast Area and made his promotion effective January 1, 2003.  As an Area Vice-President

Kienzle was responsible for senior level management of Synthes Spine's sales force on a national basis with particular responsibilities within the geographic area covering Vermont, Massachusetts, New Hampshire, Rhode Island, Connecticut, New York, Pennsylvania, Ohio, New Jersey, Delaware, Maryland, Virginia, West Virginia, Michigan, Mississippi, Illinois, Indiana, Iowa and Wisconsin. In the course of his responsibilities, Kienzle was privy to secret and confidential information about the company's sales and product strategies and personnel information.

35. As a condition of his promotion, Kienzle agreed to the terms of a Confidentiality, Non-Solicitation And Non-Compete Agreement. These terms included an agreement not to disclose confidential information, an agreement for one (1) year after his employment not to solicit customers or employees and an agreement not to be employed by a competitor. A true and correct copy of those terms is attached hereto as Exhibit "F." Despite agreeing to these terms and accepting the substantially increased compensation and perquisites of his new position, Kienzle did not sign the Agreement. Upon information and belief, he did not do so because he had begun clandestinely to be engaged in business with David Paul despite his acknowledgment to others that he was bound by the new Agreement.

36. On October 1, 2003, Kienzle resigned his position with Synthes and immediately commenced employment with Globus.

37. Upon information and belief, Kienzle had for some time prior to his resignation assisted Paul in the development of Globus by improperly using resources and information obtained during the course of his employment with Synthes.

38. By working for Globus, Kienzle is in violation of his obligations under both his agreements with Synthes.

**D. GLOBUS' MISAPPROPRIATION AND USE OF SYNTHES' PRODUCT INFORMATION, SOLICITATION OF SYNTHES' CUSTOMERS AND PASSING OFF OF SYNTHES' PRODUCTS**

39. Upon information and belief, Globus, at the direction of Paul and Kienzle, is in the process of developing a national distribution network for its products in an extremely short period of time by using information and products exclusive to Synthes.

40. Upon information and belief, Globus intends to focus the distribution network for its products in the northeastern United States, which, as previously noted in Paragraph 33, includes many of the same states that Kienzle was responsible for during his employment with Synthes.

41. Globus has also used Synthes' confidential and proprietary business information to place into the marketplace numerous products that are extremely similar to or otherwise identical to certain Synthes instruments and products, which information was obtained and misappropriated directly from Synthes.

42. By way of example, among the similar or identical products that Globus has placed into the marketplace, includes interbody spacers and instrumentation. In addition, upon information and belief, Globus intends to develop a flexible rod stablization system that is similar or identical to that developed by Synthes. Furthermore, Globus has used language in at least one patent application that is identical to that previously used by Synthes in its own applications. These systems were under development by Synthes while Paul was Director of Product Development.

43. Globus has passed off Synthes' products as its own, including, upon information and belief, scratching off Synthes' trademark and other identifying characteristics from Synthes' equipment prior to representing the products as its own to prospective customers.

B0018

44.     Based upon Paul and Kienzle's former positions with Synthes, their access to Synthes' confidential and proprietary information, the striking similarities and identical features of numerous Globus products when compared to Synthes products, and other conduct as referenced above, Synthes believes that Kienzle, Paul and Globus have used and are continuing to use information misappropriated from Synthes to unlawfully and wrongfully compete with Synthes.

45.     Upon information and belief, Kienzle and Paul and/or others on their behalf obtained this confidential and proprietary business information, at least in part, by using Synthes' computers.

46.     Globus, Kienzle, Paul, and their agents, have been and continue to, directly and indirectly, involve themselves and participate in encouraging breaches by current Synthes' employees of their contractual, common law, and fiduciary duties to Synthes.

## F.     BINDER AND GLOBUS DEFRAUD SYNTHES OF CONFIDENTIAL AND VALUABLE INFORMATION

47.     Binder, while still employed by Synthes but nonetheless acting secretly on Globus' behalf, downloaded a wealth of highly confidential and proprietary information from Synthes' computers for use by Globus.  He exceeded the scope of his authorized access on computers on Synthes' internal computer network and on his own individual work computer, in order to defraud Synthes of confidential and valuable sales and product data.

48.     By way of example, Binder accessed the Synthes network and downloaded four Microsoft Outlook address books containing contact information for a sum total of 320 of Synthes' sales consultants.  Binder then accessed his individual work computer to combine all of this information into one Microsoft Excel spreadsheet, zip it up into one Zip file, and used Microsoft Front Page to transfer this information outside of Synthes.

49.     By way of further example, Binder accessed the Synthes network and downloaded approximately 2,300 confidential product drawing files during his last few days of employment with Synthes.  Upon information and belief, he then accessed his work computer and used said computer to transmit, burn to CD, or otherwise move this confidential data outside of Synthes for use by Globus.

50.     In such activities, Binder was acting as an agent of Globus.

## COUNT I – FALSE AND MISLEADING ADVERTISING (LANHAM ACT)
### (Synthes v. Globus)

51.     The allegations of Paragraphs 1 through 50 are hereby incorporated.

52.     Globus' actions, as set forth above, constitute unlawful "passing off" of Synthes' products as its own, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

53.     Upon information and belief, Globus has made false descriptions or representations in connection with its sale of certain products by wrongfully "passing off" Synthes' products as its own.

54.     Globus has "passed off" Synthes' products as its own, in part, by, upon information and belief, scratching off trademarks and other identifying characteristics from Synthes' products and by marketing products that are substantially identical to those created and sold by Synthes.

55.     Upon information and belief, the products that Globus has "passed off" as its own have entered into interstate commerce.

56.     Synthes believes that there is a likelihood of confusion on the part of consumers as a result of Globus' false representations as to the origin and description of its products.

57.     By Globus' "passing off," Synthes is being deprived of the value of its name and the goodwill that would come from one knowing the true source of Globus' products.

B0020

58. Synthes is being damaged as a result of Globus' misrepresentation of Synthes' products as its own.

WHEREFORE, Synthes demands judgment in its favor and against Globus:

a) For actual damages, including both Synthes' actual loss caused by Globus' "passing off" and the unjust enrichment caused by the "passing off";

b) For treble damages to punish Globus for its willful and malicious "passing off" of Synthes' products;

c) For Synthes' attorneys' fees and costs;

d) For an injunction enjoining Globus from the continued "passing off" of Synthes' products; and

e) For all other such relief as the Court deems appropriate.

## COUNT II – MISAPPROPRIATION OF TRADE SECRETS
### (Synthes v. Globus, Kienzle and Paul)

59. The allegations of Paragraphs 1 through 58 are hereby incorporated.

60. The Defendants' actions constitute unlawful misappropriation of trade secrets in violation of the Pennsylvania common law.

61. The information taken and used by Globus, Paul and Kienzle, which includes, but is not limited to, product designs, product technology, manufacturing systems, product development strategies, sales strategies, business strategies, methodologies, technical capabilities, and formulas developed by or on behalf of Synthes, constitutes "trade secrets" within the meaning of the Pennsylvania common law.

62. Globus' possession of such information gives it an unfair and wrongful advantage.

B0021

63.    As employees of Synthes who both signed Innovation and Non-Disclosure Agreements and, in the case of Kienzle, a Confidentiality and Non-Compete Agreement, Kienzle and Paul had a duty to maintain the secrecy of, and to limit the use of, trade secret information they learned about at Synthes and had access to during their employment with Synthes.

64.    Upon information and belief, Paul and Kienzle misappropriated certain confidential and proprietary business information from Synthes and disclosed this information to Globus.

65.    Globus, Kienzle and Paul have used Synthes' confidential and proprietary business information in violation of Kienzle and Paul's duties under their respective Innovation and Non-Disclosure Agreements to further the purposes of Globus, Kienzle, and Paul.

66.    Among other things, Globus, Kienzle and Paul have used, and are continuing to use, Synthes' trade secret information to develop products that are substantially similar to or identical to products marketed by Synthes, and to solicit Synthes' current and former customers, to solicit current and former employees, some of whom are subject to employment agreements, Confidentiality and Non-Compete Agreements, and Innovation and Non-Disclosure Agreements and have confidential and proprietary information.

67.    Globus, Paul and Kienzle knew or had reason to know that they acquired Synthes' trade secret information through improper means, and knew or had reason to know that Kienzle and Paul owed a duty to Synthes to maintain the secrecy and limit the use of Synthes' confidential and proprietary information.

68.    On information and belief, Globus, Paul and Kienzle have willfully misused Synthes' trade secret information in conducting the business of Globus.

69. Synthes has suffered, and will continue to suffer, damages as a result of Globus, Kienzle, and Paul's misappropriation of Synthes' trade secret information.

WHEREFORE, Synthes demands judgment in its favor and against Kienzle, Paul and Globus, jointly and severally:

a) For actual damages, including both Synthes' actual loss caused by Kienzle, Paul and Globus' misappropriation and the unjust enrichment caused by the misappropriation;

b) For exemplary damages to punish Kienzle, Paul and Globus for their willful and malicious misappropriation of Synthes' trade secrets;

c) For Synthes' attorneys' fees and costs;

d) For an injunction enjoining Kienzle, Paul and Globus' use and continued possession of Synthes' confidential and proprietary trade secret information and requiring Kienzle, Paul and Globus to destroy all copies and duplicates thereof; and

e) For all other such relief as the Court deems appropriate.

### COUNT III – CIVIL CONSPIRACY
**(Synthes v. Globus, Kienzle and Paul)**

70. The allegations of Paragraphs 1 through 69 are hereby incorporated.

71. Globus, Paul and Kienzle have conspired with each other and other persons, including various of Globus' distributors, sales agents and others, the purpose of which is to compete unfairly and illegally with Synthes and to deprive Synthes of the benefit of its property by, among other things:

a) Passing off Synthes' products as Globus' in violation of the Lanham Act;

b) Misappropriating trade secrets;

  c)  Breaching contractual duties;

  d)  Tortiously interfering with contracts and prospective contractual relations;

  e)  Engaging in unfair competition in violation of Pennsylvania law;

  f)  Breaching fiduciary duties; and

  g)  Aiding and abetting others to breach fiduciary duties.

72. Globus, Paul, Kienzle and the other conspirators intended to injure Synthes by conspiring to engage in these wrongful acts.

73. All of these actions have been taken in furtherance of the conspiratorial agreement.

74. In the course of their conspiracy, Globus, Paul, Kienzle and the other conspirators have acted willfully and maliciously to injure Synthes by obtaining its confidential and proprietary business information and improperly using this information for Globus' benefit.

75. Synthes has suffered, and will continue to suffer, substantial and irreparable damage as a result of Globus, Paul and Kienzle's tortious conduct.

76. Globus, Paul and Kienzle's actions are a direct and proximate cause of Synthes' damages.

WHEREFORE, Synthes demands judgment in its favor and against Globus, Paul and Kienzle:

  a)  For actual damages that Synthes is entitled to recover as a result of Globus, Paul and Kienzle's civil conspiracy;

  b)  For incidental and consequential damages as permitted by law;

  c)  For punitive damages to punish Globus, Paul, and Kienzle for their willful and malicious conduct;

B0024

    d)    For an injunction preventing Globus, Paul and Kienzle from taking any further action pursuant to their civil conspiracy; and

    e)    For all such other relief as this Court deems appropriate.

## COUNT IV – BREACH OF CONTRACT
### (Synthes v. Paul)

77.    The allegations of Paragraphs 1 through 76 are hereby incorporated.

78.    The Innovation and Non-Disclosure Agreement between Paul and Synthes is a valid and enforceable agreement that is governed by Pennsylvania law.

79.    As previously stated, the Innovation and Non-Disclosure Agreement expressly prohibits Paul from using or otherwise disclosing Synthes' confidential information without Synthes' permission either during or after terminating his employment with Synthes.

80.    Paul breached his duties under the Innovation and Non-Disclosure Agreement by using or otherwise disclosing Synthes' confidential information to Globus after terminating his employment with Synthes.

81.    Synthes has sustained, and will continue to sustain, damages as a result of Paul's breach of the Innovation and Non-Disclosure Agreement.

82.    Unless otherwise restrained as requested herein, Paul will continue, among other things, to take advantage of his access to Synthes' confidential and proprietary business information, all in violation of Paul's obligations under his Innovation and Non-Disclosure Agreement.

83.    Synthes' damages are a direct and proximate cause of Paul's breach of the Innovation and Non-Disclosure Agreement.

WHEREFORE, Synthes demands judgment in its favor and against Paul:

a) For actual damages that Synthes is entitled to recover as a result of Paul's breach of his Innovation and Non-Disclosure Agreement with Synthes;

b) For incidental and consequential damages as permitted by law;

c) For an injunction compelling Paul to comply with the terms of the Innovation and Non-Disclosure Agreement;

d) For all such other relief as this Court deems appropriate.

### COUNT V – BREACH OF CONTRACT
### (Synthes v. Kienzle)

84. The allegations of Paragraphs 1 through 83 are hereby incorporated.

85. The Confidentiality and Non-Compete Agreement and Innovation and Non-Disclosure Agreement between Kienzle and Synthes are valid and enforceable agreements that are governed by Pennsylvania law.

86. As previously stated, Kienzle is by contract expressly prohibited from competing with Synthes for a period of one year after terminating his employment with Synthes.

87. Kienzle breached his contractual duties by working for Globus, which is a direct competitor of Synthes, within one year after terminating his employment with Synthes.

88. As previously stated, Kienzle is by contract expressly prohibited from using or otherwise disclosing Synthes' confidential information without Synthes' permission either during or after terminating his employment with Synthes.

89. Kienzle breached his contractual duties by using or otherwise disclosing Synthes' confidential information to Globus after terminating his employment with Synthes.

90. Synthes has sustained, and will continue to sustain, damages as a result of Kienzle's breach of the contract.

91.     Unless otherwise restrained as requested herein, Kienzle will continue, among other things, to compete with his former employer and take advantage of the access that Synthes gave him to its valuable business relationships and confidential and proprietary business information, all in violation of Kienzle's contractual obligations.

92.     Synthes' damages are a direct and proximate cause of Kienzle's breach of contract.

WHEREFORE, Synthes demands judgment in its favor and against Kienzle:

a)      For actual damages that Synthes is entitled to recover as a result of Kienzle's breach of his Confidentiality and Non-Compete Agreement and Innovation and Non-Disclosure Agreement with Synthes;

b)      For incidental and consequential damages as permitted by law;

c)      For an injunction compelling Kienzle to comply with the terms of the Confidentiality Agreement and Innovation Agreement;

d)      For Synthes' attorneys fees and costs incurred in enforcing the terms of the Confidentiality and Non-Compete Agreement, as permitted by the Confidentiality and Non-Compete Agreement; and

e)      For all such other relief as this Court deems appropriate.

## COUNT VI – TORTIOUS INTERFERENCE WITH CONTRACT
### (Synthes v. Globus)

93.     The allegations of Paragraphs 1 through 92 are hereby incorporated.

94.     As set forth above, Synthes has an existing contractual relationship with Kienzle and other employees or former employees of Synthes.

95.     Globus knew or should have known about Synthes' contractual relationship with these individuals.

96.     Globus has tortiously interfered with Synthes' contractual relationship with these individuals by improperly and purposefully causing or inducing them to compete with Synthes and disclose confidential information in violation of their contractual commitments.

97.     Globus was acting without privilege or justification in interfering with Synthes' contractual relationships with these individuals.

98.     Globus' interference with Synthes' contractual relationships is willful and wanton and has been carried out with a specific intent to injure Synthes in the conduct of its business.

99.     Synthes has suffered, and will continue to suffer, substantial and irreparable damage as a result of Globus' tortious conduct.

WHEREFORE, Synthes demands judgment in its favor and against Globus:

     a)    For actual damages that Synthes is entitled to recover as a result of Globus' tortious interference with Kienzle and other employees' Confidentiality and Non-Compete Agreements with Synthes;

     b)    For incidental and consequential damages as permitted by law;

     c)    For punitive damages to punish Globus for its willful and malicious conduct in tortiously interfering with Kienzle and other employees' Confidentiality and Non-Compete Agreements with Synthes;

     d)    For an injunction preventing Globus from further interfering with Synthes' contractual relationship with Kienzle and other Synthes employees; and

     e)    For all such other relief as this Court deems appropriate.

## COUNT VII – COMMON LAW UNFAIR COMPETITION
### (Synthes v. Globus)

100.     The allegations of Paragraphs 1 through 99 are hereby incorporated.

101.    Globus has made a systematic effort to induce Synthes employees, including product designers and sales consultants, to leave the employ of Synthes.

102.    Globus' purpose in inducing Synthes' employees to leave the employ of Synthes is to destroy integral parts of Synthes by weakening its design and sales forces and to obtain Synthes' confidential and proprietary trade secret information.

103.    Globus' actions have been willful and wanton and have been carried out with a specific intent to injure Synthes in the conduct of its business and to gain an unfair competitive advantage over Synthes.

104.    Synthes has suffered, and will continue to suffer, substantial and irreparable damage as a result of Globus' tortious conduct.

105.    Globus' tortious conduct is a direct and proximate cause of Synthes' damages.

WHEREFORE, Synthes demands judgment in its favor and against Globus:

      a)    For actual damages that Synthes is entitled to recover as a result of Globus' unfair competition with Synthes;

      b)    For incidental and consequential damages as permitted by law;

      c)    For punitive damages to punish Globus for unfairly competing with Synthes;

      d)    For an injunction preventing Globus from any further unfair competition with Synthes; and

      e)    For all such other relief as this Court deems appropriate.

### COUNT VIII – BREACH OF FIDUCIARY DUTY
### (Synthes v. Paul and Kienzle)

106.    The allegations of Paragraphs 1 through 105 are hereby incorporated.

107.    Paul and Kienzle held positions of trust and confidence as employees of Synthes.

108.     In equity and good conscience, Paul and Kienzle were bound to act in good faith and with due regard to the interests of Synthes while they were employees.

109.     Synthes was dependent upon Paul and Kienzle to act only in Synthes' best interests until the end of their employment with Synthes.

110.     Paul and Kienzle breached their fiduciary duties to Synthes by misappropriating confidential and proprietary information so that Globus, Paul and Kienzle could benefit from the use of such information, all in violation of the Pennsylvania common law.

111.     Synthes has suffered, and will continue to suffer, substantial and irreparable damage as a result of Paul and Kienzle's tortious conduct.

112.     Paul and Kienzle's tortious conduct is a direct and proximate cause of Synthes' damages.

WHEREFORE, Synthes demands judgment in its favor and against Paul and Kienzle:

   a)       For actual damages that Synthes is entitled to recover as a result of Paul and Kienzle's breaches of fiduciary duties;

   b)       For incidental and consequential damages as permitted by law; and

   c)       For all such other relief as this Court deems appropriate.

### COUNT IX – AIDING AND ABETTING BREACH OF FIDUCIARY DUTY
### (Synthes v. Globus, Paul and Kienzle)

113.     The allegations of Paragraphs 1 through 112 are hereby incorporated.

114.     Globus, Paul and Kienzle and their agents, individually and/or collectively, directly and indirectly, have engaged in a strategy of systematically pursuing and hiring various Synthes' employees with whom Synthes has non-disclosure and non-competition agreements.

115.     In the course of this strategy, Globus, Paul, and Kienzle and their agents, have encouraged then-current Synthes employees to breach their fiduciary duties to Synthes.

B0030

116. Globus, Paul, and Kienzle have rendered substantial assistance and encouragement to Synthes' employees to breach their fiduciary duties by, among other things, misappropriating confidential and proprietary information, disclosing confidential and proprietary information, and diverting business and business opportunities from Synthes.

117. Synthes has suffered, and will continue to suffer in the future, irreparable harm as a result of Globus, Paul and Kienzle's aiding and abetting former Synthes' employees to breach their fiduciary duties to Synthes.

118. Globus' actions are the direct and proximate cause of Synthes' damages.

WHEREFORE, Synthes demands judgment in its favor and against Globus:

    a)    For actual damages that Synthes is entitled to recover as a result of Globus' aiding and abetting breach of fiduciary duty;

    b)    For incidental and consequential damages as permitted by law;

    c)    For an injunction preventing Globus from any further aiding and abetting former Synthes' employees to breach their fiduciary duties; and

    d)    For all such other relief as this Court deems appropriate.

## COUNT X – VIOLATIONS OF THE COMPUTER FRAUD AND ABUSE ACT
### (Synthes v. Globus and Binder)

119. The allegations of Paragraphs 1 through 118 are hereby incorporated.

120. Binder and Globus have committed computer fraud, in violation of § 1030(a)(4) of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

121. Binder and Globus, knowingly and with the intent to defraud Synthes and benefit Globus, accessed Synthes' file servers, Exchange servers, and individual work computers at Synthes.

B0031

122. Synthes' file servers are, and have been at all relevant times, used in interstate commerce or communication. They are part of Synthes' national business computer network. They also contain data that is used in the design and manufacture of Synthes' products, which are manufactured outside of Pennsylvania and shipped around the world.

123. Synthes' Exchange servers are, and have been at all relevant times, used in interstate commerce or communication. They are part of Synthes' national business computer network. They are also used to send and receive e-mail between Synthes' offices around the country.

124. The individual work computers at Synthes, including the computer which Binder used while at Synthes, were used in interstate commerce or communication. They were part of Synthes' national business computer network. Binder's computer was also used to send and receive e-mail between Synthes' offices around the country.

125. Binder's and Globus' actions exceeded the scope of their authorized access on Synthes' file servers and individual work computers.

126. Through his actions, Binder and Globus furthered their intended fraud and obtained valuable data files, including, but not limited to, sales information and product design information, for the benefit of Globus.

127. Synthes has suffered a loss of more than $5,000 from the fraud of Binder and Globus.

WHEREFORE, Synthes demands judgment in its favor and against Globus:

      a) For actual damages, including, but not limited to, compensation for the time and monies spent on the internal investigation of Binder's actions, and all other economic loss suffered by Synthes as a result of Binder's actions;

b) For Synthes' attorneys' fees and costs;

c) For an injunction enjoining Binder and Globus from the continued or future use of any Synthes computer data taken by them, including an injunction barring the sale of any products that incorporate or are based upon such data; and

d) For all other such relief as the Court deems appropriate.

Respectfully submitted,

RA604

Robert C. Heim
Diane Siegel Danoff
Kevin M. Flannery
Robert W. Ashbrook, Jr.
Dechert LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104-2808

Anthony B. Haller
Norman E. Greenspan
Blank Rome LLP
One Logan Square
Philadelphia, PA 19103

Dated: June 23, 2006

Attorneys for Plaintiffs Synthes (U.S.A.) and Synthes Spine Co., L.P.

## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SYNTHES (U.S.A.), et al., | : | |
| | : | |
| Plaintiffs, | : | |
| v. | : | CIVIL ACTION NO. 04-CV-1235 |
| | : | |
| GLOBUS MEDICAL, INC., et. al., | : | HON. LAWRENCE F. STENGEL |
| | : | |
| Defendants | : | |
| | : | |

## <u>ORDER</u>

**AND NOW,** this _____ day of _____, 2007, upon consideration of Defendants' Motion For Summary Judgment As To Counts I-IX of Plaintiffs' Third Amended Complaint, and Plaintiffs' opposition, it is hereby **ORDERED** that the motion is **DENIED.**

BY THE COURT:

_____

**Hon. Lawrence F. Stengel, U.S.D.J.**

12809889

B0034

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| _____ | : | |
| SYNTHES (U.S.A.), et al. | : | |
| | : | Civil Action No. 04-1235 |
| | : | |
| v. | : | |
| | : | |
| GLOBUS MEDICAL, INC., et al. | : | |
| _____ | : | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AS TO COUNTS I-IX OF PLAINTIFFS' THIRD AMENDED COMPLAINT**

## I.    INTRODUCTION

Defendants' motion for summary judgment should be denied, for at least two independent reasons.

Globus is wrong that Synthes must show some financial harm to itself, such as its own lost profits, to establish liability and seek disgorgement of Defendants' wrongfully obtained profits under each of Synthes' claims. As Globus confirms at pages 4 and 5 of its brief, all of Synthes' claims are based on allegations that Defendants illegally acquired Synthes' proprietary information and business opportunities, and used them, often through Synthes' own restricted former employees, to create and grow Globus in competition with Synthes. The very disclosure and use of that information by those individuals on behalf of Defendants is a legally sufficient harm to support Synthes' claims. To conclude otherwise would mean that as long as a victim company does not demonstrate its own lost profits or other pecuniary harm, wrongdoers may steal and profit from it with impunity. That is not the law, and summary judgment must be denied on that basis alone. The analysis should proceed no further.

Moreover, even assuming for argument's sake that Globus were correct (which it is *not*) that Synthes must produce evidence of pecuniary harm to itself for any of Synthes' claims,

Synthes has already produced such evidence many months ago, and examples of it are cited in Plaintiffs' Counter-Statement Of Material Facts That Present Genuine Issues For Trial, with citations to the record. Also, Synthes will shortly be producing additional evidence of lost sales – which Globus moved to compel for the first time this spring after the close of discovery – pursuant to the Court's Amended Order regarding "ROI" discovery. Synthes did suffer financial harm and there are genuine issues of material fact associated with these pecuniary losses to Synthes. Accordingly, summary judgment must be denied on this basis, as well.

Pursuant to the Court's instruction at the pretrial conference regarding the Court's requested expedited response briefing on Globus' motion, Synthes understands that it need brief only the legal standard and does not have to set forth in this brief or accompanying fact statement the factual evidence supporting its claims. Accordingly, Synthes has included in this memorandum and its Counter-Statement of Material Facts several examples of some of the material, disputed issues of fact, as illustrations for certain arguments, but has not prepared a comprehensive Counter-Statement. Globus does not dispute in its brief or Statement of Undisputed Facts that there is sufficient evidence in the record from which the jury could find the facts which Synthes contends demonstrate harm here. The record, as cited in Synthes' Counter-Statement and also throughout discovery, is replete with such facts. Therefore, based on Pennsylvania law, summary judgment must be denied.

II. **ARGUMENT**

Globus' legal arguments challenging the absence of "harm," "injury," or "damages" are wrong under the law applicable to each cause of action. Synthes has indeed made the requisite showings to create a genuine issue of material fact under each claim, and therefore summary judgment must be denied.

Consistent with Globus' count-by-count approach, Synthes below shows not only what

2

the law requires in terms of harm on each count, but also how Synthes satisfies those requirements on each count. However, it is worth noting that Synthes does not have to achieve a count-by-count level of proof of sufficient harm in order to warrant denial of summary judgment here. "[D]amages ordinarily flow from conduct, not from legal theories" and therefore, a plaintiff cannot be required to differentiate damages on a count-by-count basis for alternative theories of liability arising out of the same set of facts. *Inter Medical Supplies, Ltrd. v. EBI Medical Systems, Inc.*, 181 F.3d 446, 462 (Third Cir. 1999) (citing and aff'g district court). Although the issue on this motion is whether Synthes has demonstrated sufficient proof of *harm*, not whether it has demonstrated sufficient proof of *damages*, the same logic should apply. Accordingly, by showing proof of harm on a count-by-count basis in this brief, Synthes has to a substantial extent actually gone beyond what the law requires it to do.

**A.     Synthes is Not Required To Show that it Lost Profits to Show "Harm" or "Damages"**

There are numerous types of evidence that establish "harm" or "damages," as Synthes explains below, and financial injury in the form of lost profits is just one of them. Synthes can meet the "harm" or "damages" elements of the claims Globus challenges by demonstrating that Globus wrongfully acquired and misused Synthes' proprietary information and former employees in violation of their legal duties to compete against Synthes, without having to introduce evidence that it lost money. That is all that is necessary for disgorgement, and – contrary to Globus' claim at n. 9 of its brief – it is Synthes' choice as to which remedy it seeks to pursue.

**1.     Synthes Can Show That It Has Been Harmed By Globus' Trade Secret Misappropriation Without Proving Its Own Lost Profits**

Globus' argument, based on boilerplate from the case law, that a claim for trade secret misappropriation in Pennsylvania requires that the plaintiff prove an element of "harm" or

"detriment," is correct but beside the point. As one of the primary cases it cites shows, Globus is wrong that Synthes must satisfy that "harm/detriment" element by proving its own lost profits.

As set forth in one of the cases cited by Globus, a Pennsylvania trade secret claim has five elements: (1) the existence of a trade secret, (2) which was communicated in confidence by the plaintiff to the employee, (3) that was disclosed by the employee in breach of that confidence, (4) that was acquired by the competitor with knowledge of the breach of confidence, and (5) *that was used by the competitor to the detriment of the plaintiff*. *'Rohm & Haas Co. v. Adco Chem. Co.*, 689 F.2d 424, 429-30 (3d Cir. 1982) (emphasis added). There is no requirement that the plaintiff show its own financial harm to establish liability. In *'Rohm & Haas*, the defendant had hired a former employee of the plaintiff to make a duplicate of plaintiff's paint, using plaintiff's confidential process. The Third Circuit specifically concluded that the plaintiff had met the fifth "detriment" element of the trade secret claim simply by showing that "defendants used the Process divulged by [the former employee] to compete against plaintiff by putting on the market" two competing products. *Id.* at 431.

Similarly, in *Continental Data Sys., Inc. v. Exxon Corp.*, No. 84-2538 & 84-5603, 1986 U.S. Dist. Lexis 23490, * 7 (E.D. Pa. June 29, 1986), the court rejected the defendants' argument that the plaintiff failed to show defendant's detrimental use of trade secrets because "Continental produced evidence that Exxon employed Continental's compilation of data to produce a personal injury software application, which Exxon developed and installed for use by an attorney in direct competition with Continental." *See also Greenberg v. Croydon Plastics Co., Inc.*, 378 F. Supp. 806, 814 (E.D. Pa. 1974) (holding that the plaintiff had to prove the "detriment" element of its trade secret claim by showing that plaintiff's former employee disclosed the trade secret to the defendants and they "used plaintiff's trade secret to manufacture their" products); *HomeNexus,*

4

*Inc. v. DirectWeb, Inc.*, No. 99-cv-2316, 1999 WL 959823 (E.D. Pa. Oct. 14, 1999) (court said

plaintiff could meet its pleading burden on its trade secret misappropriation claim, including

detriment, by showing that the defendant had knowledge of the misappropriation, "*and that*

*DirectWeb used these trade secrets to further its own business enterprise*") (emphasis added);

*Flynn v. Health Advocate, Inc.*, No. Civ. A. 03-3764, 2004 WL 51929, at *3 (E.D. Pa. 2004)

(court held that where the plaintiffs failed to prove that certain defendants used the trade secrets

to further their own business, plaintiffs failed to prove the detriment element of their trade secret

claim, *citing HomeNexus*).

Citing '*Rohm & Haas* (among other authority), the model jury instruction for trade secret

misappropriation in O'Malley, Grenig and Lee's *Federal Jury Practice and Instructions* says, in

relevant part:

> In order to establish a trade secret violation, plaintiff [] has the
> burden of proving by a preponderance of the evidence that
>
> […]
>
> Four: plaintiff [] suffered harm as a direct and proximate result of
> the defendant []'s use or disclosure of the plaintiff []'s trade secret
> ***or defendant [] gained from such use or disclosure***.
>
> Only wrongful use of secret information disclosed in confidence
> gives rise to liability. ***To find defendant [] liable for***
> ***misappropriation of trade secrets, you must find by the***
> ***preponderance of the evidence that plaintiff [] had specific,***
> ***identifiable trade secrets that were acquired by defendant [] as a***
> ***result of a confidential relationship and that defendant [] used***
> ***these secrets in developing or making its product.***

*Id.*, § 127.10 (emphasis added).

Globus' motion does not even challenge that there is sufficient evidence to raise a

material dispute about the fact of Defendants' misappropriation and beneficial use of Synthes'

trade secrets and confidential information in competition with Synthes, and in fact the evidence

5

is overwhelming. Those trade secrets include Synthes' product concepts and designs, engineering drawings, manufacturing methods, and regulatory strategies. There are many examples, but one of the best-documented is Globus' wholesale copying of Synthes' highly confidential FDA product clearance filings, called "510(k)s" after § 510(k) of the Food, Drug, and Cosmetic Act, including Synthes' confidential regulatory approval strategies.

In fact, for each of Globus' core product lines, Globus produced its 510(k) by literally cutting-and-pasting large sections from Synthes' 510(k)s. *See* Synthes' Statement of Material Facts Presenting Genuine Issues for Trial ("Fact Statement"), ¶¶1-2 (Globus' first product, titanium spacers); ¶¶3-4 (Globus' PEEK spacers, cervical plates, and pedicle screw systems). The copying included not just text, but far more importantly, testing and regulatory strategies, with the copying being so blatant that it even included typographical errors and misspellings. (Fact Statement. ¶ 2.) Synthes' expert, who has decades of experience analyzing the spine market, studied the factual record in great detail and concluded that without this misappropriation, Globus would have taken at least two more years to introduce all these products, and without any significant income during that period, Globus would have failed for lack of capital. (Fact Statement, ¶ 5).

Globus admits that FDA regulatory strategies are important and that "serious harm" would result if its regulatory strategies were known to a competitor such as Synthes. (Fact Statement, ¶¶ 6-7). Even without drawing all reasonable inferences in favor of Synthes as required, based upon Globus' admission alone, there remain genuine issues of material fact as to whether Synthes would suffer similar "serious harm" from a competitor like Globus having

improperly taken that same information from Synthes.[1]

Contrary to Globus' assertions, there is no requirement that a plaintiff prove its own lost profits, or indeed any pecuniary or other injury to itself, as opposed to showing the defendants' taking and competitive use of its trade secrets. In fact, in *Greenberg*, the court specifically acknowledged that the plaintiff had not proved the "actual damages" it suffered as a result of the defendants' misappropriation and misuse of its trade secrets, but nonetheless ordered an accounting of defendants' profits. 378 F. Supp. at 817. The court added:

> Proof of actual losses sustained by the plaintiff is frequently difficult and speculative in trade secret cases, *see* J. Callman, The Law of Unfair Competition, Trademarks and Monopolies § 59.3 (3rd ed., 1968); it is nearly impossible here. However, a twofold goal is achieved by requiring Safe-Play, which was the ultimate beneficiary of both its own wrongful acts that those of the other defendants, to return to plaintiffs the profits it has earned as a result of its misuse of the trade secret.

*Id.*

Indeed, although Synthes has shown both acquisition and use by Globus of Synthes' trade secrets, the Notes to the model federal jury instruction explicitly states that "Under the Uniform Trade Secrets Act, improper acquisition alone, without use or disclosure, is sufficient to establish liability." Federal Jury Practice and Instructions, § 127.10, Notes, citing the Uniform Trade Secrets Act § 1(2), codified in Pennsylvania at 12 Pa.C.S.A. § 5302.

None of the cases Globus cites in its motion support its argument that Synthes must prove its lost profits to meet the "harm" or "detriment" element of its trade secret claims. As noted above, *'Rohm & Haas* – which Globus itself cites – directly refutes Globus' position. The other cases are either cited by Globus for mere boilerplate, such as the elements of a trade secret claim,

---

[1]     Similarly, Globus' inducement of Synthes' employees' to violate their non-compete agreements and non-disclosure agreements enabled Globus to gain a competitive advantage over Synthes. (Fact Statement. ¶ 5).

or are straw men used to misleadingly quote out of context irrelevant language about the plaintiffs' failures of proof on damages in those cases. None of the cited cases are even remotely like the present one. Indeed, some of the cited cases are not even trade secret cases[2], and none of them even discuss whether a plaintiff needs to show its own lost profits to be able to recover a defendant's ill-gotten proceeds of its trade secret misappropriation.

That is hardly surprising, because the law is clear that all a plaintiff need do to entitle itself to disgorgement of a defendant's wrongful profits is to show a defendant's theft and competitive use of plaintiff's trade secret. Moreover, Globus' position is also contrary to logic and equity. Essentially, Globus is saying that unless Synthes claims it lost profits due to the misappropriation, the Defendants were entitled to steal from Synthes at will and earn whatever they could – by Synthes' calculation, $85 million in profits through 2006 – but Globus is not liable for trade secret misappropriation. That would not be fair and it is not the law.

Lastly, Globus' assertion in a footnote on page 14 of their brief that Synthes cannot elect its own remedy because "this is a determination for the Court" is not only wrong, but mischaracterizes the Fourth Circuit case it cites. The *Sperry Rand* court did *not* hold that only courts may elect remedies for trade secret misappropriation. Rather, citing Callman, the Court was simply noting that in an appropriate case the plaintiff's own loss "may" be the more significant measuring rod than the misappropriator's actual gain. 447 F.2d 1387 (4th Cir. 1971). The current version of the Callman treatise cited by the court says the opposite may also be true. 2 Callman on Unfair Comp., Tr. & Mono. § 14:42 (4th ed.) ("unless a specific injury to the plaintiff can be established, such as lost sales, his loss is not the proper basis for assessing

---

[2]     *Howell v. McCloskey*, 99 A.2d 610 (Pa. 1953) (breach of fiduciary duty);  *Pryor v. Landmark Sav. Assoc.*, 514 A.2d 610 (Pa. Super. Ct. 1986) (court held plaintiff failed to prove detriment where it sued its mortgage company for return of insurance proceeds after a property fire, where court said plaintiff should have sued the insurance company with which plaintiff had contracted).

damages. In such cases the defendant's gain may serve as the proper point of reference in determining the extent of the plaintiff's loss.").

2. **Synthes Need Not Prove Its Own Pecuniary Harm To Prove Its Contract Claims, and in Any Case, Synthes Has Ample Evidence of Pecuniary Harm**

In Count IV, Synthes asserts that David Paul breached his agreement with Synthes that he would not use Synthes' secret and confidential information when he left Synthes ("Paul's NDA"). In Count V, Synthes asserts that Richard Kienzle breached similar non-disclosure agreements designed to protect Synthes confidential information, which also included provisions for a one year non-compete period. Kienzle breached both a Non-Disclosure Agreement and a Confidentiality, Non-Solicitation and non-compete Agreement ("Kienzle's NDA and NCA"), both of which he signed upon hire. (Fact Statement, Ex. R). The record in this case is replete with evidence of harm suffered by Synthes because Paul and Kienzle breached those contracts to misappropriate Synthes' trade secrets and confidential information and then used that information to gain an unfair advantage for Globus in competition with Synthes.

Defendants assert that Synthes has not come forward with evidence of a "pecuniary loss to Synthes" and that therefore, Synthes' breach of contract claim "must be dismissed because Synthes cannot prove the essential element of harm/causation." (Defs.' Br. at .2, 15). Defendants are incorrect. Synthes need not come forward with evidence of pecuniary loss. Defendants have not denied in their motion that they breached the contracts, and hence, for purposes this motion, this Court must accept as true Synthes' allegations that Paul and Kienzle breached their respective confidentiality and non-compete obligations. Thus, as discussed *supra*, as a matter of law there is immeasurable and presumed harm inflicted when restrictive covenants of this kind are breached. On this basis alone, the Defendants' motion fails because Synthes has met all elements of its breach of contract claims.

9

Nevertheless, Defendants' argument on Counts IV and V that "the record is devoid of any evidence of a pecuniary loss to Synthes" on the alleged breaches of contract (Defs.' Br. at 16) could not be more incorrect. Defendants both ignore whole swaths of evidence and conflate the element of loss or harm with the separate issue of the appropriate measure of damages. From Plaintiffs' perspective, the harm caused by Paul's and Kienzle's breaches is extensive. Paul's and Kienzle's taking and use of confidential business information was integral to the Defendants' plan and contributed directly to the overall harm at issue in the case. The violations of Kienzle's NDA and NCA helped the Defendants execute and accelerate a business plan involving misappropriation of confidential information and the establishment of an extensive, national sales force enabling them to get their products to market with unprecedented speed achieved by illegal means. In the areas covered by Kienzle's non-compete alone, Globus had sales of approximately $18.2 million for the Period October 1, 2003 (when Kienzle joined Globus) until November 2006. (Fact Statement ¶ 14).

Synthes has produced more than ample evidence of the harm that it suffered as a result of the Defendants' breaches of their contractual obligations. From interrogatory responses to documentary evidence and testimony, the record clearly establishes the variety of harms inflicted by the breaches. As succinctly stated in Synthes' Second Supplemental Responses and Objections to Defendants' First Set of Interrogatories, Synthes has lost "goodwill, business reputation, and customer relationships, all of which are irreparable and cannot be calculated. In addition, as a result of Defendants' wrongful actions and successful solicitation of Synthes' customers, Synthes has lost a significant amount of business, which, at this time, is continuing." (Fact Statement, ¶ 20).

Globus' argument that Synthes has failed to produce evidence to show its harm is

10

unsupportable. As indicated in Plaintiffs' Statement of Disputed Facts and exhibits, Synthes produced:

- expert testimony on the quantification of damages Synthes has suffered as a result of Defendants' conduct (Fact Statement, Ex. F (Gering Report));

- documents and testimony of fact witnesses regarding harms suffered in the form of lost sales, lost business opportunities, lost management time, lost goodwill, lost company assets and lost research and development costs. (Fact Statement, ¶¶ 9-21).

- evidence that, in certain specifically identified territories affected by the Defendants' breach of contract, tortious interference, and aiding and abetting breaches of fiduciary duty, lost sales of approximately $17.79 million through November 2006. Of this, $6.27 million of the lost sales were from an area covered by Kienzle's NCA. (Fact Statement, ¶¶ 10-12).

- goodwill with its customers and between Synthes and its employees. (Fact Statement, ¶¶ 15 & 17);

- extensive and long-term investments in research and development of products and instruments. (Fact Statement, ¶ 16);

- management time needed to replace key members of Synthes' product development team and sales force. (Fact Statement, ¶ 18); and

- business opportunities. (Fact Statement, ¶ 19).

In addition to Kienzle's contribution to the harms experienced by Synthes, Kienzle's conduct in breach of his non-competes deprived Synthes of the benefit of its contractual bargain with Kienzle, forcing Synthes to expend substantial attorneys' fees and costs to enforce its contracts with Kienzle and other former employees. (Fact Statement ¶ 20).

Moreover, the law is clear in Pennsylvania that Synthes does not need to show lost profits to defeat summary judgment here. A breach of a restrictive covenant such as a non-disclosure agreement or a non-compete inflicts irreparable harm on an employer, particularly upon the employer's relationships with its customers. *John G. Bryant Co., Inc. v. Sling Testing & Repair, Inc.*, 471 Pa. 1, 369 A.2d 1164, 1167 (Pa. 1977); *Vector Security, Inc. v. Stewart*, 88 F. Supp.2d

11

395, 399 (E.D. Pa. 2000). Pennsylvania courts have recognized that "damages arising out of a breach of a covenant not to compete are difficult to compute with precision." *Aiken Indus., Inc. v. Estate of Wilson*, 477 Pa. 34, 383 A.2d 808, 811-12 (Pa. 1978) (plurality opinion) (covenant protects "against activity the necessary effect of which will be to foster, if not instigate, competition"). *See also Ebright v. Shutter*, 254 Pa. Super. 509, 386 A.2d 66, 69 (Pa. Super. Ct. 1978); *Scobell, Inc. v. Schade*, 455 Pa. Super. 414, 688 A.2d 715, 718 (Pa. Super. Ct. 1997). Harms flowing from the breach can be in forms other than lost profits and Pennsylvania courts employ remedies other than lost profits to meet each case. *See, e.g. Ebright*, 386 A.2d at 68-69 (discussing losses of consideration paid and damage to contracting party's expectation interests); *Omicron Sys., Inc. v. Weiner*, 860 A.2d 554, 565 (Pa. Super. Ct. 2004) (affirming grant of accounting against former employee for full amount of his earnings for violation of a confidentiality restrictive covenant).[3]

In fact, the Pennsylvania Superior Court has expressly rejected the argument made by Defendants here that a plaintiff must prove lost profits to succeed on a claim for breach of a restrictive covenant. In *Ebright v. Scutter*, the Superior Court flatly refused to hold that "as a matter of law, lost profits, perhaps the most legally constrained, in terms of the precision of proof required, measure of damages for breach of contract" were the only form of damage available for violation of a restrictive covenant. 254 Pa. Super. 509, 386 A.2d 66, 68 (Pa. Super. Ct. 1978). Instead, the *Ebright* court confirmed that alternate measures should be employed to compensate a wronged party for the loss incurred when defendants breached their covenant not to compete. The court affirmed an injunction against future violation of the non-compete and an award

---

[3] Indeed, as was the case in *Omicron*, the agreements at issue here expressly acknowledge that "it would be extremely difficult to measure the damages that might result from any breach by me of this agreement, and that a breach may cause irreparable injury to Synthes that could not be compensated by money damages." (Fact Statement, Exs. R-AA). Pennsylvania courts frequently give effect to such acknowledgements.

representing part of the consideration paid to the breaching party. *Id.*

Moreover, where, as here, the breach is accompanied by a breach of fiduciary duty, the availability of disgorgement as a remedy is well established. *Jacobson & Co., Inc. v. Intl. Env. Corp.*, 427 Pa. 439, 444 (1967). Courts in other jurisdictions have also held that when an employee wrongfully profits from the use of information obtained from a prior employer, the measure of damages may be the employee's gain. *See Pac. Aerospace & Electrs., Inc. v. Taylor*, 295 F.Supp.2d 1205 (E.D. Wash. 2003); *Cherne Indus., Inc. v. Grounds & Associates, Inc.*, 275 N.W.2d 81 (Minn. 1979). Furthermore, where a series of violations together support a claim of unfair competition as well, disgorgement is recognized as an appropriate and available remedy. *Pac. Aerospace & Electrs.*, 295 F.Supp.2d at 1208, 1221.

Each of these principles applies here, as the harms involved are necessarily hard to measure and a breaching party cannot be allowed to profit from his wrongdoing. Instead, the law recognizes that the Defendants' ill-gotten gains are an appropriate measure of the harm. None of the cases which Globus cited in their brief on this issue even involved a restrictive covenant.

### 3. For Tortious Interference, Synthes Need Only Show that Globus Induced Contract Breaches And Stole Synthes' Trade Secrets To Wrongly Compete Against Synthes

Globus is wrong that Synthes must prove, for its particular type of tortious interference claim, that it suffered pecuniary loss such as lost profits. In *Caskie v. Philadelphia Rapid Transit Co.*, the Pennsylvania Supreme Court held that a tortious interference claim did not require the plaintiff to allege that it actually had a contractual benefit and lost it to the defendant. 321 Pa. 157, 161, 184 A.17, 19 (Pa. 1936) (rejecting the lower court's ruling that "it was not enough to aver that defendant had committed the tort and thereby enriched itself without also showing that what has been added to the defendant's estate has been taken from the plaintiff's") (internal punctuation omitted). The court said:

13

> The inquiry is, Has the defendant, in the circumstances stated, received money or property which he is not entitled to keep and which in equity and good conscience should be paid to plaintiff in accordance with principles of natural justice? If he has, the plaintiff may recover.

*Id.*.

In *Ecolaire, Inc., v. Crissman*, 542 F. Supp. 196 (E.D. Pa. 1982), the district court specifically found that the plaintiff was entitled to disgorgement of the defendants' wrongful profits for their use of plaintiff's confidential and proprietary information acquired through tortious interference with a nondisclosure agreement. The Court said that disgorgement of defendants' profits was appropriate because "the evidence shows a conscious wrongdoer plus at least a hope for reasonably accurate calculation and allocation of profit." *See also Jacobson & Co., Inc. v. International Environment Corp.*, 235 A.2d 612 (Pa. 1967) (affirming award of disgorgement of defendant's profits for tortious interference for inducing plaintiff's former employee to breach noncompetition agreement); *Prison Health Services, Inc. v. Umar*, No. 02-2642, 2002 U.S. Dist. Lexis 12288, *61 (E.D. Pa. 2002) (parenthetically noting the *Jacobson* court's affirmance of the inducer's profits, and *Ecolaire*); *Morgan's Home Equip. Co. v. Martucci*, 136 A.2d 838, 842 & 848 (Pa. 1957) (affirming, among other things, award of disgorgement of defendants' profits in violation of noncompetition and nondisclosure agreements).

As Globus acknowledges at page 5 of its brief, Synthes' tortious interference claim is based on allegations that Globus induced Synthes' former employees to compete with Synthes and disclose Synthes' confidential information. When Synthes proves these facts (and Defendants' motion does not dispute that Synthes has evidence to create triable issues on them), Synthes will have met its burden on liability and can seek disgorgement of Globus' ill-gotten profits under Pennsylvania law, independent of any showing that Synthes lost money.

14

None of the cases Globus cites involve the induced breach of a nondisclosure agreement, as here.[4]  Furthermore, the rationale for requiring pecuniary harm in claims involving certain commercial contracts does not apply to nondisclosure agreements.  The *Pelagatti* case that Globus cites states that the "gravamen" of the tortious interference tort is the benefit flowing from the contract itself.  *Pelagatti v. Cohen*, 536 A.2d 1337, 1343 (Pa. Super. 1987), *appeal denied*, 548 A.2d 256 (1988).  While the court in that case was referring to financial benefits, the benefits of Synthes' noncompetition and nondisclosure agreements are not strictly financial, as recognized by their language.  As defendant Kienzle acknowledged in his own Confidentiality, Non-Solicitation and Non-Competition Agreement, the benefit of these agreements was preventing the harm to Synthes that would flow from Kienzle's wrongful subsequent employment in competition with Synthes, and using Synthes' own confidential information against it.  The agreement stated that it "would be extremely difficult to measure the damages that might result from any breach by me of this agreement.".  *See*, *e.g.*, Ex. R to Fact Statement, at 1, 3.  It also said that Synthes' confidential information "must be kept in strict confidence to protect Synthes' business and maintain its competitive position in the marketplace, and this information would be useful to Synthes' existing and potential competitors for indefinite periods of time".  *Id.* at p. 1.

Where the benefit of these agreements is to prevent harm to Synthes' competitive position by wrongful use of its information and former employees against it, the harm required to

---

[4]     *Pelagatti*, 536 A.2d at 435 (in case described by court as "bizarre", tortious interference claim based on interference with attorney's relationship with clients);  *Shiner v. Moriarty*, 706 A.2d 1228, 1234  (Pa. Super. 1998) (tortious interference claim based on alleged interference with plaintiff's relation with its tenant);  *Coyne Int'l Enter. Corp. v. Taylor*, No. Civ. A. 03-2402 (E.D. Pa. Aug. 31, 2004) (rejecting at bench trial claim of tortious interference with prospective relations, for lack of damages, where plaintiff was awarded the only contract at issue);  *Perry v. H&R Block Eastern Enterprises, Inc.*, No. 04-6108, 2007 WL 954129, *10 (E.D. Pa. Mar. 27, 2007) (court dismissed plaintiff's tortious interference claim based on defendant's supposed defamatory communication to plaintiff's current employer where plaintiff alleged no pecuniary loss, but only emotional embarrassment).

B0049

entitle Synthes to a remedy should be, as in a trade secret misappropriation claim, the theft and competitive use of Synthes' information.

In any event, Defendants cannot credibly claim that Synthes has no evidence of pecuniary harm. As shown in Synthes' counter-statement of material fact, Globus' wrongful inducement of contractual breaches has caused Synthes numerous kinds of pecuniary harm – including lost customers and sales, business opportunities, goodwill, investment in research and development, wasted salaries, increased expenses, and legal bills. In certain affected territories alone, Synthes experienced lost sales of approximately $17.79 million. (Fact Section, ¶ 10). So even were Defendants right about the need to show pecuniary harm from Globus' tortious interference with Synthes' nondisclosure and noncompetition agreements (which it is not), Synthes has sufficient evidence to do so.

4.       **Synthes Need Not Show Lost Profits Or Other Actual Pecuniary Harm To Itself To Establish Its Fiduciary Claims**

Globus wrongly argues that Synthes' claims of fiduciary breach (Count VIII) and aiding and abetting breach of fiduciary duty[5] (Count IX) must fail because the record lacks any evidence that Paul's and Kienzle's wrongdoing caused Synthes' any "actual injury, harm, loss or damage," and in particular evidence of Synthes' sales and profits. However, Globus' argument is contrary to Pennsylvania law.

In Pennsylvania, the "test of the officer's liability is whether he has unjustly gained enrichment." *CST, Inc. v. Mark*, 520 A.2d 469, 472 (Pa. Super. Ct. 1987). It is immaterial that the breach "may not have cause a loss or been harmful to the corporation; the test of liability is

---

[5]       This analysis also applies to Synthes claim for aiding and abetting breach of fiduciary duty because aiding and abetting breach of fiduciary duty is a derivative of a claim for breach of fiduciary duty. *See Koken v. Steinberg*, 825 A.2d 723, 732 (Pa. Commw. Ct. 2003). .

16

whether he has unjustly gained enrichment." *Lutherland v. Dahlen*, 53 A.2d 143, 151 (Pa. 1947), citing *Bailey v. Jacobs*, 189 A. 320, 324 (Pa. 1937). Therefore, "parties alleging breach of fiduciary duty need not plead the existence of damages other than the offending party's receipt of a benefit that should have inured to the complainant." *Rothman v. Specialty Care Network, Inc.*, Civ. No. 00-2445, 2000 U.S. Dist. LEXIS 15433, at *8 (E.D. Pa. Oct. 12, 2000) (denying defendant's motion to dismiss arguing that plaintiff failed to allege its own pecuniary loss).

This rule makes even more sense when a fiduciary steals something intangible from the plaintiff, like intellectual property. Much like the other causes of action discussed *supra*, the "harm" to the plaintiff stems from having to compete with a fiduciary who is now using plaintiff's confidential information against it. When a fiduciary "acquires information in confidence and adopts or uses it for his own private benefit and personal profit to the exclusion and detriment of the corporation, he may be enjoined . . . and be required to account to the corporation for any profits derived there from." *Boyd v. Cooper*, 410 A.2d 860, 861 (Pa. Super. Ct. Ct. 1979). Any other rule would "insulate directors from claims for breach of fiduciary duty when their actions had harmed their corporations but not contributed directly to lost profits." *Spree.com Corp. v. Tesler*, Civ. No. 00-34433, 2001 Bankr. LEXIS 1534, at * (Bankr. E.D. Pa. Nov. 2, 2001) (denying defendant's motion to dismiss fiduciary duty claim).

Much of Globus' purported legal authority does not involve disgorgement claims and stands, at most, for the unremarkable proposition that a plaintiff who fails to prove liability and damages will lose the claim. *N3 Oceanic, Inc. v. Shields*, No. 06-CV-1304, 2006 WL 2433731, at *9 (E.D. Pa. Aug. 21, 2006) (denying injunctive relief where, among other things, in furtherance of its breach of fiduciary duty claim, plaintiff proved no breach of fiduciary duty, no use of plaintiff's trade secrets for defendant's benefit, and no loss of business to plaintiff);

*Coyne v. Taylor*, Civ. No. 03-2402, 2004 WL 1803271, at *7 (E.D. Pa. Aug. 31, 2004) (denying injunction where defendant did not keep or use plaintiff's information for defendant's benefit, did not use any such information against plaintiff, and plaintiff suffered any loss of business or other damages). These cases are straw men.

The sole case that even arguably supports Globus' position, *Huber v. Taylor*, No. 02-CV-304, 2007 WL 1247117, at *6 (W.D. Pa. Apr. 27, 2007), not only is silent as to the Pennsylvania law Synthes cites above, but the Third Circuit recently criticized the district court's relevant holding on "actual injury." The district court found that the plaintiffs' fiduciary claims for disgorgement of their former lawyer's settlement fees were barred by plaintiff's failure to prove damages, specifically that absent the alleged breach, that they could have gotten a better settlement amount. *Id.* However, the Third Circuit expressed skepticism at the district court's conclusion that under Pennsylvania law, actual damages are required for a disgorgement claim, and called "troubling[]" the lower court's reliance on negligence cases, not fiduciary duty cases. The Third Circuit further stated that a no-actual injury rule was the "well-considered position of every jurisdiction that has considered the issue, which is to require harm only for damages, not for the equitable remedy of disgorgement." 469 F.3d 67, 77 (3d Cir. 2006).

Much like *Boyd*, Synthes has established that Paul and Kienzle breached their fiduciary duties to Synthes by misappropriating confidential and proprietary information so that they, and Globus, could benefit from its use. (Fact Statement, ¶¶ 1-8). Moreover, Globus, Paul, and Kienzle, knowingly substantially assisted other Synthes employees from breaching their fiduciary duties to Synthes by misappropriating and disclosing confidential and proprietary information. *Id.* Regardless of whether Synthes has shown any lost profits from these acts, Synthes should still be able to recover Defendants' ill-gotten gain from this information that they

acquired in confidence and used for their own personal benefit.[6]

> ### 5. Synthes' Unfair Competition Claim, Based On Globus' Theft And Use Of Synthes' Confidential Information, Does Not Require A Showing That Synthes Lost Profits

Oddly, Globus cites no Pennsylvania unfair competition law, or any state's law, to support its argument that Synthes must prove financial injury such as lost profits to establish liability on its claim for common law unfair competition. Instead, Globus tried to make an end run around the issue by asserting that "there is an identity of elements in Lanham Act and Common Law Unfair Competition Claims," and so Lanham Act case law somehow applied to Synthes' unfair competition claim (Defs.' Br. at 10.) But Synthes' claim has nothing to do with the types of traditional state law business torts like passing off that were incorporated into the Lanham Act. In fact, Globus itself acknowledges that Synthes' claim for unfair competition is based on its claims of Globus' efforts to lure away Synthes employees using unlawful means and its stealing of Synthes' proprietary trade secrets and confidential information. *Id.* at 5.

Globus has to know that its interpretation of Pennsylvania' unfair competition law, and its assertion that Synthes' claim is similar to Lanham Act claims is wrong. As this Court explained in an opinion in this case last fall, traditionally, unfair competition "relates to the palming off of one's goods as those of a rival trader." *Synthes v. Globus*, Civ. No. 1235, 2005 U.S. Dist. LEXIS 19962, at *24 (E.D. Pa. Sept. 14, 2005). But, in recent years "its scope has been extended . . . to apply to misappropriation as wells as misrepresentation." *Id.* Specifically, Pennsylvania courts have recognized causes of action for the common law tort of unfair competition where there is an improper inducement of another's employees to steal trade secrets or customers. *Id.* (citing *Morgan's Home Equip. Corp. v. Martucci*, 136 A.2d 838 (Pa.1957)).

---

[6] In any event, Synthes' Fact Statement shows that the issue of Synthes' actual pecuniary harm is a disputed issue that cannot be resolved on summary judgment. (Fact Statement, ¶¶ 8-21)

Disgorgement of profits is an appropriate remedy for unfair competition. *See Sperry Rand Corp. v. Pentronix, Inc.*, 311 F. Supp. 910, 912 & 924 (E.D. Pa. 1970) (awarding an accounting on plaintiff's claims for breach of non-disclosure agreements and unfair competition); Restatement (Third) Unfair Competition § 45 (1995). Because Synthes' unfair competition claim is based on Globus' theft and use of Synthes' proprietary information, to the extent any "harm" or "detriment" element exists for his claim (and Globus has not shown that it does), Globus' very use of the information in competition constitutes sufficient harm, just as with Synthes' trade secret claim.

6.    **Synthes Need Not Demonstrate Lost Profits To Establish Its Lanham Act Claim For Reverse Passing Off**

Globus tells the Court that without evidence of Synthes' own sales and lost profits, Synthes cannot prove a necessary element of its Lanham Act claim, actual damages. *See* Globus Brf at 12-13. But Globus' interpretation of the law ignores the plain language of the statute, is contrary to the law of the Third Circuit (and others), and defies common sense,

First, Globus ignores what the Lanham Act actually says about damages:

> Recovery for violation of rights.
> (a) Profits; damages and costs; attorney fees. When . . . a violation under section 43(a) [15 U.S.C. § 1125(a)] . . . shall have been established in any civil action arising under this Act, the plaintiff shall be entitled . . . to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. . . .

15 U.S.C. § 1117 (Lanham Act § 35(a)). The phrase "<u>any</u> damages sustained by the plaintiff" (emphasis added) means that there are cases where the plaintiff does not sustain any damages, yet is still entitled to "(1) defendant's profits, . . . and (3) the costs of the action." Those alternate measures of damages are available with or without "any damages sustained by the plaintiff."

Second, the law of the Third Circuit correctly follows this common-sense, plain language

20

approach to Lanham Act damages. "[A] plaintiff seeking damages under § 43(a) must establish customer reliance but need not quantify loss of sales as that goes to the measure of damages, not plaintiff's cause of action." *Warner-Lambert Co. v. BreathAsure, Inc.*, 204 F.3d 87, 92 (3d Cir. 2000). This stems from the fact that a "finding of infringement or the likelihood of confusion with the concurrent use of the infringed trademark implicitly signifies a loss of expectation and goodwill as well." *Citizens Fin. Group, Inc. v. Citizens Nat'l Bank*, 383 F.3d 110, 131 (3d Cir. 2004) (citing *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 195 (3d Cir. 1990).

There are other cases from this, and other, circuits that hold the same. *See, e.g.*, *Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168 (3d Cir. 2005) (affirming award of defendant's profits for violation of the Lanham Act, despite fact that plaintiff could not prove own damages); *Web Printing Controls Co. v. Oxy-Dry Corp.*, 906 F.2d 1202, 1204-1206 (7th Cir. 1990) (reversing the district court for taking precisely the same position that Globus advocates here); *Burger King Corp. v. Mason*, 855 F.2d 779, 781 (11th Cir. 1988) ("[A] plaintiff need not demonstrate actual damage to obtain an award reflecting an infringer's profits under § 35 of the Lanham Act, 15 U.S.C.A. § 1117."); *Burndy Corp. v. Teledyne Indus., Inc.*, 748 F.2d 767, 772 (2d Cir. 1984) (allowing defendant's profits if the defendant is unjustly enriched, if the plaintiff sustained damages from the infringement, <u>or</u> to deter a willful infringer).

Even if Globus' statement of the law was correct, and the law did require actual proof of "declining sales or loss of good will," (Defs.' Br. at 11), Synthes' claim would still survive summary judgment. Synthes' claim is one for "reverse passing off," which occurs when someone misrepresents another's goods or services as his own. *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28 (U.S. 2003).

21

In reverse passing off cases, the loss of profit and goodwill stems from the distribution of the unbranded product itself because, much like a claim for trade secrets, "it involves an attempt to misappropriate or profit from another's talents and workmanship." *Lamothe v. Atlantic Recording Corp.,* 847 F.2d 1403, 1406-1407 (9th Cir. 1988) (reversing district court's grant of summary judgment in favor of defendant on reverse passing off claim, because when defendant removed co-authors' names from songs and sold them, he was depriving them of "recognition and profits which they were due"). The harm to the plaintiff comes from being "involuntarily deprived of the advertising value of [his] name and the goodwill that otherwise would stem from public knowledge of the true source of the satisfactory product." *Id.*

Globus has not challenged that Synthes has evidence that Globus obliterated Synthes' logo from Synthes instruments and distributed those instruments through their own sales representatives. (*E.g.*, Fact Statement, Ex. OO, #10). These actions alone deprived Synthes of the goodwill that would have come from a doctor's use of the Synthes-branded instruments.

Globus has not cited any case law that refutes this. In fact, none of Globus' cases address the harm to Synthes' goodwill that stemmed from Globus' reverse passing off. All of Globus' cases address false advertisements and other defamatory and commercially disparaging remarks.

For example, Globus relies heavily upon boilerplate from *U.S. Healthcare, Inc. v. Blue Cross of Greater Phila.*, 898 F.2d 914 (3d Cir. 1990). This case is primarily a First Amendment case, and deals with allegedly false advertisements published by both parties. *Id.* Regardless, the case does not help Globus because, when explaining the fifth element of a Lanham Act claim, the court elaborates that there is no "burden of proving detailed individualization of loss of sales. Such proof goes to quantum of damages and not to the very right to recover." *Id.*

Globus also cites *Synygy, Inc. v. Scott-Levin, Inc.,* for the unremarkable proposition that a

plaintiff may not recover damages if it is unable to prove them. 51 F. Supp. 2d 570, 577 (E.D. Pa. 1999) (Brody, J.) ("If as in this case, the plaintiff is asking for money damages in addition to injunctive relief, however, the plaintiff must show actual damages."). In *Synygy*, the plaintiff had to abandon its original theory of liability, but tried to keep the suit alive with three incidents it uncovered in discovery: two oral statements and a third made on a slide shown to a client. *See id.* at 572-73. The court found that there was no admissible evidence of the first oral statement having being made, *id.* at 576, that the second oral statement was not sufficiently commercial to be actionable under the Lanham Act, *id.* at 577, and that the slide did not deceive the client, *id.* at 577-78. As a makeweight, the court also stated that there was no evidence of damages. This has nothing to do with whether Globus' reverse passing off of Synthes' instruments damaged Synthes' goodwill.

Third, the law according to Globus would defy logic. As stated in the complaint, Synthes is seeking an injunction against Globus' continued misconduct, as well as disgorgement of Globus' ill-gotten gains from that misconduct. Globus' position seems to say that if a plaintiff does not *also* seek its own lost profits, then its Lanham Act claim fails as a matter of law. Were Globus' position correct, then a Lanham Act plaintiff would have to show <u>damages</u> to get <u>injunctive</u> relief.

The Court should not accept Globus' contention that the Lanham Act requires a plaintiff seeking an injunction and disgorgement of the defendant's profits, as the statute allows, must instead prove actual damages. That is not what the statute says, not the law in this or other circuits, nor does it make any sense.

### 7. Summary Judgment Should Be Denied on Synthes' Civil Conspiracy Claims

Globus wrongly asserts that Synthes cannot prove an essential element of civil

B0057

conspiracy.  Synthes can prove every element.

To prove civil conspiracy in Pennsylvania, a plaintiff must show that two or more persons combined to do an unlawful act or do an otherwise lawful act by unlawful means. *Petruska v. Gannon Univ.*, 462 F.3d 294, 309 (3d Cir. 2006); *Pfizer Inc. v. Giles*, 46 F.3d 1284, 1292 (3d Cir. 1994).  Synthes' claim is based upon Paul and Kienzle combining with at least each other, to compete unfairly with Synthes and to deprive Synthes of the benefit of its own property.  The record is replete with evidence of Paul, Kienzle, and others agreeing on various occasions to take the acts that form the basis for each of the unlawful acts described above.  On these facts alone, Globus' motion for summary judgment must be denied.

Globus argues that civil conspiracy requires a third element.  Some courts do require a third element, but even then, Synthes still easily meet its burden of proof.  Where a third element is required, this element is often stated in terms of "actual legal damage."  *See, e.g., Levin v. Upper Makefield Twp.*, 90 Fed. Appx. 653, 667 (3d Cir. 2004); *General Refractories v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 313 (3d Cir. 2003).  Here, the actual legal damage caused by each conspirator's tortious conduct has been addressed in each section *supra*.  For example, in the case of trade secrets, this actual legal damage would be measured by the amount of profits Defendants' made through the use of Synthes' trade secrets.  Thus, every element of a civil conspiracy has been met.

Globus correctly states that "a civil conspiracy claim fails if the predicate torts are not present."  (Defs.' Br. at 23.)  However, as discussed *supra*, all of Synthes' "predicate tort" claims have been adequately proven at the summary judgment stage and should proceed to trial. Therefore, Synthes' claim for civil conspiracy should proceed to trial as well.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment should be denied.


Respectfully submitted,


/s/ Diane Siegel Danoff
DECHERT LLP                              BLANK ROME LLP
Robert C. Heim                           Anthony B. Haller
Diane Siegel Danoff                      Matthew J. Siembieda
Kevin M. Flannery                        Norman E. Greenspan
Cira Centre                              One Logan Square
2929 Arch Street                         Philadelphia, PA 19103
Philadelphia, PA  19104-2808             (215) 569-5000
(215) 994-4000

Attorneys for Plaintiffs, Synthes (U.S.A.) and Synthes Spine Company, L.P.

Dated:  June 19, 2007

B0059

## <u>CERTIFICATE OF SERVICE</u>

I, Jeffrey S. Edwards, hereby certify that on this 19th day of April, 2007, I caused a true

and correct copy of the foregoing Plaintiffs' Response In Opposition To Defendants' Motion For

Summary Judgment As To Counts I-IX of Plaintiffs' Third Amended Complaint.to be served, by

hand and by the Court's Electronic Case Filing system, upon counsel for Defendants, as follows:

> Frederick A. Tecce
> John P. McShea
> McShea Tecce, P.C.
> The Bell Atlantic Tower, 28th Floor
> 1717 Arch Street
> Philadelphia, PA 19103


        _____/s/Jeffrey S. Edwards_____
        JEFFREY S. EDWARDS

12809889

B0060

# B0061-B0094

# REDACTED

## CERTIFICATE OF SERVICE

I, David M. Fry, hereby certify that on August 22, 2013, this document was served on the

persons listed below in the manner indicated:

### BY E-MAIL

Luke A. Culpepper
WINSTON & STRAWN LLP
1111 Louisiana, 25th Floor
Houston, TX 77002
lculpepper@winston.com

Vivian S. Kuo
Robert F. Ruyak
Matthew B. Weinstein
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, DC 10006
vkuo@winston.com
rruyak@winston.com
mweinstein@winston.com

David E. Moore
POTTER ANDERSON & CORROON, LLP
1313 North Market Street
Wilmington, DE 19801
dmoore@potteranderson.com

/s/ *David M. Fry*
David M. Fry (No. 5486)
SHAW KELLER LLP
300 Delaware Avenue, Suite 1120
Wilmington, Delaware 19801
(302) 298-0700
dfry@shawkeller.com
*Attorney for Plaintiff*